## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| TNA Entertainment, LLC, | § |
| | § |
| Plaintiff, | § |
| | § |
| v. | § |
| | § |
| Charles "Carlos" Ashenoff, | § |
| | § |
| Defendant, | § |
| | § **CIVIL ACTION NO.: 3:08-CV-522-B** |
| v. | § |
| | § |
| Jeffrey L. Jarrett, Dixie Carter, Paul W. | § |
| Taylor III (p/k/a Terry Taylor), and | § |
| Wayne Keown (p/k/a Dutch Mantel), | § |
| | § |
| Third-Party Defendants | § |

**DEFENDANT ASHENOFF'S OPPOSED MOTION TO COMPEL
DISCOVERY RESPONSES FROM PLAINTIFF TNA ENTERTAINMENT, LLC**

Pursuant to Rule 37, Fed. R. Civ. P., and Local Rule § 7.1, Defendant Charles Ashenoff ("Ashenoff") hereby files this Opposed Motion to Compel Plaintiff TNA Entertainment, LLC's ("TNA") discovery responses.  In support of this Motion, Ashenoff relies on the Brief in Support of Opposed Motion to Compel Discovery Responses From Plaintiff TNA Entertainment, LLC, Affidavit of Cary Ichter and any and all pleadings and exhibits of record.

Respectfully submitted this 31st day of December 2008.


_____*/s/ Cary Ichter*_____
Cary Ichter, Esq.
Georgia Bar No. 382515

ADORNO & YOSS, LLC
Two Midtown Plaza, Suite 1500
1349 West Peachtree Street
Atlanta, Georgia 30309
T: 404-347-8300
F: 404-347-8395

COUNSEL FOR DEFENDANT
CHARLES ASHENOFF

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| TNA Entertainment, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| Charles "Carlos" Ashenoff, | § | |
| | § | |
| Defendant, | § | CIVIL ACTION NO.: 3:08-CV-522-B |
| | § | |
| v. | § | |
| | § | |
| Jeffrey L. Jarrett, Dixie Carter, Paul W. | § | |
| Taylor III (p/k/a Terry Taylor), and | § | |
| Wayne Keown (p/k/a Dutch Mantel), | § | |
| | § | |
| Third-Party Defendants | § | |


## DEFENDANT ASHENOFF'S BRIEF IN SUPPORT
## OF OPPOSED MOTION TO COMPEL DISCOVERY RESPONSES
## FROM PLAINTIFF TNA ENTERTAINMENT, LLC


Cary Ichter, Esq.
Georgia Bar No. 382515

ADORNO & YOSS, LLC
Two Midtown Plaza, Suite 1500
1349 West Peachtree Street
Atlanta, Georgia 30309
T: 404-347-8300
F: 404-347-8395

COUNSEL FOR DEFENDANT
CHARLES ASHENOFF

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................. 5

  I.     INTRODUCTION AND STATEMENT OF RELEVANT FACTS ............ 7

  II.    ARGUMENT AND CITATIONS TO AUTHORITY ............................. 9

    A.  TNA Should Be Compelled To Respond To Ashenoff's Permissible Discovery. .................................................................................................... 9

    B.  TNA Should Be Sanctioned For Failing To Respond To Ashenoff's Discovery………………………………………..……………………...19

    III.  CONCLUSION…………….....................................................................21

CERTIFICATE OF CONFERRAL......................................................................22

CERTIFICATE OF SERVICE….........................................................................23

## TABLE OF AUTHORITIES

Cases

Arista Records LLC v. Does 1-19,
     551 F. Supp. 2d 1 (D.D.C. 2008)…………………..……………..……………12

Cherenfant v. Nationwide Credit Inc.,
     2004 WL 5313965 *1 (S.D. Fl. 2004)…………………………………………...14

Devaney v. Continental Am. Ins. Co.,
     989 F.2d 1154, 1159 (11th Cir. 1993)…………………………………………...19

Directory Dividends, Inc. v. SBC Communications, Inc.,
     2003 WL 23208804 *1 (E.D. Pa. 2003)…………………………………………12

Hutto v. Finney, 437 U.S. 678 (1978)………………………………………………………19

In re Asbestos Cases,
     112 F.R.D. 427 (N.D. Tex. 1986)…………………………………………………9

Interstate v. Does 1-12,
     2008 WL 4939105 *1 (N.D. Ind. 2008)…………………..……………..……...12

Meiko Electronics America, Inc. v. Celestica De Monterrey,
     2008 WL 48533222 *1 (N.D. Cal. 2008)…………………...………………12

Pan-Islamic Trade Co. v. Exxon Corp.,
     632 F.2d 539 (5th Cir. 1980)………………………………………………………10

Pittman v. Hattiesburg Municipal Separate School Dist.,
     644 F. 2d 1071 (5th Cir. 1981)…………………………………………………...14

Psychopathic Records Inc. v. Anderson,
     2008 WL 4852915 *1 (E.D. Mich. 2008)…………………………………..……12

Rio Properties, Inc v. Rio Intern. Interlink,
     284 F.3d 1007 (2002)………………………………………….……………...12

Schalgenhauf v. Holder,
     379 U.S. 104 (1964))………………………………………………………...9

Williams v. Taser Int'l, Inc.,
     2007 WL 1639875 *1 (N.D. Ga. 2007)…………………………………………20

<u>Other Authorities</u>

Fed. R. Civ. P. 26……………………………………………………………………...9, 12

Fed. R. Civ. P. 33………………………………………………………………………….9

Fed. R. Civ. P. 34………………………………………………………………………….9

Fed. R. Civ. P. 37………………………..………………………………..……...9, 13, 19

## I.      INTRODUCTION AND STATEMENT OF RELEVANT FACTS

Plaintiff TNA Entertainment, LLC ("TNA") filed its Complaint and Request for Declaratory Judgment in this matter on March 26, 2008.  On June 16, 2008, Ashenoff timely filed his Answer and Counterclaims alleging, *inter alia*, that TNA and Third-Party Defendants Jeffrey L. Jarrett, Dixie Carter, Paul W. Taylor III (p/k/a Terry Taylor), and Wayne Keown (p/k/a Dutch Mantel) discriminated against him in the terms and conditions of his employment based upon his race and caused him bodily injury by supplying massive doses of unprescribed pain killers to him to enable him to continue perform for TNA despite injuries he had sustained.[1]

Ashenoff served his First Continuing Interrogatories and First Requests for Production of Documents on TNA on June 16, 2008.  See Affidavit of Cary Ichter ("Ichter Aff.") ¶ 4, attached hereto as Exhibit A.  See also Defendant's First Continuing Interrogatories, First Requests for Production of Documents, a true and correct copy is attached hereto as Exhibit B.  TNA was required to serve its responses to Ashenoff's discovery requests by June 16, 2008.  See Fed. R. Civ. P. 33, 34.

To date, TNA has refused to provide complete responses to Interrogatory Nos. 3 and 11 and Requests for Production Nos. 1, 2, 12 and 37.  A true and correct copy of Plaintiff TNA Entertainment, LLC's Objections and Responses to Defendant's First Interrogatories and First Request for Production of Documents is attached hereto as Exhibit C.  After TNA served its first set of deficient discovery responses on September 19, 2008, counsel for Ashenoff sent a letter to TNA's counsel seeking to address in good

---

[1]  Defendant Ashenoff has also filed a Motion to Dismiss that is ripe for the Court's consideration.

faith TNA's deficient responses.  A true and correct copy of Ashenoff's counsel's good-faith conferral letter is attached hereto as Exhibit D.

Ashenoff's counsel also raised the discovery issues with TNA's counsel via email and offered to execute a Consent Protective Order to address TNA's purported confidentiality concerns.   See Ichter Aff. ¶ ¶ 7, 10. Thereafter, the parties did execute a Consent Protective Order which was entered on October 8, 2008.  Ichter Aff. ¶ 10.

In October 2008, counsel for Ashenoff and TNA conducted a lengthy conference call to discuss the outstanding discovery issues that arose from TNA's insufficient and incomplete responses.  During that conference call, counsel for Ashenoff was advised that TNA planned to supplement its discovery responses and to revise its privilege log. Id. ¶ 9.  TNA has since served a revised privilege log.

On October 23, 2008, TNA supplemented its discovery responses.  Despite the supplementation, most of the issues discussed by the parties had not been addressed in any way.   In follow-up communications, TNA explicitly refused to produce: (i) a performer's roster with e-mail addresses of performers (Request to Produce No. 12); (ii) compensation information and documentation for its performers (Interrogatory No. 3; Request for Production No. 1), (iii) the identifications of the performers against whom TNA has enforced any drug policy (Interrogatory No. 11) or (iv) any documents that reflect upon TNA's policies or practices regarding the use of performers when and while they are injured (Request for Production No. 37).

On December 5, 2008, Ashenoff sent a draft motion to compel discovery to TNA's counsel, pursuant to L.R. 7.1.  On December 23, 2008, counsel for the parties had yet another conference call dealing with these disputes.  During the course of these

communications, TNA's position has changed very little.  Ashenoff, on the other hand, has (without prejudice) dropped all of its demands for discovery with respect to TNA's parent company, Panda Energy.  As a consequence of TNA's intransigence, Ashenoff brings this motion respectfully requesting that this Court compel TNA to respond to his First Continuing Interrogatories and First Requests for Production of Documents as set forth herein and award him fees in accordance with Rule 37 of the Fed. R. Civ. P. ("Rule 37").

## II.     ARGUMENT AND CITATIONS TO AUTHORITY

### A.     TNA Should Be Compelled To Respond To Ashenoff's Permissible Discovery.

Rule 26 permits extensive and broad discovery in order to allow the parties' to ascertain the truth "so that civil trials in the federal courts" are no longer "carried out in the dark." In re Asbestos Cases, 112 F.R.D. 427, 432 (N.D. Tex. 1986) (citing Schalgenhauf v. Holder, 379 U.S. 104 (1964)).  A party may discover any information relevant to the subject matter of the lawsuit that is not privileged.  Fed. R. Civ. P. 26(b)(1).

If a party does not answer an interrogatory, the propounding party may move for an order compelling an answer to the interrogatory.  See Fed. R. Civ. P. 37(a).  An evasive or incomplete discovery response is treated as a failure to respond.  See Fed. R. Civ. P. 37(a)(3).  Likewise, if a party does not produce or permit inspection in response to a request under Rule 34 of the Fed. R. Civ. P., the propounding party may move for an order compelling the production or inspection of documents.  See Fed. R. Civ. P. 33(b)(5), 34(b).  Ultimately, a motion to compel is the proper method for attacking the

responding party's inadequate discovery responses.  See Pan-Islamic Trade Co. v. Exxon Corp., 632 F.2d 539, 552 (5th Cir. 1980).

The Court should grant Defendant Ashenoff's Motion to Compel because the information Ashenoff has sought is relevant to the subject matter of the pending action and is calculated to obtain admissible evidence.   TNA's objections to Ashenoff's discovery are unreasonable and, in some instances, given the concessions Ashenoff has offered, appear to have been made in bad faith.

1.      TNA should be compelled to respond to Request for Production No. 12.

**Request for Production No. 12:**

> **Please produce for inspection and copying any and all lists or rosters of Performers, independent contracts and employees of TNA for the period that TNA has ever created or caused to be created, including the names, addresses and other contact information for such persons.**

**TNA's Response to Request for Production No. 12:**

> **TNA objects to this request as it calls for attorney-client privilege and/or work product privileged information/materials.  TNA further objects to this request as it is overly broad, unduly burdensome and harassing because it is not reasonably limited by time or scope. Additionally, TNA objects to this request as it calls for proprietary and/or confidential information.   Moreover, TNA objects to this request as it is vague, ambiguous and confusing as worded.  Subject to the foregoing objections and without waiving same, TNA will produce responsive documents to this request once a protective order is entered.**

Other performers at TNA will be among the most important witnesses in this case. They can testify as to the widespread use of un-prescribed pain killers at TNA and the fact that TNA's employees distributed those pain killers with reckless abandon.  Other performers can also testify about the racial hostility and animus that pervaded the TNA work environment.  In short, these witnesses will prove Ashenoff's case.  It is, therefore,

hardly surprising that TNA wants to make it as difficult as possible for Ashenoff to communicate with these witnesses.[2]

Ashenoff, as a former performer for TNA is aware that TNA has the email addresses of all of its performers to facilitate communications with those performers. Performers who live in different parts of the country must be made aware of when and where TNA events will be held; they must be told when they are to appear and what is expected of them. TNA typically communicates this type information to wrestlers and other employees by way of email.

TNA communicates by email because it is the cheapest, most efficient and most effective way to communicate with its people. Ashenoff also seeks an inexpensive, efficient, and effective way to communicate with these witnesses. As a consequence, Ashenoff has sought documents from TNA that would disclose wrestlers' email addresses. TNA steadfastly refused to provide those addresses to Ashenoff.

When TNA produced a roster of performers with phone numbers and addresses but no email addresses, TNA's counsel specifically stated that TNA would not provide email addresses of performers because to do so would compromise the privacy of the performers. TNA's counsel did not explain why the disclosure of an email address is more intrusive than the disclosure of a physical address or a telephone number—because it is not. Performers can choose to read or not to read and to respond or to not respond to emails from Ashenoff just as easily as they could choose not to open and read letter

---

[2]  As an initial matter, Ashenoff's counsel offered and executed a Consent Protective Order to forbid any use of the information sought in the discovery process for any improper purpose. <u>See</u> Ichter Aff., ¶10.

correspondence or accept phone calls.  Moreover, many professional wrestlers frequently travel in the U.S. and abroad, and some of the performers currently reside outside of the U.S.  Unquestionably, the most efficient means of communicating with the performers is through e-mail, as TNA very well knows.

The limited documents that TNA has produced confirm that the primary way that TNA communicates with its performers is through email because it is the most efficient and convenient way of communicating with them.  See e.g., copy of emails between TNA and TNA performer Ron Killings, attached hereto as Exhibit E.  The fact that TNA communicates with its performers most often through email demonstrates that TNA will not be unduly burdened by having to produce the email addresses to Ashenoff.

Rule 26 requires a party to provide contact information for witnesses as initial disclosures and in response to a discovery request from the opposing party.  See Fed. R. Civ. P. 26(b)(1); see also Meiko Electronics America, Inc. v. Celestica De Monterrey, 2008 WL 48533222 *1 (N.D. Cal. 2008) (granting Plaintiff's motion to compel contact information for witnesses from defendant); see also Directory Dividends, Inc. v. SBC Communications, Inc., 2003 WL 23208804 *1, *4 (E.D. Pa. 2003).[3] Given that witness contact information is unquestionably discoverable, there is no reason that TNA should not be compelled to provide email addresses for witnesses.  See Rio Properties, Inc v. Rio Intern. Interlink,  284  F.3d  1007,  1017  (2002)  (acknowledging  that  "[a]lthough

---

[3] Several federal district courts have compelled the production of email addresses of parties to a lawsuit.  See Interstate v. Does 1-12, 2008 WL 4939105 *1 (N.D. Ind. 2008); see also Arista Records LLC v. Does 1-19, 551 F. Supp. 2d 1, 4 (D.D.C. 2008); see also Psychopathic Records Inc. v. Anderson, 2008 WL 4852915 *1, *2 (E.D. Mich. 2008).

communication via email and over the Internet is comparatively new, such communication has been zealously embraced within the business community.")

TNA's failure to provide the performer's email addresses evidences bad-faith. See Fed. R. Civ. P. 37.   TNA's refusal to disclose the email addresses of its performers demonstrates TNA's intent to make Ashenoff's ability to communicate with essential witnesses unnecessarily difficult.   Accordingly, this Court should compel TNA to produce the email addresses of its performers.

2.   TNA should be compelled to respond to Interrogatory No. 3 and Request for Production No. 1.

**Interrogatory No. 3:**

**Please identify (following the requirements set forth herein) the total number of Performers with whom TNA has entered into contracts, whether oral or written, during TNA's existence.   For each such Performer, please provide the following information:**

**(a)   His or her legal and professional name;**

**(b)   His or her racial background, (i.e., African or African-American, Hispanic/Latino or Hispanic/Latino-American, Asian or Asian-American, Caucasian or Caucasian-American, or Other (please provide additional information regarding the racial background of any individual categorized as "Other");**

**(c)   His or her annual compensation;**

**(d)   The merchandising revenues, if any, he or she has ever been paid through TNA; and**

**(e)   His or her current status with TNA.**

**TNA's Response to Interrogatory No. 3:**

**TNA objects to this request as it is overly broad, unduly burdensome and harassing.   TNA further objects to this request as it calls for information which is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.   Moreover, TNA objects to**

**this request as it is not reasonably limited in time or scope and because confidential and proprietary information. Subject to the foregoing objections and without waiving same, see all documents produced by TNA herein.**

**Request for Production No. 1:**

**Please produce for inspection and copying each and every contract, agreement, or understanding TNA entered into with any Performers.**

**TNA's Response to Request for Production 1:**

**TNA objects to this request as it is not reasonably limited in time or scope. TNA further objects to this request as it is overly broad, unduly burdensome and harassing. TNA also objects to this request as it calls for materials which are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, TNA objects to this request as it calls for proprietary information of TNA and confidential information of individuals not the subject of this lawsuit. Additionally, TNA objects to this request as it is not reasonably limited in time and scope. Subject to the foregoing objections and without waiving same, TNA agrees to produce all contracts between TNA and Defendant Ashenoff and directs Defendant's attention to all documents produced by TNA herein.**

TNA does not have a legitimate basis for refusing to produce compensation information and documents for its performers, especially given that Ashenoff's counsel entered into a Consent Protective Order.  See Ichter Aff., ¶10.  Ashenoff's request for information and documents concerning compensation of TNA's performers relates specifically to Ashenoff's disparate pay claim based on race, which requires Ashenoff to "show that he was paid less than a member of a different race was paid for work requiring substantially the same responsibility."  See Pittman v. Hattiesburg Municipal Separate School Dist., 644 F. 2d 1071, 1074 (5th Cir. 1981); see also Cherenfant v. Nationwide Credit Inc., 2004 WL 5313965 *1, *5 (S.D. Fl. 2004).   Consequently, TNA cannot dispute that Interrogatory No. 3 and Request for Production No. 1 seek information and documents that are essential to Ashenoff's disparate pay claim.

Moreover, TNA should be compelled to produce compensation information for its performers because, in several emails, TNA admitted that Ashenoff and his wrestling team, LAX, were "hot" and highly demanded performers.  See copies of emails of TNA officers and executives, collectively attached hereto as Exhibit F.   Given TNA's admission that Ashenoff was a valuable performer, Ashenoff should be permitted to compare his compensation to the compensation TNA paid to other performers.   Thus, TNA should be compelled to produce information and documents showing the compensation of its performers.

In discussions with TNA's counsel, TNA argued that it was not obliged to provide Ashenoff with compensation information because Ashenoff's compensation claim was "a fishing expedition."   Apparently, TNA contends that in order for a member of a protected class to make a disparate compensation claim the claimant must have access to compensation information prior to making the claim.   Of course, were this the law, employers could immunize themselves from disparate compensation claims by operating closed compensation systems and forbidding employees to share compensation information—as many do.

TNA counsel declared it would not produce the requested information because TNA did not want to turn over copies of all of its contracts to Ashenoff.   See Ichter Aff., ¶13.   Ashenoff's counsel answered that he did not wish to see all contracts of all wrestlers—that any documents accurately detailing the compensation paid to the performers would be sufficient.   See Ichter Aff., ¶13.

TNA's counsel still refused, claiming TNA is concerned for the privacy of other wrestlers.   TNA's counsel argues that Ashenoff has threatened to go to the press before

about the illegal activities at TNA, and counsel worried aloud that Ashenoff might do the same with this information.  <u>See</u> Ichter Aff., ¶14.  To assuage these concerns, Ashenoff's counsel offered to allow the compensation discovery to be produced under an "Attorneys' Eyes Only" agreement.  <u>See</u> Ichter Aff., ¶14.  TNA's counsel again refused, although this time having run out of excuses for his position.

Ashenoff has made a claim for discrimination and, in particular, for disparate pay based upon race.  Plainly, evidence regarding the amounts paid to members of various ethnic groups at TNA is relevant to that claim.  Accordingly, the Court grant Ashenoff's motion as to such information.

3.     TNA should be compelled to respond to Interrogatory No. 11 and Request for Production No. 37.

**Interrogatory No. 11:**

**Please state whether TNA has any policies regarding the use of prescription medications on an unprescribed basis by Performers, the use of steroids, human growth hormone, or controlled substances of any kind.  If your answer is in the affirmative, please provide the following information:**

**(a)     The identity of the person or persons within TNA who is responsible for enforcement of such policies;**
**(b)     The date of the establishment and implementation of the policy; and**
**(c)     The individuals against whom the policy has been enforced since its creation.**

**TNA's Response to Interrogatory No. 11:**

**TNA objects to this interrogatory as it is overly broad, unduly burdensome and harassing because Defendant has failed to reasonably limit the interrogatory in time and scope.  As a result, TNA further objects to this interrogatory as it calls for information which is irrelevant and not reasonably calculated to lead to discovery of admissible evidence.  TNA also objects to this interrogatory because it seeks proprietary and/or confidential information.  Subject to the foregoing objections and without waving same, yes.  As to the non-objectionable subparts of this interrogatory, TNA will produce**

**responsive documents to this request once a protective order is entered in this case.  TNA also answers as follows: (a) Dixie Carter; (b) May 23, 2006.**

**Request for Production No. 37:**

> **Please produce for inspection and copying any and all documents that reflect upon TNA's policies or practices regarding the use of Performers when and while they are injured.**

**TNA's Response to Request for Production No. 37:**

> **TNA objects to this request as it calls for attorney-client privilege and/or work product information/materials.  TNA objects to this request as it is not reasonably limited in time or scope.  As a result, TNA objects to this request as it calls for materials which are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to the foregoing objections and without waiving same, none other than correspondence too burdensome to collect given any probative value.  [*sic.*]**

The core of Ashenoff's bodily injury claim is that TNA caused physical harm to Ashenoff by supplying massive doses of unprescribed pain killers to him to enable him to continue performing for TNA despite conspicuous injuries he had sustained.  Hence, Ashenoff seeks information and documents concerning the alleged existence and enforcement of TNA's drug policy and its policy and/or practices concerning the use of performers when and while they are injured ("injured performer policy").  See Interrogatory No. 11 and Request to Produce No. 37.  More specifically, Ashenoff is attempting to discover whether TNA actually enforces its prescription drug policy, which supposedly prohibits the use of prescribed medicines on an unprescribed basis, rather than merely paying lip service to such a policy, as is typical in the wrestling industry, for public relations and liability avoidance purposes.  Likewise, Ashenoff is attempting to discover whether it is TNA's policy and/or practice to use injured performers who TNA directs to consume medications in violation of TNA's prescription drug policy.

Additionally, by identifying performers who have been the subject of any such policy, Ashenoff would identify the performers who were in a position most similar to his position: injured performers who were being fed drugs by TNA so they could perform. Such performers would be the witnesses most competent to testify as to whether TNA typically fed its injured performers un-prescribed pain killers. Identifying such witnesses is essential to establishing the dishonesty of TNA's denials of wrongdoing in this case.

TNA has not provided a legitimate reason for failing to respond to Interrogatory No. 11 or Request for Production No. 37. When it once again championed the privacy rights of wrestlers, Ashenoff's counsel again offered a Consent Protective Order to address TNA's objections. See Ichter Aff. ¶10. Additionally, Ashenoff's counsel offered to accept responsive information with the name of the performers redacted. Ashenoff's counsel suggested that Ashenoff had no interest in arguing about documents and information that might prove useless and that an anonymous production would allow the parties to know whether the information was worth a fight over identifying the wrestler who was the subject of such documents or interrogatory disclosures.

TNA flatly, and without explanation, refused. Ashenoff's counsel again reiterates here: Ashenoff will accept any reasonable use and disclosure limitation TNA wishes to place on Ashenoff in connection with the use of this information.

TNA's other objections to Request for Production No. 37 are nonsensical. For example, TNA has not even begun to justify how the attorney-client privilege and work product doctrines provide any authority to withhold information concerning the existence and enforcement of TNA's injured performer policy.

Given that Interrogatory No. 11 and Request to Produce No. 37 are highly relevant to Ashenoff's bodily injury claim and that TNA has not asserted a valid objection to Ashenoff's requests, this Court should compel TNA to fully respond to these requests.

**B.**     **TNA Should Be Sanctioned For Failing To Respond To Ashenoff's Discovery.**

In addition to setting forth the procedures for a motion to compel, Rule 37 allows this Court to award Ashenoff his attorneys' fees.  Specifically, Rule 37 mandates:

> If the motion is granted — or if the disclosure or requested discovery is provided after the motion was filed — the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:
>
> (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
>
> (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or
>
> (iii) other circumstances make an award of expenses unjust.

See Fed. R. Civ. P. 37.

A court should award reasonable expenses, including attorneys' fees, to the discovering party unless the circumstances demonstrate that the awarding of such expenses would be unjust.  See Fed. R. Civ. P. 37(a).  See also Hutto v. Finney, 437 U.S. 678, 695 n. 24 (1978) ("like the power to award attorneys' fees for litigating in bad faith, the power to assess costs is an important and well-recognized tool used to restrain the behavior of parties during litigation"); Devaney v. Continental Am. Ins. Co., 989 F.2d 1154, 1159 (11th Cir. 1993) (determining that the 1970 Amendments provide that the

award of expenses is mandatory unless the opposing party's conduct was substantially justified.)

Here, TNA has completely failed to respond to certain of Ashenoff's discovery requests without substantial justification.  Hence, Ashenoff is entitled to an award of his attorneys' fees in addition to an Order compelling TNA's discovery responses.  TNA's various boilerplate objections are illegitimate and only complicated the parties' discovery dispute.  See Williams v. Taser Int'l, Inc., 2007 WL 1639875 *1, *3 (N.D. Ga. 2007). In addition, TNA's refusal to accept legitimate efforts to compromise disputes (e.g., anonymous disclosures to solve privacy issues and "Attorneys' Eyes Only" disclosures) exemplified bad-faith and unnecessarily complicated discovery.  See Section II(A)(1).

Moreover, sanctions are warranted because TNA has delayed deposition discovery in this action.  Ashenoff plans to depose TNA's 30(b)(6) witness and various individuals during the first quarter of 2009 and will be significantly prejudiced in doing so without the documents and other information that TNA willfully refuses to provide to Ashenoff.  It is highly unlikely that TNA will fully respond to Ashenoff's reasonable discovery without court intervention given that it has only slowly produced certain information documents, some of which have been improperly redacted.

Accordingly, the Court should compel TNA to respond to Ashenoff's discovery as there is no substantial justification for TNA's failure to respond to discovery, and Ashenoff is entitled to reimbursement for his reasonable expenses, including attorney's fees, incurred in bringing this motion and his counsel's participation in any hearing on same.

### III.   CONCLUSION

For the foregoing reasons, Ashenoff respectfully requests that this Court set this matter for hearing and order TNA to show cause within 20 days as to why Ashenoff is not entitled to an Order compelling TNA to respond to its outstanding discovery and reimburse Ashenoff for its reasonable expenses, including attorney's fees, incurred in bringing this motion and participating in any hearing on same.

Respectfully submitted this 31st day of December 2008.


_____*/s/ Cary Ichter*_____
Cary Ichter, Esq.
Georgia Bar No. 382515

ADORNO & YOSS, LLC
Two Midtown Plaza, Suite 1500
1349 West Peachtree Street
Atlanta, Georgia 30309
T: 404-347-8300
F: 404-347-8395

COUNSEL FOR DEFENDANT
CHARLES ASHENOFF

## <u>CERTIFICATE OF RULE 37 - GOOD FAITH CONFERRAL</u>

This certificate is made to show this Honorable Court that counsel for Defendant, Charles "Carlos" Ashenoff (hereinafter "Ashenoff") has in good faith conferred with Plaintiff's counsel regarding the discovery issues raised in Ashenoff's Motion to Compel.

This 31st day of December 2008.

_____*/s/ Cary Ichter*_____
Cary Ichter, Esq.
Georgia Bar No. 382515

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 31, 2008, a copy of the foregoing

**DEFENDANT ASHENOFF'S OPPOSED MOTION TO COMPEL DISCOVERY**

**RESPONSES FROM PLAINTIFF TNA ENTERTAINMENT, LLC AND BRIEF IN**

**SUPPORT** was electronically filed with the clerk of court using the ECM/ECF system

which will automatically send e-mail notification of such filing to all attorneys of record,

including:

> Richard S. Krumholz, Esq.
> FULBRIGHT & JAWORSKI, LLP
> 2200 Ross Avenue, Suite 2800
> Dallas, Texas 75201-2784
>
> Robert Blackwell, Esq.
> BROWN & HOFMEISTER, LLP
> 740 E. Campbell Road, Suite 800
> Richardson, Texas 75081

This 31st day of December 2008.

> ___*/s/ Cary Ichter*_____
> Cary Ichter, Esq.
> Georgia Bar No. 382515