**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **TNA Entertainment, LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **Charles "Carlos" Ashenoff,** | § | |
| | § | |
| **Defendant,** | § | **CIVIL ACTION NO.: 3:08-CV-522-B** |
| | § | |
| **v.** | § | |
| | § | |
| **Jeffrey L. Jarrett, Dixie Carter, Paul W.** | § | |
| **Taylor III (p/k/a Terry Taylor), and** | § | |
| **Wayne Keown (p/k/a Dutch Mantel),** | § | |
| | § | |
| **Third-Party Defendants** | § | |

**APPENDIX TO**
**DEFENDANT ASHENOFF'S OPPOSED MOTION TO COMPEL DISCOVERY**
**RESPONSES FROM PLAINTIFF TNA ENTERTAINMENT, LLC AND**
**BRIEF IN SUPPORT**

Pursuant to L.R. § 7.1(i), Defendant files this Appendix of exhibits in support of its

Opposed Motion to Compel Discovery Responses from Plaintiff.  Exhibits are index as follows:

A.  Affidavit of Cary Ichter, Esq.

B.  Defendant's First Interrogatories and First Request for Production of Documents to
    Plaintiff

C.  Plaintiff's Objections and Responses to Defendant's First Interrogatories and First
    Request for Production of Documents to Plaintiff

D.  Letter to Plaintiff's counsel dated 9/26/2008,

E.  Compilation of various emails

F. Compilation of various additional emails

Respectfully submitted this 31st day of December, 2008.


_____/s/ Cary Ichter_____

Cary Ichter, Esq.
Georgia Bar No. 382515

ADORNO & YOSS, LLC
Two Midtown Plaza, Suite 1500
1349 West Peachtree Street
Atlanta, Georgia 30309
T: 404-347-8300
F: 404-347-8395

COUNSEL FOR DEFENDANT
CHARLES ASHENOFF

## CERTIFICATE OF SERVICE

I hereby certify that on December 31, 2008, a copy of the foregoing **APPENDIX TO DEFENDANT ASHENOFF'S OPPOSED MOTION TO COMPEL DISCOVERY RESPONSES FROM PLAINTIFF TNA ENTERTAINMENT, LLC AND BRIEF IN SUPPORT** was electronically filed with the clerk of court using the ECM/ECF system which will automatically send e-mail notification of such filing to all attorneys of record, including:

Richard S. Krumholz, Esq.
FULBRIGHT & JAWORSKI, LLP
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201-2784

Robert Blackwell, Esq.
BROWN & HOFMEISTER, LLP
740 E. Campbell Road, Suite 800
Richardson, Texas 75081

This 31st day of December 2008.

_____/s/ Cary Icther_____
Cary Ichter, Esq.
Georgia Bar No. 382515

EXHIBIT

A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **TNA Entertainment, LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **Charles "Carlos" Ashenoff,** | § | |
| | § | |
| **Defendant,** | § | **CIVIL ACTION NO.: 3:08-CV-522-B** |
| | § | |
| **v.** | § | |
| | § | |
| **Jeffrey L. Jarrett, Dixie Carter, Paul W.** | § | |
| **Taylor III (p/k/a Terry Taylor), and** | § | |
| **Wayne Keown (p/k/a Dutch Mantel),** | § | |
| | § | |
| **Third-Party Defendants.** | § | |

## AFFIDAVIT OF CARY ICHTER, ESQ.

Before the undersigned officer, duly authorized by law to administer oaths, personally appeared Cary Ichter, who, after being duly sworn, states that the facts set forth herein are true and correct.

1.      My name is Cary Ichter.  I am of legal age, of sound mind, and competent to testify.

2.      I have personal knowledge of the matters testified to herein.

3.      I am a partner with the law firm of Adorno & Yoss, LLC and lead counsel for Charles Ashenoff ("Ashenoff"), Defendant in the above-captioned matter.  I give this affidavit in support of Defendant Ashenoff's Opposed Motion To Compel Discovery Responses From Plaintiff TNA Entertainment, LLC and Brief in Support.

#253895

1

4.      Ashenoff served his First Continuing Interrogatories and First Requests for Production of Documents on Plaintiff TNA Entertainment, LLC ("TNA") on June 16, 2008.

5.      TNA served its first set discovery responses on September 19, 2008.

6.      I sent a letter to TNA's counsel to address TNA's deficient discovery responses on September 29, 2008.

7.      I also sent several emails to TNA's counsel in an attempt to resolve the discovery dispute.

8.      During a conference call in October 2008, I informed TNA's counsel that TNA's responses to Interrogatories Nos. 3 and 11 and Requests for Production Nos. 1, 2, 12 and 37 were deficient.

9.      TNA's counsel agreed to supplement TNA's responses to discovery and provide a revised privilege log in order to identify any attorneys listed on the log.

10.     I agreed and executed a Consent Protective Order to address TNA's purported confidentiality and privacy concerns, and the Court entered the order on October 8, 2008.

11.     On October 23, 2008, TNA supplemented its discovery responses, but it failed to produce: (i) a performer's roster with e-mail addresses of performers (Request to Produce No. 12); (ii) compensation information and documentation for its performers (Interrogatory No. 3; Request for Production No. 1); (iii) the identify the performers against whom TNA has enforced any drug policy (Interrogatory No. 11); or (iv) any

documents that reflect upon TNA's policies or practices regarding the use of performers when and while they are injured (Request for Production No. 37).

12.     My associate provided a draft of the Motion to Compel on December 5, 2008, by email to Counsel for TNA.  We notified TNA's counsel of our intent to file the Motion to Compel by close of business on December 12, 2008, because TNA's counsel had not responded to our conferral under L.R. 7.1.  In apparent response, TNA's counsel submitted a letter that did not resolve the discovery dispute.

13.     In response to TNA's counsel's letter, the parties had further communications regarding resolution of this dispute, including a conference call on December 23, 2008.  During that call, TNA counsel declared it would not produce the requested information because TNA did not want to turn over copies of all of its contracts to Ashenoff.  Ashenoff's counsel answered that he did not wish to see all contracts of all wrestlers—that any documents accurately detailing the compensation paid to the performers would be sufficient.

14.     TNA's counsel still refused to agree to provide the compensation information Ashenoff seeks, claiming TNA is concerned for the privacy of other wrestlers.  TNA's counsel argues that Ashenoff has threatened to go to the press before about the illegal activities at TNA, and counsel worried aloud that Ashenoff might do the same with this information.  To assuage these concerns, Ashenoff's counsel offered to allow the compensation discovery to be produced under an "Attorneys' Eyes Only" agreement.  TNA's counsel again refused.

15.     I certify that I have made a good faith attempt to resolve this discovery dispute without Court intervention by the actions set forth hereinabove.

FURTHER AFFIANT SAYETH NAUGHT.

Cary Ichter

Sworn to and subscribed before me
this 31st day of December, 2008.

NOTARY PUBLIC
My Commission Expires:

#253895

4

EXHIBIT

B

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TNA Entertainment, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Charles "Carlos" Ashenoff, | ) | |
| | ) | |
| Defendant, | ) | CIVIL ACTION NO.: 808CV-522-B |
| | ) | |
| v. | ) | |
| | ) | |
| Jeffrey L. Jarrett, Dixie Carter, Paul W. | ) | |
| Taylor III (p/k/a Terry Taylor), and | ) | |
| Wayne Cowan (p/k/a Dutch Mantel), | ) | |
| | ) | |
| Counterclaim Defendants. | ) | |

## DEFENDANT'S FIRST INTERROGATORIES AND FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS TO TNA ENTERTAINMENT, LLC

Pursuant to Rules 33 and 34 of the Federal Rules of Civil Procedure, Defendant Charles Ashenoff hereby serves his First Interrogatories and First Requests for the Production of Documents upon TNA Entertainment, LLC ("TNA"):

## I.   INSTRUCTIONS

1.      You are hereby required: (1) to answer all of the following interrogatories separately and fully in writing under oath, within thirty-three (33) days of service; and (2) to produce all "books, documents and other tangible things" requested herein to the office of Adorno & Yoss, LLC, Attn: Cary Ichter, Two Midtown Plaza, 1349 West Peachtree Street N.W.,

Suite 1500, Atlanta, Fulton County, Georgia 30309, thirty-three (33) days after service or at such other time as counsel agree.

2.      You shall answer every interrogatory and document request separately and under oath.  If any answer is based upon information and belief, rather than personal knowledge, such answer shall state that it is made on that basis.

3.      If any of these interrogatories or document requests cannot be answered in full, then answer to the fullest extent possible, specify each reason for the inability to answer the remainder of the interrogatory or document request, and state whatever information or knowledge you have concerning the unanswered portion.

4.      In answering these interrogatories and document requests, furnish such information as is available to you regardless of whether or not it is based on personal knowledge or records of you, your agents or representatives, or others.

5.      If an interrogatory seeks the identification of facts, persons having knowledge of facts, or documents supporting a particular allegation or contention, provide all information known by you at the present time, to be supplemented as further information becomes known.

6.      If you withhold any information on the basis of the attorney-client privilege, the work-product doctrine, or any other privilege, please provide a sufficient description of the information being withheld to enable Mr. Ashenoff to evaluate the privilege asserted, including the name of any document, author and recipient of any document, date of any communication or document, location any communication took place, and a brief description of the substance of the information withheld.

7.     These interrogatories and document requests shall be continuing to the fullest extent allowed by law.

8.     Answers to these interrogatories and document requests are to be based on all information, in whatever form or from whatever source available to you.

9.     When requested herein to "identify" or to provide the "identity" of a natural person, please state the following information:

(a)     The person's full name;

(b)     The person's present or last known residential address or addresses and home telephone number;

(c)     The person's present or last known business or place of employment, and the address and telephone number of such last known business or place of employment;

(d)     The person's job position or positions at the time(s) relevant to the answer; and

(e)     If applicable, the date the person was employed or otherwise under contract with TNA.

10.     When requested herein to "identify" a document, please state the following information:

(a)     The date and time the document was created;

(b)     The date and time the document was transmitted and received;

(c)     The title (if any) of the document;

(d)     The author or originator of the document;

(e)     The persons or entities to whom the document is addressed, copied, or blind copied;

(f)      The nature or types of the document (e.g., letter, memorandum, etc.);

(g)      The number of pages of the document;

(h)      A brief summary of the contents of the document; and

(i)      If the document is not now in your possession or custody, the identity of its present or last known custodian and the location at which the document is or was held by such custodian.

In lieu of the above information, a copy of the relevant document may be furnished with the answer to the relevant interrogatory and identified by the date it bears, if any, the name of the author, if known, the name of all recipients, if applicable, and the number of pages.

11.      When requested herein to "identify" a firm, partnership, corporation, proprietorship, association, or other organization or entity, please state its:

(a)      Full name;

(b)      Present or last known address; and

(c)      Present or last known telephone number.

12.      You have a legal duty seasonably to supplement your response with respect to any question or request directly addressed to (a) the identity and location of persons having knowledge of discoverable matters, and (b) the identity of each person expected to be called as an expert witness at trial, the subject matter on which he is expected to testify, and the substance of such witness' testimony.

13.      You also have a legal duty seasonably to amend a prior response if you obtain information upon the basis of which (a) you know that the response was incorrect when made, or (b) you know that the response, though correct when made, is no longer correct, and the

circumstances are such that a failure to amend the response is, in substance, a knowing concealment.

14.     Except where specifically limited to a different time period, all inquiries require responses through the date of final disposition of this litigation.

15.     All Definitions should be carefully reviewed and regarded.

16.     If any document was, but is no longer, in your possession or subject to your control, identify the document, and state its present location or the disposition that was made of it and the date thereof.

17.     A request to produce a document is a request to produce the original of said document and all duplicates of any such documents bearing any markings, notations, or changes. A copy may be produced if the original is unavailable for some legally sufficient reason.

## II.   **DEFINITIONS**

1.     "TNA" means TNA Entertainment, LLC and its predecessors, successors, attorneys, agents, employees, representatives, officers, directors, or partners, or any other person or entity acting on its behalf.

2.     The word "you" or "your" means TNA unless otherwise specified.

3.     The word "person" means any natural person, corporation, company, association, firm, partnership, proprietorship, joint venture or other business or legal entity, and officers, directors, employees, agents, servants, attorneys or representatives of any such entity.

4.     All references to any of the named Counterclaim Defendants shall encompass the named individual and his/her attorneys, agents, employees, or representatives.

5.     The term "Performer" shall encompass all on-air talent that worked for TNA, including wrestlers, managers, and on-screen performers.

6.     "Booker" shall mean any individuals that advised and/or determined for TNA which Performers would play particular roles in wrestling matches and performances and/or who scripted wrestling matches and performances.

7.     Masculine or feminine pronouns shall not connote particular gender but shall be taken to mean masculine, feminine or neuter gender, as the case may be.

8.     "Date" shall mean the exact day, month, and year, if ascertainable, or, if not, the best approximation thereof (including relationship to other events).

9.     "Document" or "documents" wherever used herein shall mean all written, typed, printed, recorded, photographic, video or graphic matter of every type and description, including, but not limited to, letters, handwritten notes, e-mails, correspondence, invoices, telegrams, memoranda, records, minutes of all types of meetings, contracts, subcontracts, agreements guarantees, intra and inter-office communications, audited or unaudited financial statements, profits and loss statements, audit reports, projections, account summaries, daily collateral reports, analyses, results of investigations, reviews, bulletins, proposals, estimates, appraisals, recommendations, critiques, trip reports, financial calculations, cancelled checks, deposit slips, notices, diaries, deeds, books, periodicals, desk calendars, appointment books, messages, instructions, work assignments, note, notebooks, drafts, data sheets, statistical records, telephone records, tapes, tape recordings, partial or complete reports of telephone conversations, public statements, newspapers or other media releases, microfilm, microfiche, computer printouts,

computer tapes, video tapes, public and governmental filings, opinions, and any other writings, recordings, or things.

10.    "Relate," "refer," "reflect," "explain," "describe," "define," and/or "concern," or any form of these words, shall mean directly or indirectly pertaining to, involving, being connected with, or embodying in any way or to any degree the stated subject matter.

### III.    FIRST INTERROGATORIES

**Interrogatory 1.**    Please state whether any employee, independent contractor, staff member, worker, Performer or applicant of TNA has ever filed an internal complaint with TNA alleging that TNA discriminated on the basis of race, color or national origin.  If your answer is in the affirmative, with reference to each complaint of discrimination please:

(a)    State the name, address, race and national original of the person who filed the complaint;

(b)    State the date the complaint was made;

(c)    Describe the charges made in the complaint; and

(d)    Describe all actions taken on the basis of the complaint.

**Interrogatory 2.**    Please state whether any employee, independent contractor, staff member, worker, Performer, or applicant of TNA has ever filed any complaint with any federal, state or local government agency or court alleging that TNA discriminated on the basis of race, color, or national origin.  If your answer is in the affirmative, for each such complaint of discrimination please:

(a)    State the name, address, race and national origin of the person who filed the complaint;

(b)    Identify the agency with which the Complaint was filed;

(c)     State the date the complaint was filed;

(d)     Describe the charges made in the complaint; and

(e)     Describe all actions taken on the basis of the complaint.

**Interrogatory 3.**     Please identify (following the requirements set forth herein) the total number of Performers with whom TNA has entered into contracts, whether oral or written, during TNA's existence.  For each such Performer, please provide the following information:

(a)     His or her legal and professional name;

(b)     His or her racial background, (i.e., African or African-American, Hispanic/Latino or Hispanic/Latino-American, Asian or Asian-American, Caucasian or Caucasian-American, or Other (please provide additional information regarding the racial background of any individual categorized as "Other");

(c)     His or her annual compensation;

(d)     The merchandising revenues, if any, he or she has ever been paid through TNA; and

(e)     His or her current status with TNA.

**Interrogatory 4.**     Please identify (following the requirements set forth herein) each individual at TNA that has had any responsibility for booking matches and/or contributing to storylines and/or determining whether/when to schedule a particular Performer to perform, and/or determining the roles particular Performers played in wrestling matches/performances. For each such individual, please provide the titles and dates associated with his or her employment in the position in which he or she had the authority to contribute to such determinations and his or her racial background, (i.e. African or African-American, Hispanic/Latino or Hispanic/Latino-American, Asian or Asian-American, Caucasian or Caucasian-American).

**Interrogatory 5.**     Please state whether TNA is aware of any racist or bigoted communications, statements, jokes or comments made by anyone in its employment, under contract or within its control.  If your answer is in the affirmative, for each such communication, statement, joke or comment, please provide:

(a)     A description of the communication, statement, joke or comment;

(b)     The date the communication, statement, joke or comment was made;

(c)     The identity of the individual who authored or made the communication, statement, joke or comment;

(d)     The identity of the individual(s) to whom the communication, statement, joke or comment was made or sent;

(e)     How TNA responded to the communication, statement, joke or comment;

(f)     The names and titles of those responsible for responding to or investigating the communication, statement, joke or comment; and

(g)     A description of all documents evidencing or referencing the communication, statement, joke or comment.

**Interrogatory 6.**     Please state whether TNA at any time disciplined any individual employed by or under contract with TNA based on allegations that he or she had engaged in discriminatory conduct, whether on the basis of race, color or national or ethnic origin.  If your answer is in the affirmative, for each such disciplinary action, please provide the following information:

(a)     The identity of the individual disciplined;

(b)     A description of the discriminatory conduct;

(c)     The date of such disciplinary action;

(d)     A description of the disciplinary action taken; and

    (e)    A description of all documents evidencing or referencing the discriminatory conduct and/or allegations of same.

**Interrogatory 7.**    Please state the total compensation, whether monetary, in kind, or otherwise, that TNA paid Mr. Ashenoff.

**Interrogatory 8.**    Please describe TNA's policies and practices in investigating the backgrounds of employees prior to making hiring decisions.

**Interrogatory 9.**    Please state whether any TNA employees or independent contractors have ever been convicted or arrested for drug use, drug trafficking, or any other drug offense.  If your answer is in the affirmative, please identify each such individual, the date on which they were arrested, the date on which they were convicted, the charges made against them, and the jurisdiction in which the proceedings occurred.

**Interrogatory 10.**    Please state whether any TNA employees or independent contractors other than Mr. Ashenoff have claimed, in any forum, that they have been injured as a consequence of their consumption of un-prescribed pain killers.  If your answer is in the affirmative, please identify each such person.

**Interrogatory 11.**    Please state whether TNA has any policies regarding the use of prescription medications on an unprescribed basis by Performers, the use of steroids, human growth hormone, or controlled substances of any kind.  If your answer is in the affirmative, please provide the following information:

    (a)    The identity of the person or persons within TNA who is responsible for enforcement of such policies;

    (b)    The date of the establishment and implementation of the policy; and

    (c)    The individuals against whom the policy has been enforced since its creation;

**Interrogatory 12.**     With respect to the "LAX" logo/insignia (the "LAX Logo") that is regularly displayed on TNA broadcasts, please state:

    (a)    the identity of the owner of the LAX Logo;

    (b)    if the owner of the LAX Logo is not TNA, describe in detail (identifying documents in the course of such description) the factual and legal basis (i.e., contract, license, assignment, purchase, or other method) by which TNA acquired the right to use the LAX Logo; and

    (c)    identify the person or persons who created all or part of the LAX Logo, or any draft or version thereof, and identify the portion of the LAX Logo such person created, and the date of such creation.

**Interrogatory 13.**     With respect to the name and identifying mark "LAX," (the "LAX Mark") please state:

    (a)    the identity of the owner of the LAX Mark;

    (b)    if the owner of the LAX Mark is not TNA, describe in detail (identifying documents in the course of such description) the factual and legal basis (i.e., contract, license, assignment, purchase, or other method) by which TNA acquired the right to use the LAX Mark; and

    (c)    identify the person or persons who created all or part of the LAX Mark, or any draft or version thereof, and identify the portion of the LAX Mark such person created, and the date of such creation.

**Interrogatory 14.**     Identify the number of TNA broadcasts, and the dates thereof, in which the LAX Mark or the LAX Logo appear and are used in any way, and state the amount of money TNA paid to the owner(s) of the LAX Mark and/or LAX Logo for the use of the LAX Mark and/or LAX Logo.

**Interrogatory 15.**     Identify and describe in detail each and every instance in which any person in the viewing public affirmatively indicated that such person associated the LAX Mark and/or the LAX Logo with: (a) TNA; (b) Charles Ashenoff (and all pseudonyms thereof); and/or (c) both TNA and Charles Ashenoff.

**Interrogatory 16.**    As alleged in paragraph 18 of TNA's Original Complaint and Request for Declaratory Relief, please identify with reasonable detail every "opportunity" Mr. Ashenoff had available to him when determining whether to continue his contract with TNA.

**Interrogatory 17.**    As alleged in paragraph 19 of TNA's Original Complaint and Request for Declaratory Relief, please explain in reasonable detail how the racial slurs identified in Mr. Ashenoff's demand letter were "part of, and necessary to, the creative process, and facilitated TNA's successful development of its entertainment product," and identify all persons involved in the creative process related to the development of TNA storylines or "entertainment product" involving or associated with Mr. Ashenoff.

**Interrogatory 18.**    Please identify every event or performance for which TNA scheduled Mr. Ashenoff to perform.  For each event or performance identified, please provide the date and location of the performance.

**Interrogatory 19**.    As alleged in paragraph 28 of TNA's Original Complaint and Request for Declaratory Relief, please identify every event or performance at which TNA alleges Mr. Ashenoff failed to appear.  For each event or performance identified, please also state whether Mr. Ashenoff provided TNA with notice of his impending absences and what reason, if any, was provided to TNA by Mr. Ashenoff for his absence.

**Interrogatory 20.**    Please describe TNA's policies related to giving Performers notice of events at which they are expected to attend, attendance policies, and any practices TNA utilizes in suspending Performers for failing to attend scheduled events or performances.

## IV.   **REQUESTS FOR PRODUCTION**

1.    Please produce for inspection and copying each and every contract, agreement, or understanding TNA entered into with any Performers.

2.    Please produce for inspection and copying each and every document identified in your responses or relied upon in drafting your responses to Defendant's First Interrogatories to TNA.

3.    Please produce for inspection and copying any and all rules, policies or regulations TNA has adopted that are intended to govern the conduct of their Performers, employees or independent contractor.

4.    Please produce for inspection and copying each and every written communication between TNA and Mr. Ashenoff.

5.    Please produce for inspection and copying any and all documents reflecting upon or referring to any "wellness," drug screening, or similar policies or programs TNA has implemented.

6.    Please produce for inspection and copying any and all documents that relate to any and all inquiries or investigations conducted by TNA regarding its hiring practices and/or whether TNA engaged in any form of unlawful discrimination.

7.    Please produce for inspection and copying any and all documents, including any memos, minutes, or notes, that refer to or reflect upon any meetings, discussions and/or conversations, whether in public or private, that TNA has had with Mr. Ashenoff.

8.    Please produce for inspection and copying any and all documents that constitute or refer to any policy, procedure, manual, rule, regulation or other guideline, whether written or

oral, formal or informal, provided or authored by TNA regarding discrimination on the basis of race, color, or national origin.

9.    Please produce for inspection and copying any and all documents, including any and all e-mails, sent or received by TNA that refer to any measures taken by TNA to address discrimination on the basis of race, color, or national origin, including any measures to address alleged or potential discrimination.

10.    Please produce for inspection and copying any and all documents that identify the individuals employed by TNA as Bookers or writers of TNA storylines, including the names, addresses and other contact information for such persons.

11.    Please produce for inspection and copying any and all documents that identify the Performers who have worked for TNA (whether as an employee or an independent contractor), including the names, addresses and other contact information for such persons.

12.    Please produce for inspection and copying any and all lists or rosters of Performers, independent contracts and employees of TNA for the period that TNA has ever created or caused to be created, including the names, addresses and other contact information for such persons.

13.    Please produce for inspection and copying any and all documents that identify the race, color, ethnicity or national origin of the Performers who have ever worked with TNA (whether as an employee or an independent contractor).

14.    Please produce for inspection and copying any and all documents that constitute or refer to fan surveys conducted by or on behalf of TNA to track, monitor, quantify or gauge any and all Performers' popularity.

15.    Please produce for inspection and copying any and all documents that describe how TNA determines whether to "push" or "put over" (as those terms are used in professional wrestling) a particular Performer.

16.    Please produce for inspection and copying any and all documents that describe how TNA determines how to script wrestling matches or performances.

17.    Please produce for inspection and copying any and all documents that TNA in any way utilized to evaluate, rate or rank Performers, whether subjectively or objectively.

18.    Please produce for inspection and copying any and all documents that constitute or refer to a performance evaluation of Mr. Ashenoff.

19.    Please produce for inspection and copying any and all files maintained by TNA or any employee, staff member, manager, supervisor, or other worker of TNA relating to Mr. Ashenoff, including without limitation, his personnel file and any records pertaining to his duties, salary, compensation, evaluations, promotions, discharge or termination.

20.    Please produce for inspection and copying any and all documents, including without limitation, any and all organizational charts, personnel charts, descriptions, lists, tables, flow charts or other similar documents, that show the identities, titles or responsibilities of each person responsible in any manner for personnel, recruitment, hiring, selection, training, discipline, demotion, and/or termination at TNA.

21.    Please produce for inspection and copying any and all documents, including without limitation, any and all organization charts, personnel charts, descriptions, lists, tables, flow charts or other similar documents that reflect upon the relationship between TNA and any parent, subsidiary or affiliated corporation.

22.    Please produce for inspection and copying any and all documents, including without limitation, any and all organizational charts, personnel charts, descriptions, lists, tables, flow charts or other similar documents that show the management structure of TNA (i.e., to whom each and every manager, supervisor, director, officer or other individual that works for TNA in a managerial or supervisory capacity reports).

23.    Please produce for inspection and copying any and all agreements, contracts or other documents reflecting upon, referring to, or constituting agreements between TNA and Panda Energy Company.

24.    Please produce for inspection and copying any and all documents that reflect upon or refer to transfers of funds between TNA and Panda Energy Company.

25.    Please produce for inspection and copying any and all documents that reflect upon or refer to anything of value passing between TNA and Panda Energy Company.

26.    Please produce for inspection and copying any and all documents that refer to the relationship between TNA and Panda Energy Company, including without limitation, any articles of incorporation, corporate by-laws, or SEC filings of Panda and/or TNA.

27.    Please produce for inspection and copying any and all documents that constitute or refer to financial transactions between TNA and Panda Energy Company.

28.    Please produce for inspection and copying any and all insurance policies that TNA has or has had that covers any liability arising from employment practices.

29.    Please produce for inspection and copying any and all documents that constitute or refer to communications by, between or among any employee, manager, supervisor, staff

member or other worker of TNA that contain any racial or bigoted statement, epithet, or joke, and/or refers to any Performer's race, ethnicity, color or national origin.

30.    Please produce for inspection and copying any and all document retention policies adopted by TNA.

31.    Please produce for inspection and copying any and all documents that reflect upon any drug policies adopted by or promulgated by TNA.

32.    Please produce for inspection and copying any and all documents that refer to or reflect upon the use of pain killers, steroids, human growth hormone, or any illegal narcotic or drug by TNA Performers.

33.    Please produce for inspection and copying any and all documents that reflect upon any efforts undertaken by TNA to educate its Performers and employees to the dangers of drug abuse.

34.    Please produce for inspection and copying any and all documents that reflect upon the dates and times of all TNA events since TNA's inception.

35.    Please produce for inspection and copying any and all documents that reflect upon the compensation paid to TNA Performers, including Defendant Ashenoff.

36.    Please produce for inspection and copying any and all documents that reflect upon any investigation of the backgrounds of Vince Russo and/or Terry Taylor prior to their being hired by TNA.

37.    Please produce for inspection and copying any and all documents that reflect upon TNA's policies or practices regarding the use of Performers when and while they are injured.

38.     Please produce for inspection and copying any and all documents that reflect upon TNA's policies or practices regarding treatment of Performers when and while they are injured, including the providing of medical attention and/or therapeutic services of any kind.

39.     Please produce for inspection and copying any and all documents that reflect upon TNA's policies or practices regarding the monitoring of the condition of Performers who have been injured, including efforts to ensure that Performers are fully recovered and capable of returning to work before they are used in events.

40.     Please produce for inspection and copying any and all documents that reflect upon or refer to the recreational use of drugs by members of the management team at TNA.

41.     Please produce for inspection and copying any and all documents that refer to, reflect upon or relate to any investigation of drug use within TNA by management, Performers or others.

42.     Please produce for inspection and copying any and all rules, policies or regulations TNA has adopted that are intended to govern the attendance of its Performers at scheduled events and/or performances.


[signature continued on following page]

Respectfully submitted this 16th day of June, 2008.

Cary Ichter, Esq.
Georgia Bar No. 382515
Adriana Midence, Esq.
Georgia Bar No. 142298

ADORNO & YOSS, LLC
Two Midtown Plaza, Suite 1500
1349 W. Peachtree Street, N.W.
Atlanta, Georgia 30309
T: 404-347-8300
F: 404-347-8395

Kevin Wiggins, Esq.
Texas Bar No.
Tracey Wallace, Esq.
Texas Bar No.

ADORNO YOSS WHITE & WIGGINS LLP
Bank of America Plaza, Suite 6200
901 Main Street
Dallas, Texas 75202
T: 214-665-4150
F: 214-665-4160

ATTORNEYS FOR DEFENDANT
CHARLES ASHENOFF

## CERTIFICATE OF SERVICE

I hereby certify that on June 16, 2008, a copy of the foregoing **DEFENDANT'S FIRST**

**INTERROGATORIES AND FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS**

**TO TNA ENTERTAINMENT, LLC** was served upon the following via U.S. Mail, properly

addressed with postage prepaid:

> Richard S. Krumholz, Esq.
> William P. Finegan, Esq.
> Fulbright & Jaworski, LLP
> 2200 Ross Avenue, Suite 2800
> Dallas, Texas 75201-2784

Cary Ichter, Esq.
Georgia Bar No. 382515

EXHIBIT

C

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TNA Entertainment, LLC, | § § § | |
| **Plaintiffs,** | § § | |
| v. | § § § | |
| Charles "Carlos" Ashenoff, | § § | |
| **Defendant,** | § § | **CIVIL ACTION NO.: 808CV-522-B** |
| v. | § § § | |
| Jeffrey L. Jarrett, Dixie Carter, Paul W. Taylor III (p/k/a Terry Taylor), and Wayne Keown (p/k/a Dutch Mantel), | § § § § | |
| **Third-Party Defendants** | § § | |

### PLAINTIFF TNA ENTERTAINMENT, LLC'S OBJECTIONS AND RESPONSES TO DEFENDANT'S FIRST INTERROGATORIES AND FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS

Pursuant to Rules 33 and 34 of the Federal Rules of Civil Procedure, Plaintiff TNA Entertainment LLC ("*TNA*") hereby serves its Objections and Responses to Defendant's First Interrogatories and First Requests for the Production of Documents.

### I. OBJECTIONS TO INSTRUCTIONS

1.     TNA objects to Instruction No 1 because it calls for responses to Defendant's discovery requests before the Rules require objections and/or responses to be served. TNA will serve objections and responses to Defendant's discovery and produce responsive materials and information in compliance with the FEDERAL RULES OF CIVIL PROCEDURE ("*FRCP*"), the agreements of the attorneys and the Court's orders. In light of the voluminous nature of the requested documents, TNA will produce responsive documents to defense counsel at TNA's

attorneys' offices located at 2200 Ross Avenue, Suite 2800, Dallas, Texas 75201, at a mutually agreeable time and place or as otherwise agreed upon by the parties.

2.      TNA objects to Instruction No. 2 as it attempts to require TNA to answer requests for production "under oath," which is not required by the FRCP. TNA will respond to this discovery in accordance with its obligations under the FRCP.

3.      TNA objects to Instruction No. 3 as it calls for information and responses that are outside the scope of permissible discovery, and that place unreasonable burdens on TNA. TNA will respond to this discovery in accordance with its obligations under the FRCP.

4.      TNA objects to Instruction No. 4 to the extent it calls for TNA to respond to the requests by seeking information and/or materials that are not readily available and/or that are outside TNA's possession, custody or control. As a result, TNA objects to this instruction as it is overly broad, unduly burdensome and harassing. TNA will respond to this discovery in accordance with its obligations under the FRCP.

5.      TNA objects to Instruction No. 5 as it is overly broad, unduly burdensome and harassing as written, particularly in light of Defendant's definition of "TNA."

6.      TNA objects to Instruction No. 6 to the extent it attempts to require TNA to provide more information than is required by the FRCP. TNA further objects to this instruction as it is overly broad, unduly burdensome and harassing. TNA will respond to this discovery in accordance with its obligations under the FRCP.

7.      TNA objects to Instruction No. 8 as it is overly broad, unduly burdensome and harassing. TNA is under no obligation to gather information/materials from "whatever source available." TNA will respond to this discovery in accordance with its obligations under the FRCP.

8.     TNA objects to Instruction No. 9 to the extent it calls for information outside the scope of permissible discovery under the FRCP.  TNA also objects to this instruction as it is overly broad, unduly burdensome and harassing.  TNA will respond to this discovery in accordance with its obligations under the FRCP.

9.     TNA objects to Instruction No. 10 to the extent it calls for information outside the scope of permissible discovery.  As a result, TNA objects to this instruction as it is overly broad, unduly burdensome and harassing.  TNA will respond to this discovery in accordance with its obligations under the FRCP.

10.    TNA objects to Instruction No. 12 to the extent it calls for information/materials outside the scope of permissible discovery.  TNA will respond to this discovery in accordance with its obligations under the FRCP.

11.    TNA objects to Instruction No. 14 to the extent it calls for information/materials outside the scope of permissible discovery under the FRCP.  TNA also objects to this instruction as it is overly broad, unduly burdensome and harassing.  TNA will respond to this discovery in accordance with its obligations under the FRCP.

12.    TNA objects to Instruction No. 16 as it is overly broad, unduly burdensome and harassing.  TNA will respond to this discovery in accordance with its obligations under the FRCP.

13.    TNA objects to Instruction No. 17 as it is overly broad, unduly burdensome and harassing.  TNA further objects to this Instruction to the extent it calls for materials outside the scope of permissible discovery.  TNA will respond to this discovery in accordance with its obligations under the FRCP.

## II. OBJECTIONS TO DEFINITIONS

14. TNA objects to Definition No. 1 as it would require TNA to respond to these requests on behalf of persons or entities other than TNA and/or not subject to TNA's control.

15. TNA objects to Definition No. 2 as it would require TNA to respond to these requests on behalf of persons or entities other than TNA and/or not subject to TNA's control.

## III. OBJECTIONS AND RESPONSES TO FIRST INTERROGATORIES

**INTERROGATORY NO. 1:** Please state whether any employee, independent contractor, staff member, worker, Performer or applicant of TNA has ever filed an internal complaint with TNA alleging that TNA discriminated on the basis of race, color or national origin. If your answer is in the affirmative, with reference to each complaint of discrimination please:

      (a)    State the name, address, race and national original of the person who filed the complaint;

      (b)    State the date the complaint was made;

      (c)    Describe the charges made in the complaint; and

      (d)    Describe all actions taken on the basis of the complaint.

**ANSWER:**    TNA objects to this interrogatory as it is vague, ambiguous and confusing as to what Defendant means by the phrase "filed an internal complaint." TNA further objects to this interrogatory as it calls for information which is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. TNA also objects to this interrogatory as it is overly broad, unduly burdensome and harassing. Moreover, TNA objects to this interrogatory as it is not reasonably limited in time or scope. TNA further objects to this interrogatory as it calls for confidential information. Subject to this objection and without waiving same, no such complaint has been "filed," except to the extent this interrogatory would encompass the claims referenced in Defendant's counterclaims at page 10, paragraphs 14 and 15. In response to these claims (that were first made in July 2007), TNA investigated the alleged inappropriate conduct and determined the conduct complained about was not discriminatory. TNA has additional information that it will supplement in response to this interrogatory once a protective order is entered in this case. See all documents produced by TNA herein.

**INTERROGATORY NO. 2:** Please state whether any employee, independent contractor, staff member, worker, Performer, or applicant of TNA has ever filed any complaint with any federal, state or local government agency or court alleging that TNA discriminated on the basis of race, color, or national origin. If your answer is in the affirmative, for each such complaint of discrimination please:

(a)     State the name, address, race and national origin of the person who filed the complaint;

(b)     Identify the agency with which the Complaint was filed;

(c)     State the date the complaint was filed;

(d)     Describe the charges made in the complaint; and

(e)     Describe all actions taken on the basis of the complaint.

**ANSWER:**     TNA objects to this interrogatory as it calls for information which is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. TNA further objects to this interrogatory as it is overly broad, unduly burdensome and harassing. TNA also objects to this interrogatory as it is not reasonably limited in time or scope. Subject to the foregoing objections and without waiving same, no such complaint has been made, except to the extent it would encompass Defendant's alleged EEOC filing, which Defendant first disclosed to TNA in his demand letter and which Defendant presumably has in his possession or control.

**INTERROGATORY NO. 3:** Please identify (following the requirements set forth herein) the total number of Performers with whom TNA has entered into contracts, whether oral or written, during TNA's existence. For each such Performer, please provide the following information:

(a)     His or her legal and professional name;

(b)     His or her racial background, (*i.e.*, African or African-American, Hispanic/Latino; or Hispanic/Latino-American, Asian or Asian-American, Caucasian or Caucasian-American, or Other (please provide additional information regarding the racial background of any individual categorized as "Other");

(c)     His or her annual compensation;

(d)     The merchandising revenues, if any, he or she has ever been paid through TNA; and

(e)     His or her current status with TNA.

**ANSWER:**     TNA objects to this request as it is overly broad, unduly burdensome and harassing. TNA further objects to this request as it calls for information which is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, TNA objects to this request as it is not reasonably limited in time or scope and because it calls for confidential and proprietary information. Subject to the foregoing objections and without waiving same, see all documents produced by TNA herein.

**INTERROGATORY NO. 4:** Please identify (following the requirements set forth herein) each individual at TNA that (sic) has had any responsibility for booking matches and/or contributing to storylines and/or determining whether/when to schedule a particular Performer to perform, and/or determining the roles particular Performers played in wrestling matches/performances.

For each such individual, please provide the titles and dates associated with his or her employment in the position in which he or she had the authority to contribute to such determinations and his or her racial background, (*i.e.*, African or African-American, Hispanic/Latino or Hispanic/Latino-American, Asian or Asian-American, Caucasian or Caucasian-American).

> **ANSWER:** TNA objects to this interrogatory as it is overly broad, unduly burdensome and harassing, given Defendant's failure to reasonably limit the time or scope of the request. As a result, TNA further objects to this interrogatory as it calls for information which is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Subject to the foregoing objections and without waiving same, the following individuals have served in one or more of the roles inquired about: Jeff Jarrett is the Executive Vice President of Creative, and the Creative team has included Vince Russo, Dutch Mantel, Jerry Jarrett, Glen Gilbertti, Scott D'Amore, Jeremy Borash, Dusty Rhodes, Mike Tenay, Chris Park, Moody Melendez and Bill Banks.

**INTERROGATORY NO. 5:** Please state whether TNA is aware of any racist or bigoted communications, statements, jokes or comments made by anyone in its employment, under contract or within its control. If your answer is in the affirmative, for each such communication, statement, joke or comment, please provide:

> (a) A description of the communication, statement, joke or comment;
> (b) The date the communication, statement, joke or comment was made;
> (c) The identity of the individual who authored or made the communication, statement, joke or comment;
> (d) The identity of the individual(s) to whom the communication, statement, joke or comment was made or sent;
> (e) How TNA responded to the communication, statement, joke or comment;
> (f) The names and titles of those responsible for responding to or investigating the communication, statement, joke or comment; and
> (g) A description of all documents evidencing or referencing the communication, statement, joke or comment.

> **ANSWER:** TNA objects to this interrogatory as it is overly broad, unduly burdensome and harassing as asked. TNA further objects to this interrogatory as it calls for information which is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence because the interrogatory is not limited to any such communications that Defendant allegedly heard or observed. TNA also objects to this interrogatory as it calls for confidential information. Moreover, TNA objects to this interrogatory as it is not reasonably limited in time or scope. Subject to the foregoing objections and without waiving same, see TNA's response to Interrogatory No. 1, which TNA fully incorporates herein by reference.

**INTERROGATORY NO. 6:** Please state whether TNA at any time disciplined any individual employed by or under contract with TNA based on allegations that he or she had engaged in discriminatory conduct, whether on the basis of race, color or national or ethnic origin. If your answer is in the affirmative, for each such disciplinary action, please provide the following information:

      (a)   The identity of the individual disciplined;

      (b)   A description of the discriminatory conduct;

      (c)   The date of such disciplinary action;

      (d)   A description of the disciplinary action taken; and

      (e)   A description of all documents evidencing or referencing the discriminatory conduct and/or allegations of same.

    **ANSWER:**    TNA objects to this interrogatory as it is overly broad, unduly burdensome and harassing as asked. TNA further objects to this interrogatory as it calls for information which is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, TNA objects to this interrogatory as it calls for confidential information. Subject to the foregoing objections and without waiving same, see answer to Interrogatory No. 1, which TNA fully incorporates herein by reference.

**INTERROGATORY NO. 7:** Please state the total compensation, whether monetary, in kind, or otherwise, that TNA paid Mr. Ashenoff.

    **ANSWER:**    See all documents produced by TNA herein which provide this information.

**INTERROGATORY NO. 8:** Please describe TNA's policies and practices in investigating the backgrounds of employees prior to making hiring decisions.

    **ANSWER:**    TNA objects to this interrogatory as it calls for information which is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence and is vague to the specific types of employees. TNA further objects to this interrogatory as it is not reasonably limited in time or scope. As a result, TNA also objects to this interrogatory as it is overly broad, unduly burdensome and harassing. Subject to the foregoing objections and without waiving same, TNA's hiring practices are different for different positions it is seeking to fill and varies with each person considered.

**INTERROGATORY NO. 9:** Please state whether any TNA employees or independent contractors have ever been convicted or arrested for drug use, drug trafficking, or any other drug offense. If your answer is in the affirmative, please identify each such individual, the date on which they were arrested, the date on which they were convicted, the charges made against them, and the jurisdiction in which the proceedings occurred.

ANSWER:    TNA objects to this interrogatory as the information requested is equally accessible to TNA and Defendant. TNA further objects to this interrogatory as it calls for information which is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Subject to the foregoing objections and without waiving same, to TNA's knowledge, none of the Third Party Defendants to this litigation has been convicted of any of the crimes inquired about.

**INTERROGATORY NO. 10:** Please state whether any TNA employees or independent contractors other than Mr. Ashenoff have claimed, in any forum, that they have been injured as a consequence of their consumption of un-prescribed pain killers. If your answer is in the affirmative, please identify each such person.

ANSWER:    TNA objects to this interrogatory as it calls for information which is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Subject to the foregoing objections and without waiving same, none to TNA's knowledge.

**INTERROGATORY NO. 11:** Please state whether TNA has any policies regarding the use of prescription medications on an unprescribed basis by Performers, the use of steroids, human growth hormone, or controlled substances of any kind. If your answer is in the affirmative, please provide the following information:

    (a)    The identity of the person or persons within TNA who is responsible for enforcement of such policies;

    (b)    The date of the establishment and implementation of the policy; and

    (c)    The individuals against whom the policy has been enforced since its creation;

ANSWER:    TNA objects to this interrogatory as it is overly broad, unduly burdensome and harassing because Defendant has failed to reasonably limit the interrogatory by time or scope. As a result, TNA further objects to this interrogatory as it calls for information which is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. TNA also objects to this interrogatory because it seeks proprietary and/or confidential information. Subject to the foregoing objections and without waiving same, yes. As to the non-objectionable subparts of this interrogatory, TNA will produce responsive documents to this request once a protective order is entered in this case. TNA also answers as follows: (a) Dixie Carter; and (b) May 23, 2006.

**INTERROGATORY NO. 12:** With respect to the "LAX" logo/insignia (the "*LAX Logo*") that is regularly displayed on TNA broadcasts, please state:

    (a)    the identity of the owner of the LAX Logo;

---

    (b)    if the owner of the LAX Logo is not TNA, describe in detail (identifying documents in the course of such description) the factual and legal basis (*i.e.*, contract, license, assignment, purchase, or other method) by which TNA acquired the right to use the LAX Logo; and

    (c)    identify the person or persons who created all or part of the LAX Logo, or any draft or version thereof, and identify the portion of the LAX Logo such person created, and the date of such creation.

**ANSWER:**    TNA objects to this interrogatory as it calls for information which is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Subject to the foregoing objections and without waiving same:

    (a)    TNA is the owner.

    (b)    N/A.

**INTERROGATORY NO. 13:** With respect to the name and identifying mark "LAX", please state:

    (a)    the identity of the owner of the LAX Mark;

    (b)    if the owner of the LAX Mark is not TNA, describe in detail (identifying documents in the course of such description) the factual and legal basis (i.e., contract, license, assignment, purchase, or other method) by which TNA acquired the right to use the LAX Mark; and

    (c)    identify the person or persons who created all or part of the LAX Mark, or any draft or version thereof, and identify the portion of the LAX Mark such person created, and the date of such creation.

**ANSWER:**    TNA objects to this interrogatory as it calls for information which is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Subject to the foregoing objections and without waiving same:

    (a)    TNA is the owner.

    (b)    N/A.

**INTERROGATORY NO. 14:** Identify the number of TNA broadcasts, and the dates thereof, in which the LAX Mark or the LAX Logo appear and are used in any way, and state the amount of money TNA paid to the owner(s) of the LAX Mark and/or LAX Logo for the use of the LAX Mark and/or LAX Logo.

**ANSWER:**    TNA objects to this interrogatory as it is overly broad, unduly burdensome and harassing. TNA further objects to this interrogatory as it assumes facts not in evidence. Subject to the foregoing objections and without waiving same, TNA is the owner of the LAX mark and logo.

**INTERROGATORY NO. 15:** Identify and describe in detail each and every instance in which any person in the viewing public affirmatively indicated that such person associated the LAX Mark and/or the LAX Logo with: (a) TNA; (b) Charles Ashenoff (and all pseudonyms thereof); and/or (c) both TNA and Charles Ashenoff.

> **ANSWER:** TNA objects to this interrogatory as it is overly broad, unduly burdensome and harassing because it calls for information that best and most efficiently could be obtained through other types of discovery and because TNA should not bear the burden of determining the answer to this question. Moreover, TNA objects to this interrogatory as it calls for information which is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

**INTERROGATORY NO. 16:** As alleged in paragraph 18 of TNA's Original Complaint and Request for Declaratory Relief, please identify with reasonable detail every "opportunity" Mr. Ashenoff had available to him when determining whether to continue his contract with TNA.

> **ANSWER:** Mr. Ashenoff has stated in multiple correspondence/communications that he could perform in Mexico. See also all documents produced by TNA herein.

**INTERROGATORY NO. 17:** As alleged in paragraph 19 of TNA's Original Complaint and Request for Declaratory Relief, please explain in reasonable detail how the racial slurs identified in Mr. Ashenoff's demand letter were "part of, and necessary to, the creative process, and facilitated TNA's successful development of its entertainment product," and identify all persons involved in the creative process related to the development of TNA storylines or "entertainment product" involving or associated with Mr. Ashenoff.

> **ANSWER:** TNA objects to this interrogatory as it assumes facts not in evidence and mischaracterizes the Complaint. The specific statements alleged in paragraphs 14 and 15 of Mr. Ashenoff's counterclaims were denied as untrue. Subject to the foregoing objections and without waiving same, discussions concerning Mr. Ashenoff's gangster character, which Ashenoff created and developed prior to joining TNA, were necessary in connection with the events in which he and LAX participated. The storylines and videos from LAX events, which were largely decided upon and/or contributed to by Mr. Ashenoff, reveal the nature of these characters. As a result, TNA refers Defendant Ashenoff to these materials which will be produced once a protective order is entered into in this case and certain cost shifting agreements are entered into..

**INTERROGATORY NO. 18:** Please identify every event or performance for which TNA scheduled Mr. Ashenoff to perform. For each event or performance identified, please provide the date and location of the performance.

**ANSWER:**  TNA objects to this interrogatory as it is overly broad, unduly burdensome and harassing. TNA further objects to this interrogatory as it calls for information which is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Subject to the foregoing objections and without waiving same, see all documents produced by TNA herein which provide this information.

**INTERROGATORY NO. 19:** As alleged in paragraph 28 of TNA's Original Complaint and Request for Declaratory Relief, please identify every event or performance at which TNA alleges Mr. Ashenoff failed to appear. For each event or performance identified, please also state whether Mr. Ashenoff provided TNA with notice of his impending absences and what reason, if any, was provided to TNA by Mr. Ashenoff for his absence.

**ANSWER:**  Without permission, Defendant Ashenoff skipped tapings on June 19 and 20, 2007 because, according to Mr. Ashenoff, TNA would not agree to an immediate increase in compensation without further discussion. There were additional shows Ashenoff missed, and Plaintiff refers Defendant to all documents produced by TNA herein in support of this answer.

**INTERROGATORY NO. 20:** Please describe TNA's policies related to giving Performers notice of events at which they are expected to attend, attendance policies, and any practices TNA utilizes in suspending Performers for failing to attend scheduled events or performances.

**ANSWER:**  TNA objects to this interrogatory as it is not reasonably limited in time or scope. TNA also objects to this interrogatory as it calls for information which is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. TNA also objects to this interrogatory because it seeks proprietary and/or confidential information. TNA further objects to this interrogatory as it is not reasonably limited in time or scope. Subject to the foregoing objections and without waiving same, generally, TNA notifies talent of events they are expected to attend by email which is sent on Tuesday or Wednesday prior to the Sunday or Monday at which they are to perform; however, notice can be provided orally as well. Attendance policies are set forth in the talent contracts and the talent policies and procedures manual of May 23, 2006, which TNA will produce once a protective order is entered herein.

### IV.  REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:** Please produce for inspection and copying each and every contract, agreement, or understanding TNA entered into with any Performers.

**RESPONSE:**  TNA objects to this request as it is not reasonably limited in time or scope. TNA further objects to this request as it is overly broad, unduly burdensome and harassing. TNA also objects to this request as it calls for materials which are irrelevant and not reasonably calculated to lead to the

discovery of admissible evidence. Moreover, TNA objects to this request as it calls for proprietary information of TNA and confidential information of individuals not the subject of this lawsuit. Additionally, TNA objects to this request as it is not reasonably limited in time or scope. Subject to the foregoing objections and without waiving same, TNA agrees to produce all contracts between TNA and Defendant Ashenoff and directs Defendant's attention to all documents produced by TNA herein.

**REQUEST FOR PRODUCTION NO. 2:** Please produce for inspection and copying each and every document identified in your responses or relied upon in drafting your responses to Defendant's First Interrogatories to TNA.

> **RESPONSE:** TNA objects to this request as it is overly broad, unduly burdensome and harassing. TNA further objects to this request as it calls for attorney-client and work-product privileged materials. TNA also objects to this request because it seeks proprietary and/or confidential information. Subject to the foregoing objections and without waiving same, see all documents produced by TNA herein, together with other documents TNA will produce once a protective order is entered herein.

**REQUEST FOR PRODUCTION NO. 3:** Please produce for inspection and copying any and all rules, policies or regulations TNA has adopted that are intended to govern the conduct of their Performers, employees or independent contractor.

> **RESPONSE:** TNA objects to this request as it is overly broad, unduly burdensome and harassing to the extent it calls for contracts or correspondence with other Performers or employees of TNA. TNA further objects to this request as it calls for materials which are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. TNA also objects to this request as it is not reasonably limited in time or scope. Moreover, TNA objects to this request as it requests proprietary and/or confidential information. Subject to the foregoing objections and without waiving same, see all documents produced by TNA herein. TNA will produce further responsive documents once a protective order is entered herein.

**REQUEST FOR PRODUCTION NO. 4:** Please produce for inspection and copying each and every written communication between TNA and Mr. Ashenoff.

> **RESPONSE:** TNA objects to this request as it is overly broad, unduly burdensome and harassing. Subject to the foregoing objections and without waiving same, see all documents produced by TNA herein.

**REQUEST FOR PRODUCTION NO. 5:** Please produce for inspection and copying any and all documents reflecting upon or referring to any "wellness," drug screening, or similar policies or programs TNA has implemented.

**RESPONSE:** TNA objects to this request as it calls for attorney-client and/or work-product privileged information/materials. TNA objects to this request as it calls for materials which are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, TNA objects to this request as it is not reasonably limited in time or scope. TNA also objects to this request as it requests proprietary and/or confidential information. Subject to the foregoing objections, TNA will produce responsive documents once a protective order is entered herein.

**REQUEST FOR PRODUCTION NO. 6:** Please produce for inspection and copying any and all documents that relate to any and all inquiries or investigations conducted by TNA regarding its hiring practices and/or whether TNA engaged in any form of unlawful discrimination.

**RESPONSE:** TNA objects to this request as it calls for attorney-client and/or work-product privileged information/materials. TNA further objects to this request as it calls for information which is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. TNA also objects to this request as it is overly broad, unduly burdensome and harassing. Moreover, TNA objects to this request as it is not reasonably limited in time or scope. Subject to the foregoing objections and without waiving same, no non-privileged responsive documents exist to TNA's knowledge.

**REQUEST FOR PRODUCTION NO. 7:** Please produce for inspection and copying any and all documents, including any memos, minutes, or notes, that refer to or reflect upon any meetings, discussions and/or conversations, whether in public or private, that TNA has had with Mr. Ashenoff.

**RESPONSE:** TNA objects to this request as it calls for attorney-client and/or work-product privileged information/materials. TNA further objects to this request as it is overly broad, unduly burdensome and harassing. Additionally, TNA objects to this request as it requests proprietary and/or confidential information. Subject to the foregoing objections and without waiving same, see all documents produced by TNA herein,. TNA will produce further responsive documents once a protective order is entered herein.

**REQUEST FOR PRODUCTION NO. 8:** Please produce for inspection and copying any and all documents that constitute or refer to any policy, procedure, manual, rule, regulation or other guideline, whether written or oral, formal or informal, provided or authored by TNA regarding discrimination on the basis of race, color, or national origin.

**RESPONSE:** TNA objects to this request as it calls for attorney-client and/or work-product privileged information/materials. TNA further objects to this request as it calls for materials which are irrelevant and not reasonably

calculated to lead to the discovery of admissible evidence. TNA also objects to this request as it is not reasonably limited in time or scope. Additionally, TNA objects to this request as it requests proprietary and/or confidential information. Subject to the foregoing objections and without waiving same, TNA will produce responsive documents to this request once a protective order is entered in this case.

**REQUEST FOR PRODUCTION NO. 9:** Please produce for inspection and copying any and all documents, including any and all e-mails, sent or received by TNA that refer to any measures taken by TNA to address discrimination on the basis of race, color, or national origin, including any measures to address alleged or potential discrimination.

> **RESPONSE:** TNA objects to this request as it calls for attorney-client and/or work-product privileged information/materials. TNA further objects to this request as it calls for materials which are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Additionally, TNA objects to this request as it requests proprietary and/or confidential information. Subject to the foregoing objections and without waiving same, TNA will produce responsive documents to this request once a protective order is entered in this case.

**REQUEST FOR PRODUCTION NO. 10:** Please produce for inspection and copying any and all documents that identify the individuals employed by TNA as Bookers or writers of TNA storylines, including the names, addresses and other contact information for such persons.

> **RESPONSE:** TNA objects to this request as it calls for attorney-client and/or work-product privileged information/materials. TNA further objects to this request as it is overly broad, unduly burdensome and harassing, it is not reasonably limited by time or scope. As a result, TNA objects to this request as it calls for information which is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. By way of example, this request would theoretically include even telephone books in TNA's offices. Moreover, TNA objects to this request as it is not reasonably limited in time or scope. Additionally, TNA objects to this request as it requests proprietary and/or confidential information. Subject to the foregoing objections and without waiving same, see all documents produced by TNA herein. TNA will produce further responsive documents once a protective order is entered herein. TNA also refers Defendant to its answer to Defendant's Interrogatory No. 4.

**REQUEST FOR PRODUCTION NO. 11:** Please produce for inspection and copying any and all documents that identify the Performers who have worked for TNA (whether as an employee or an independent contractor), including the names, addresses and other contact information for such persons.

**RESPONSE:** TNA objects to this request as it calls for attorney-client and/or work-product privileged information/materials. TNA further objects to this request as it is overly broad, unduly burdensome and harassing because it is not reasonably limited by time or scope. As a result, TNA objects to this request as it calls for information which is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. By way of example, this request would theoretically include even telephone books in TNA's offices. Additionally, TNA objects to this request as it requests proprietary and/or confidential information. Subject to the foregoing objections and without waiving same, see all documents produced by TNA herein. TNA will produce further responsive documents once a protective order is entered herein.

**REQUEST FOR PRODUCTION NO. 12:** Please produce for inspection and copying any and all lists or rosters of Performers, independent contracts and employees of TNA for the period that TNA has ever created or caused to be created, including the names, addresses and other contact information for such persons.

**RESPONSE:** TNA objects to this request as it calls for attorney-client and/or work product privileged information/materials. TNA further objects to this request as it is overly broad, unduly burdensome and harassing because it is not reasonably limited by time or scope. Additionally, TNA objects to this request as it calls for proprietary and/or confidential information. Moreover, TNA objects to this request as it is vague, ambiguous and confusing as worded. Subject to the foregoing objections and without waiving same, TNA will produce responsive documents to this request once a protective order is entered in this case.

**REQUEST FOR PRODUCTION NO. 13:** Please produce for inspection and copying any and all documents that identify the race, color, ethnicity or national origin of the Performers who have ever worked with TNA (whether as an employee or an independent contractor).

**RESPONSE:** TNA objects to this request as it calls for attorney-client and/or work product privileged information/materials. TNA further objects to this request as it requests confidential information. Subject to the foregoing objections and without waiving same, TNA has no non-privileged, responsive documents other than various emails which will be produced by TNA once a protective order is entered in this case.

**REQUEST FOR PRODUCTION NO. 14:** Please produce for inspection and copying any and all documents that constitute or refer to fan surveys conducted by or on behalf of TNA to track, monitor, quantify or gauge any and all Performers' popularity.

**RESPONSE:** TNA objects to this request as it calls for attorney-client and/or work-product privileged information/materials. TNA further objects to this

request as it is overly broad, unduly burdensome and harassing. TNA also objects to this request as it calls for information which is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, TNA objects to this request as it is not reasonably limited in time or scope. Additionally, TNA objects to this request as it requests proprietary and/or confidential information. Subject to the foregoing objections and without waiving same, TNA will produce responsive documents to this request once a protective order is entered in this case.

**REQUEST FOR PRODUCTION NO. 15:** Please produce for inspection and copying any and all documents that describe how TNA determines whether to "push" or "put over" (as those terms are used in professional wrestling) a particular Performer.

> **RESPONSE:** TNA objects to this request as it calls for attorney-client and/or work product privileged information/materials. TNA further objects to this request as it calls for information which is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Additionally, TNA objects to this request as it requests proprietary and/or confidential information. Subject to the foregoing objections and without waiving same, TNA will produce responsive documents to this request once a protective order is entered in this case.

**REQUEST FOR PRODUCTION NO. 16:** Please produce for inspection and copying any and all documents that describe how TNA determines how to script wrestling matches or performances.

> **RESPONSE:** TNA objects to this request as it calls for attorney-client and/or work-product privileged information/materials. TNA further objects to this request as it requests proprietary and/or confidential information. Subject to the foregoing objections and without waiving same, none that describes the process in the manner inquired about.

**REQUEST FOR PRODUCTION NO. 17:** Please produce for inspection and copying any and all documents that TNA in any way utilized to evaluate, rate or rank Performers, whether subjectively or objectively.

> **RESPONSE:** TNA objects to this request as it calls for attorney-client and/or work product privileged information/materials. TNA further objects to this request as it is overly broad, unduly burdensome and harassing. Moreover, TNA objects to this request as it calls for materials which are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Subject to the foregoing objections and without waiving same, TNA will produce responsive documents to this request once a protective order is entered in this case.

**REQUEST FOR PRODUCTION NO. 18:** Please produce for inspection and copying any and all documents that constitute or refer to a performance evaluation of Mr. Ashenoff.

        **RESPONSE:** TNA objects to this request as it calls for attorney-client and/or work product privileged information/materials. TNA further objects to this request as it requests proprietary and/or confidential information. Subject to the foregoing objections and without waiving same, none other than various correspondence produced by TNA herein.

**REQUEST FOR PRODUCTION NO. 19:** Please produce for inspection and copying any and all files maintained by TNA or any employee, staff member, manager, supervisor, or other worker of TNA relating to Mr. Ashenoff, including without limitation, his personnel file and any records pertaining to his duties, salary, compensation, evaluations, promotions, discharge or termination.

        **RESPONSE:** TNA objects to this request as it calls for attorney-client and/or work-product privileged information/materials. TNA further objects to this request as it is overly broad, unduly burdensome and harassing. As a result, TNA objects to this request as it calls for information which is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Additionally, TNA objects to this request as it requests proprietary and/or confidential information. Subject to the foregoing objections and without waiving same, see all documents produced by TNA herein. Further documents will be produced that are responsive to this request upon entry of a protective order in this case.

**REQUEST FOR PRODUCTION NO. 20:** Please produce for inspection and copying any and all documents, including without limitation, any and all organizational charts, personnel charts, descriptions, lists, tables, flow charts or other similar documents, that show the identities, titles or responsibilities of each person responsible in any manner for personnel, recruitment, hiring, selection, training, discipline, demotion, and/or termination at TNA.

        **RESPONSE:** TNA objects to this request as it is overly broad, unduly burdensome and harassing because it is not reasonably limited by time or scope. For example, like other requests, this request theoretically could call for TNA to produce all telephone books in its possession. As a result, TNA objects to this request as it calls for information which is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. TNA further objects to this request as it calls for attorney-client and/or work-product privileged information/materials. Additionally, TNA objects to this request as it requests proprietary and/or confidential information. Subject to the foregoing objections and without waiving same, TNA will produce responsive documents to this request once a protective order is entered in this case.

**REQUEST FOR PRODUCTION NO. 21:** Please produce for inspection and copying any and all documents, including without limitation, any and all organization charts, personnel charts, descriptions, lists, tables, flow charts or other similar documents that reflect upon the relationship between TNA and any parent, subsidiary or affiliated corporation.

        **RESPONSE:** TNA objects to this request as it calls for materials which are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. TNA's affiliates and parents are not parties to this litigation, and this request amounts to nothing more than a fishing expedition that is outside the scope of permissible discovery. As a result, TNA further objects to this request as it is overly broad, unduly burdensome and harassing. Moreover, TNA objects to this request as it is not reasonably limited in time or scope. Additionally, TNA objects to this request as it requests proprietary and/or confidential information. TNA also objects to this request as it calls for attorney-client and/or work-product privileged information/materials.

**REQUEST FOR PRODUCTION NO. 22:** Please produce for inspection and copying any and all documents, including without limitation, any and all organizational charts, personnel charts, descriptions, lists, tables, flow charts or other similar documents that show the management structure of TNA (i.e., to whom each and every manager, supervisor, director, officer or other individual that works for TNA in a managerial or supervisory capacity reports).

        **RESPONSE:** TNA objects to this request as it is overly broad, unduly burdensome and harassing. TNA further objects to this request as it calls for attorney-client and/or work product privileged information/materials. Additionally, TNA objects to this request as it requests proprietary and/or confidential information and is not reasonably limited by time or scope. TNA further objects to this request as it calls for materials that are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Subject to the foregoing objections and without waiving same, TNA will produce responsive documents to this request once a protective order is entered in this case.

**REQUEST FOR PRODUCTION NO. 23:** Please produce for inspection and copying any and all agreements, contracts or other documents reflecting upon, referring to, or constituting agreements between TNA and Panda Energy Company.

        **RESPONSE:** TNA objects to this request as it calls for materials which are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. TNA's affiliates and parents are not parties to this litigation, and this request amounts to nothing more than a fishing expedition that is outside the scope of permissible discovery. As a result, TNA further objects to this request as it is overly broad, unduly burdensome and harassing. TNA also objects to this request as it is not reasonably limited in time or scope. Moreover, TNA objects to this request as it requests

proprietary and/or confidential information. Additionally, TNA objects to this request as it calls for attorney-client and/or work-product privileged information/materials.

**REQUEST FOR PRODUCTION NO. 24:** Please produce for inspection and copying any and all documents that reflect upon or refer to transfers of funds between TNA and Panda Energy Company.

> **RESPONSE:** TNA objects to this request as it calls for materials which are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. TNA's affiliates and parents are not parties to this litigation, and this request amounts to nothing more than a fishing expedition that is outside the scope of permissible discovery. As a result, TNA further objects to this request as it is overly broad, unduly burdensome and harassing. Moreover, TNA objects to this request as it is not reasonably limited in time or scope. TNA objects to this request as it requests proprietary and/or confidential information. Additionally, TNA objects to this request as it calls for attorney-client and/or work-product privileged information/materials.

**REQUEST FOR PRODUCTION NO. 25:** Please produce for inspection and copying any and all documents that reflect upon or refer to anything of value passing between TNA and Panda Energy Company.

> **RESPONSE:** TNA objects to this request as it calls for materials which are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. TNA's affiliates and parents are not parties to this litigation, and this request amounts to nothing more than a fishing expedition that is outside the scope of permissible discovery. As a result, TNA further objects to this request as it is overly broad, unduly burdensome and harassing. Moreover, TNA objects to this request as it is not reasonably limited in time or scope. TNA objects to this request as it requests proprietary and/or confidential information. Additionally, TNA objects to this request as it calls for attorney-client and/or work-product privileged information/materials.

**REQUEST FOR PRODUCTION NO. 26:** Please produce for inspection and copying any and all documents that refer to the relationship between TNA and Panda Energy Company, including without limitation, any articles of incorporation, corporate by-laws, or SEC filings of Panda and/or TNA.

> **RESPONSE:** TNA objects to this request as it calls for materials which are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. TNA's affiliates and parents are not parties to this litigation, and this request amounts to nothing more than a fishing expedition that is

outside the scope of permissible discovery.   As a result, TNA further
objects to this request as it is overly broad, unduly burdensome and
harassing. Moreover, TNA objects to this request as it is not reasonably
limited in time or scope. TNA objects to this request as it requests
proprietary and/or confidential information. Additionally, TNA objects to
this request as it calls for attorney-client and/or work-product privileged
information/materials.    TNA further objects to this request as the
information requested is equally accessible to Plaintiffs and Defendant.

**REQUEST FOR PRODUCTION NO. 27:** Please produce for inspection and copying any and
all documents that constitute or refer to financial transactions between TNA and Panda Energy
Company.

> **RESPONSE:** TNA objects to this request as it calls materials which are irrelevant and
> not reasonably calculated to lead to the discovery of admissible evidence.
> TNA's affiliates and parents are not parties to this litigation, and this
> request amounts to nothing more than a fishing expedition that is outside
> the scope of permissible discovery.  As a result, TNA further objects to
> this request as it is overly broad, unduly burdensome and harassing.
> Moreover, TNA objects to this request as it is not reasonably limited in
> time or scope. TNA objects to this request as it requests proprietary and/or
> confidential information. Additionally, TNA objects to this request as it
> calls for attorney-client and/or work-product privileged information/
> materials.

**REQUEST FOR PRODUCTION NO. 28:**    Please produce for inspection and copying any
and all insurance policies that TNA has or has had that covers any liability arising from
employment practices.

> **RESPONSE:** TNA objects to this request as it requests proprietary and/or confidential
> information. Subject to the foregoing objections and without waiving
> same, see the declaration page of TNA's insurance policy that may cover
> the claims made by Defendant.

**REQUEST FOR PRODUCTION NO. 29:** Please produce for inspection and copying any
and all documents that constitute or refer to communications by, between or among any
employee, manager, supervisor, staff member or other worker of TNA that contain any racial or
bigoted statement, epithet, or joke, and/or refers to any Performer's race, ethnicity, color or
national origin.

> **RESPONSE:** TNA objects to this request as it calls for attorney-client and/or work-
> product privileged information/materials.   TNA further objects to this
> request as it is overly broad, unduly burdensome and harassing as it would
> require searches for every document, electronic or otherwise, of TNA, its
> employees and independent contractors. This request is nothing more than

a fishing expedition that is outside the scope of permissible discovery. Moreover, TNA objects to this request as it calls for materials which are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. TNA further objects to this interrogatory as it calls for confidential information. Subject to the foregoing objections and without waiving same, see all documents produced by TNA herein. Additional documents will be produced upon execution of a protective order in this case.

**REQUEST FOR PRODUCTION NO. 30:** Please produce for inspection and copying any and all document retention policies adopted by TNA.

RESPONSE: TNA objects to this request as it calls for attorney-client and/or work-product privileged information/materials. Subject to the foregoing objections and without waiving same, as discussed with Defendant's attorneys early on in the case, TNA has implemented a litigation hold to preserve relevant information.

**REQUEST FOR PRODUCTION NO. 31:** Please produce for inspection and copying any and all documents that reflect upon any drug policies adopted by or promulgated by TNA.

RESPONSE: TNA objects to this request as it calls for attorney-client and/or work product privileged information/materials. TNA further objects to this request as it calls for materials which are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, TNA objects to this request as it is not reasonably limited in time or scope. TNA further objects to this request as it requests proprietary and/or confidential information. Subject to the foregoing objections and without waiving same, TNA will produce responsive documents to this request once a protective order is entered in this case.

**REQUEST FOR PRODUCTION NO. 32:** Please produce for inspection and copying any and all documents that refer to or reflect upon the use of pain killers, steroids, human growth hormone, or any illegal narcotic or drug by TNA Performers.

RESPONSE: TNA objects to this request as it calls for attorney-client and/or work-product privileged information/materials. TNA further objects to this request as it is overly broad, unduly burdensome and harassing as it would require searches of every document, electronic and otherwise, of TNA and its employees and independent contractors. TNA also objects to this request as it is not reasonably limited in time or scope. This request is nothing more than a fishing expedition that is outside the scope of permissible discovery. Moreover, TNA objects to this request as it calls materials which are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. TNA further objects to this request as it

requests proprietary and/or confidential information. Subject to the foregoing objections and without waiving same, TNA will produce responsive documents to this request once a protective order is entered in this case—in particular, policies and procedures relating to this topic.

**REQUEST FOR PRODUCTION NO. 33:** Please produce for inspection and copying any and all documents that reflect upon any efforts undertaken by TNA to educate its Performers and employees to the dangers of drug abuse.

    **RESPONSE:** TNA objects to this request as it calls for attorney-client and/or work-product privileged information/materials. TNA further objects to this request as it calls for materials which are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. TNA also objects to this request as it requests proprietary and/or confidential information. Moreover, TNA objects to this request as it is not reasonably limited in time or scope. Subject to the foregoing objections and without waiving same, TNA will produce responsive documents to this request once a protective order is entered in this case.

**REQUEST FOR PRODUCTION NO. 34:** Please produce for inspection and copying any and all documents that reflect upon the dates and times of all TNA events since TNA's inception.

    **RESPONSE:** TNA objects to this request as it is overly broad, unduly burdensome and harassing. TNA further objects to this request as it calls for attorney-client and/or work-product privileged information/materials. TNA objects to this request as it is not reasonably limited by time or scope. As a result, TNA objects to this request as it calls for materials which are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Subject to the foregoing objections and without waiving same, see all documents produced by TNA herein.

**REQUEST FOR PRODUCTION NO. 35:** Please produce for inspection and copying any and all documents that reflect upon the compensation paid to TNA Performers, including Defendant Ashenoff.

    **RESPONSE:** TNA objects to this request as it calls for attorney-client and/or work-product privileged information/materials. TNA further objects to this request as it requests confidential and/or proprietary information. Moreover, TNA objects to this request as it calls for materials which are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. TNA objects to this request as it is overly broad, unduly burdensome and harassing because it is not reasonably limited by time of scope. Subject to the foregoing objections and without waiving same, see all documents produced by TNA herein relating to Defendant Ashenoff.

**REQUEST FOR PRODUCTION NO. 36:** Please produce for inspection and copying any and all documents that reflect upon any investigation of the backgrounds of Vince Russo and/or Terry Taylor prior to their being hired by TNA.

> **RESPONSE:** TNA objects to this request as it calls for attorney-client and/or work-product privileged information/materials. TNA further objects to this request as it calls for materials which are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. TNA also objects to this request as the information requested is equally accessible to Plaintiffs and Defendant. Subject to the foregoing objections and without waiving same, none other than publicly available information.

**REQUEST FOR PRODUCTION NO. 37:** Please produce for inspection and copying any and all documents that reflect upon TNA's policies or practices regarding the use of Performers when and while they are injured.

> **RESPONSE:** TNA objects to this request as it calls for attorney-client and/or work-product privileged information/materials. TNA objects to this request as it is not reasonably limited by time or scope. As a result, TNA objects to this request as it calls for materials which are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Subject to the foregoing objections and without waiving same, none other than correspondence too burdensome to collect given any probative value.

**REQUEST FOR PRODUCTION NO. 38:** Please produce for inspection and copying any and all documents that reflect upon TNA's policies or practices regarding treatment of Performers when and while they are injured, including the providing of medical attention and/or therapeutic services of any kind.

> **RESPONSE:** TNA objects to this request as it calls for attorney-client and/or work-product privileged information/materials. TNA also objects to this request as it is not reasonably limited by time or scope. As a result, TNA further objects to this request as it calls for materials which are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. TNA lastly objects to this request as it is overly broad, unduly burdensome and harassing. Subject to the foregoing objections and without waiving same, a doctor and a trainer are on-site at IMPACT! and Pay Per View performances, but have no written contracts. An EMT and/or a doctor is also present at TNA House Shows.

**REQUEST FOR PRODUCTION NO. 39:** Please produce for inspection and copying any and all documents that reflect upon TNA's policies or practices regarding the monitoring of the condition of Performers who have been injured, including efforts to ensure that Performers are fully recovered and capable of returning to work before they are used in events.

**RESPONSE:** TNA objects to this request as it calls for attorney-client and/or work-product privileged information/materials. TNA also objects to this request as it is not reasonably limited by time or scope. As a result, TNA further objects to this request as it calls for materials which are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. TNA lastly objects to this request as it is overly broad, unduly burdensome and harassing. Subject to the foregoing objections and without waiving same, a doctor and a trainer are on-site at IMPACT! and Pay Per View performances, but have no written contracts. An EMT and/or a doctor is also present at TNA House Shows

**REQUEST FOR PRODUCTION NO. 40:** Please produce for inspection and copying any and all documents that reflect upon or refer to the recreational use of drugs by members of the management team at TNA.

**RESPONSE:** TNA objects to this request as it calls for attorney-client and/or work-product privileged information/materials. TNA further objects to this request as it is overly broad, unduly burdensome and harassing to look for documents which have no bearing on the instant litigation. Moreover, TNA objects to this request as it calls for materials which are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. TNA also objects to this request as it requests confidential information. Additionally, TNA objects to this request as it is not reasonably limited in time or scope.

**REQUEST FOR PRODUCTION NO. 41:** Please produce for inspection and copying any and all documents that refer to, reflect upon or relate to any investigation of drug use within TNA by management, Performers or others.

**RESPONSE:** TNA objects to this request as it calls for attorney-client and/or work-product privileged information/materials. TNA further objects to this request as it requests confidential information. Moreover, TNA objects to this request as it is overly broad, unduly burdensome and harassing. TNA also objects to this request as it calls for materials which are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. TNA also objects to this request as it is not reasonably limited in time or scope. Subject to the foregoing objections and without waiving same, TNA will produce responsive documents once a protective order is entered herein.

**REQUEST FOR PRODUCTION NO. 42:** Please produce for inspection and copying any and all rules, policies or regulations TNA has adopted that are intended to govern the attendance of its Performers at scheduled events and/or performances.

---

**RESPONSE:** TNA objects to this request as it is not reasonably limited by time or scope. As a result, TNA objects to this request as it calls for information which is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. TNA also objects to this interrogatory because it seeks proprietary and/or confidential information. Subject to the foregoing objections and without waiving same, see all documents produced by TNA herein. TNA will produce further responsive documents once a protective order is entered herein.

Respectfully submitted,

**FULBRIGHT & JAWORSKI L.L.P.**

Richard S. Krumholz
State Bar No. 00784425
Peter J. Stokes
State Bar No. 24028017
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201
Telephone:     214/855-8022
Facsimile:     214/855-8200

ATTORNEYS FOR PLAINTIFF TNA
ENTERTAINMENT, LLC

## CERTIFICATE OF SERVICE

This pleading was served in accordance with the Federal Rules of Civil Procedure, via

U.S. Post Office Express Mail, on the following counsel of record on September 19  , 2008:

Cary Ichter
Adriana Midence
ADORNO & YOSS, LLC
Two Midtown Plaza, Suite 1500
1349 W. Peachtree Street, N.W.
Atlanta, Georgia  30309

Kevin Wiggins
Tracey Wallace
ADORNO YOSS WHITE & WIGGINS LLP
Bank of America Plaza, Suite 6200
901 Main Street
Dallas, Texas 75202

Robert Blackwell
BROWN & HOFMEISTER, L.L.P.
740 E. Campbell Road, Suite 800
Richardson, Texas  75081

Richard Krumholz

## VERIFICATION

STATE OF TENNESSEE        §
                                          §

COUNTY OF DAVIDSON       §

     BEFORE ME the undersigned notary public on this date personally appeared Dixie Carter, known to me to be the person whose name is subscribed hereto who being by me first duly sworn on oath states that he/she has read the foregoing PLAINTIFF TNA ENTERTAINMENT, LLC'S ANSWERS TO DEFENDANTS' FIRST INTERROGATORIES and that each and every statement of fact contained in Plaintiffs' answers to Interrogatories are true and correct to the best of her knowledge and belief. These answers are based upon her own personal knowledge, her review of corporate documents, or based upon facts related to him by others, or their representatives or representatives of corporate parties, which she believes to be true and correct.

                                                                  Dixie Carter
                                                                  as President of Plaintiff TNA

     Sworn to and subscribed before me on this the _12_ day of September, 2008 to certify which witness my hand and seal of office.

Notary Public in and for the State of Tennessee

My Commission Expires

April 16, 2011

CAROLINE HALEY WILLIAMS
STATE OF TENNESSEE
NOTARY PUBLIC
RUTHERFORD COUNTY

---

EXHIBIT

D

## ADORNO & YOSS

A LIMITED LIABILITY CORPORATION
1349 W. PEACHTREE STREET, NE, SUITE 1500
ATLANTA, GA 30309
PHONE: (404) 347-8300, FAX: (404) 347-8395
WWW.ADORNO.COM

CARY ICHTER

DIRECT LINE: (404) 347-8486
DIRECT FAX: (404) 601-5897
EMAIL: CICHTER@ADORNO.COM

September 26, 2008

**VIA E-Mail**
Richard Krumholz, Esq.
Fulbright & Jaworski, LLP
Fulbright Tower, Suite 2200
2200 Ross Avenue
Dallas, TX 75201-2784

Re:   **TNA Entertainment, LLC v. Ashenoff; Northern District of
      Texas, Dallas Division; Civil Action File No. 808-cv-522-B**

Dear Richard:

We are in receipt of TNA Entertainment, LLC's ("TNA") Objections and Responses
to Defendant's First Interrogatories and First Requests for Production of Documents
("Responses"). Many of TNA's Responses fall woefully short of satisfying TNA's
obligations under the Federal Rules of Civil Procedure ("FRCP"). Therefore, pursuant to
Rule 37(a)(2) of the FRCP and Local Rule 7.1, the purpose of this letter is to confer in good
faith regarding TNA's incomplete Responses prior to seeking the intervention of the Court.

Specifically, the following Responses are insufficient:

## I.   **Interrogatories**

**Interrogatory No. 3**: TNA is required to identify the total number of Performers with
whom it has entered into contracts, whether oral or written, during its existence. For each
Performer, TNA is required to provide: (a) his or her legal and professional name; (b) his or
her racial background; (c) his or her annual compensation; (d) the merchandising revenues, if
any, he or she has ever been paid through TNA; and (e) his or her current status with TNA.

In response to Interrogatory No. 3, TNA refers Mr. Ashenoff to its document
production. With the exception of a few documents that reference various wrestling
personalities by name, none of the requested information is contained in TNA's document
production. Given TNA's relatively short existence and limited roster of Performers,
locating this information can hardly be described as burdensome and should be easily
accessible by computer. Finally, as Mr. Ashenoff alleges he was paid substantially less than

{A0248702_1}

CALIFORNIA   FLORIDA   GEORGIA   ILLINOIS   MASSACHUSETTS   MISSOURI   NEW JERSEY   NEW YORK   TEXAS   WASHINGTON, D.C.

ATTORNEYS ADMITTED SOLELY IN THE JURISDICTION WHERE LISTED OFFICE IS LOCATED, UNLESS OTHERWISE NOTED

Richard Krumholz, Esq.
September 26, 2008
Page 2

other TNA Performers because of his ethnicity, this information is undoubtedly relevant to the instant action. Therefore, please provide the requested information.

**Interrogatory No. 4:** TNA is required to identify each individual at TNA who has any responsibility for booking matches and/or contributing to storylines. For each individual identified, TNA is required to provide the individual's title, dates associated with his/her employment in said position, and his/her racial background.

In response to Interrogatory No. 4, TNA identified several individuals that have "served in one or more of the roles inquired about," but none of the specific information regarding each individual's title, dates of employment and racial background is provided. Therefore, please supplement this Response accordingly.

**Interrogatory No. 5:** TNA is required to state whether it is aware of any racist or bigoted communications, statements, jokes or comments made by anyone in its employment, under contract or within its control. For each such communication, statement, joke or comment, additional descriptive information is requested.

In response to Interrogatory No. 5, TNA refers Mr. Ashenoff to its response to Interrogatory No. 1, which is non-responsive. If TNA is unaware of any racist or bigoted communications, statements, jokes or comments made by anyone in its employment, under contract, or within its control, please affirmatively state as such. If Mr. Ashenoff's allegations of discrimination are the only racist or bigoted comments of which TNA is aware, please affirmatively state as such. If TNA is not aware of any such communication or comments, please so indicate.

**Interrogatory No. 6:** TNA is required to state whether it has at any time disciplined any employee or individual under contract based on an allegation of discriminatory conduct. For each disciplinary act identified, certain descriptive information is required.

In response to Interrogatory No. 6, TNA refers Mr. Ashenoff to its response to Interrogatory No. 1, which is non-responsive. If TNA has never disciplined any employee or individual under contract because of an allegation of discriminatory conduct, please affirmatively state as such. If it has, please provide the requested details.

**Interrogatory No. 7:** TNA is required to state the total compensation, whether monetary, in kind, or otherwise, that it has paid to Mr. Ashenoff.

In response to Interrogatory No. 7, TNA simply refers Mr. Ashenoff to "all documents" produced thus far. Pursuant to Rule 33 of the FRCP, please specify the Bates number range of all responsive documents. We are not required to guess as to the documents to which TNA is referring.

CALIFORNIA    FLORIDA    GEORGIA    ILLINOIS    MASSACHUSETTS    MISSOURI    NEW JERSEY    NEW YORK    TEXAS    WASHINGTON, D.C.

ATTORNEYS ADMITTED SOLELY IN THE JURISDICTION WHERE LISTED OFFICE IS LOCATED, UNLESS OTHERWISE NOTED

Richard Krumholz, Esq.
September 26, 2008
Page 3

**Interrogatory No. 8:** TNA is required to describe its policies and practices with regard to investigating the backgrounds of employees prior to making hiring decision.

In response to Interrogatory No. 8, TNA responds that its hiring practices are different for different positions it is seeking to fill and varies with each person considered. Mr. Ashenoff has asserted a counterclaim for negligent hiring, training and supervision; accordingly, he is entitled to know what steps TNA takes to investigate the backgrounds of all its employees prior to making hiring decisions, however varied they may be. Therefore, please provide the requested information.

**Interrogatory No. 11:** TNA is required to state whether it has any policies regarding the use of prescription medications on an un-prescribed basis by Performers, the use of steroids, human growth hormone, or controlled substances of any kind. TNA is also required to identify who is responsible for enforcing said policies, the date each policy was established and implemented at TNA, and against whom TNA has had to enforce the policy.

In response to Interrogatory No. 11, TNA responds that it does have such policies, which are enforced by Third-Party Defendant Carter and were established on May 23, 2006. TNA has failed, however, to specify against whom this policy has been enforced. Therefore, please identify the individuals against whom the policy has been enforced. If TNA contends that it will produce documents with this information, please specify the Bates number range of all responsive documents.

**Interrogatory No. 17:** TNA is required to explain in reasonable detail how the racial slurs identified in Mr. Ashenoff's demand letter were "part of, and necessary to, the creative process, and facilitated TNA's successful development of its entertainment product," and identify all persons involved in said creative process.

In response to Interrogatory No. 17, TNA refers Mr. Ashenoff to certain materials, including videos, which will be produced once "certain cost shifting agreements" are entered into. Please identify the steps TNA is taking to copy these videos and the estimated cost of producing same.

**Interrogatory No. 18:** TNA is required to identify every event or performance for which TNA scheduled Mr. Ashenoff to perform, and for each performance identified, the date and location of the performance.

In response to Interrogatory No. 18, TNA refers Mr. Ashenoff to its document production. With the exception of a few correspondence regarding Mr. Ashenoff's travel arrangements, TNA has not produced any documents which clearly identify every event or performance for which it scheduled Mr. Ashenoff to perform, nor the date and location of the performance. If TNA contends that document TNA000204-206 was Mr. Ashenoff's

ALIFORNIA   FLORIDA   GEORGIA   ILLINOIS   MASSACHUSETTS   MISSOURI   NEW JERSEY   NEW YORK   TEXAS   WASHINGTON, D.C.

ATTORNEYS ADMITTED SOLELY IN THE JURISDICTION WHERE LISTED OFFICE IS LOCATED, UNLESS OTHERWISE NOTED

Richard Krumholz, Esq.
September 26, 2008
Page 4

performance schedule, please affirmatively state as such and state where and when these performances were taped. Otherwise, please provide the information requested.

**Interrogatory No. 19**: TNA is required to identify every event or performance at which it alleges that Mr. Ashenoff failed to appear. For each performance identified, TNA is also required to state whether Mr. Ashenoff provided TNA with notice of his impending absence and the reason given for such absence.

In response to Interrogatory No. 19, TNA identified two performances and refers Mr. Ashenoff to its document production. Pursuant to Rule 33 of the FRCP, please specify the Bates number range of all responsive documents.

## II.     Requests to Produce Documents

Regarding TNA's Privilege Log, Mr. Ashenoff is entitled to additional information. Specifically, with the exception of the Third-Party Defendants and current counsel, it is indeterminable why certain documents have been withheld as privileged. Please revise TNA's Privilege Log to include the positions within TNA of each individual identified thereon, including whether each individual is an attorney.

Additionally, Mr. Ashenoff is operating with the understanding that communications with current counsel for the instant matter, *i.e.* Adorno & Yoss, LLC, Fulbright & Jaworski, LLP, and Brown and Hofmeister, LLP, are privileged and need not be included on a privilege log. Please confirm TNA's similar understanding.

Finally, several of TNA's Responses refer Mr. Ashenoff to see "all documents produced by TNA." Please clarify whether this is intended to communicate that TNA has produced all responsive documents within its possession, or is merely an instruction to Mr. Ashenoff to refer to the documents already produced. **For every Response containing this language, please specify the Bates number range of all responsive documents pursuant to Rule 33 of the FRCP.**

**Request No. 1:** TNA is required to produce each and every contract, agreement, or understanding it has entered into with any Performer.

In response to Request No. 1, TNA indicates it will produce all contracts between it and Mr. Ashenoff only. Mr. Ashenoff has asserted a claim for discrimination based on the terms and conditions of the relationship between the parties, including the amount paid by TNA to non-minority performers versus minority performers. Therefore, these documents are relevant to this action. Please produce the requested documents.

**Request No. 21:** TNA is required to produce all documents, including all organization charts, personnel charts, descriptions, lists, tables, flow charts or other similar documents

Richard Krumholz, Esq.
September 26, 2008
Page 5

that reflect upon the relationship between it and any parent, subsidiary or affiliated corporation.

In response to Request No. 21, TNA refuses to produce any responsive documents. As an initial matter, Mr. Ashenoff is entitled to know whether and to what extent TNA is externally controlled by another entity. Moreover, a review of the documents already produced by TNA reveals that individuals from another corporate entity, Panda Energy Company, exchanged e-mails with various individuals at TNA regarding how TNA should proceed in the face of Mr. Ashenoff's allegations. See, e.g., TNA000015-18 (e-mail communications sent to scampbell@pandaethanol.com); 207-216 (Fulbright & Jaworski, LLC engagement letter for TNA sent "care of" Panda Energy Company's counsel).

Indeed, several communications with counsel for Panda Energy Company are identified on TNA's Privilege Log, and these two entities appear to be operated from the same office space in Texas. Therefore, Mr. Ashenoff is entitled to know the extent to which Panda Energy Company (and any other entity) is involved in the management of TNA or TNA's treatment of Mr. Ashenoff. Therefore, please produce the requested documents.

**Request No. 23:** TNA is required to produce all agreements, contracts, or other documents reflecting upon, referring to, or constituting agreements between TNA and Panda Energy Company.

In response to Request No. 23, TNA refuses to produce any documents. Please see the discussion regarding Request No. 21 and provide the requested documents.

**Request No. 24:** TNA is required to produce all documents that reflect upon or refer to transfers of funds between TNA and Panda Energy Company.

In response to Request No. 24, TNA refuses to produce any documents. Please see the discussion regarding Request No. 21 and provide the requested documents.

**Request No. 25:** TNA is required to produce all documents that reflect upon or refer to anything of value passing between TNA and Panda Energy Company.

In response to Request No. 25, TNA refuses to produce any documents. Please see the discussion regarding Request No. 21 and provide the requested documents.

**Request No. 26:** TNA is required to produce all documents that refer to the relationship between TNA and Panda Energy Company, including, any articles of incorporation, corporate by-laws, or SEC filings.

In response to Request No. 26, TNA refuses to produce any documents. Please see the discussion regarding Request No. 21 and provide the requested documents.

CALIFORNIA   FLORIDA   GEORGIA   ILLINOIS   MASSACHUSETTS   MISSOURI   NEW JERSEY   NEW YORK   TEXAS   WASHINGTON, D.C.

ATTORNEYS ADMITTED SOLELY IN THE JURISDICTION WHERE LISTED OFFICE IS LOCATED, UNLESS OTHERWISE NOTED

Richard Krumholz, Esq.
September 26, 2008
Page 6

**Request No. 27:**  TNA is required to produce all documents that constitute or refer to financial transactions between TNA and Panda Energy Company.

In response to Request No. 27, TNA refuses to produce any documents.  Please see the discussion regarding Request No. 21 and provide the requested documents.

**Request No. 30:**  TNA is required to produce all document retention policies adopted by TNA.

In response to Request No. 30, TNA indicates that it has implemented a litigation hold to preserve "relevant information;" which is non-responsive.  While Mr. Ashenoff appreciates that TNA has implemented a litigation hold, he is entitled to review TNA's document retention policy.  Please produce the requested documents or, if TNA does not have a document retention policy, please affirmatively state as such.

**Request No. 35:**  TNA is required to produce all documents that reflect upon the compensation paid to TNA Performers, including Mr. Ashenoff.

In response to Request No. 35, TNA refers Mr. Ashenoff to its document production.  TNA has not, however, produced a single document that reflects upon the compensation paid to any Performer other than Mr. Ashenoff.  As stated in the above discussion of Interrogatory No. 3, Mr. Ashenoff is entitled to this information.  Therefore, please provide the requested documents.

**Request No. 36:**  TNA is required to produce all documents that reflect upon any investigation on the backgrounds of Vince Russo and/or Terry Taylor prior to being hired by TNA.

In response to Request No. 36, TNA responds "none other than publicly available information," which is non-responsive.  Mr. Ashenoff has asserted a counterclaim for negligent hiring, training and supervision.  Discovery regarding what TNA considered when hiring these individuals and when this information was considered is clearly relevant to this claim.  Therefore, please provide the requested documents, and, if TNA does not possess any responsive documents, please affirmatively state as such.

**Request No. 37:**  TNA is required to produce all documents that reflect upon TNA's policies or practices regarding the use of Performers when and while they are injured.

In response to Request No. 37, TNA responds "none other than correspondence too burdensome to collect given any probative value."  TNA has confirmed that it possesses documents that are responsive to this request, but has unilaterally decided that these documents are too burdensome to collect.  WE would appreciate your explaining the nature of this burden to us so we can consider revising our request.  TNA cannot, however,

CALIFORNIA   FLORIDA   GEORGIA   ILLINOIS   MASSACHUSETTS   MISSOURI   NEW JERSEY   NEW YORK   TEXAS   WASHINGTON, D.C.

ATTORNEYS ADMITTED SOLELY IN THE JURISDICTION WHERE LISTED OFFICE IS LOCATED, UNLESS OTHERWISE NOTED

Richard Krumholz, Esq.
September 26, 2008
Page 7

unilaterally make such a decision, in particular when Mr. Ashenoff has asserted a counterclaim based on TNA's practice of forcing Performers to work when injured and distributing painkillers to facilitate such performances. Therefore, please produce the requested documents.

**Request No. 38:**   TNA is required to produce all documents that reflect upon TNA's policies or practices regarding treatment of Performers when and while they are injured, including the provision of medical attention and/or therapeutic services of any kind.

In response to Request No. 38, TNA responds that various doctors, trainers and EMTs are present at different TNA performances, which is non-responsive. Additionally, this request is not limited to the written contracts between TNA and its doctors, trainers or EMTs. Therefore, please provide the requested documents.

**Request No. 39:**   TNA is required to produce all documents that reflect upon TNA's policies or practices regarding the monitoring of the condition of Performers who have been injured.

In response to Request No. 39, TNA provides the same information given in response to Request No. 38. Please see the discussion regarding Request No. 38 and provide the requested documents.

**Request No. 40:**   TNA is required to produce all documents that reflect upon or refer to the recreational use of drugs by members of the management team at TNA.

In response to Request No. 40, TNA refuses to produce any documents. Mr. Ashenoff has asserted counterclaims related to the drug culture at TNA, in particular among management. The scope of Request No. 40 is limited to the corporate existence of TNA. Therefore, produce the requested documents.

Please supplement TNA's Responses within ten (10) business days of the date of this letter. If TNA refuses to supplement its Responses, Mr. Ashenoff will file a Motion to Compel this information and documents. As set forth above, please consider this letter Mr. Ashenoff's good faith effort to confer and resolve these discovery issues without seeking the Court's involvement.

CALIFORNIA   FLORIDA   GEORGIA   ILLINOIS   MASSACHUSETTS   MISSOURI   NEW JERSEY   NEW YORK   TEXAS   WASHINGTON, D.C.

ATTORNEYS ADMITTED SOLELY IN THE JURISDICTION WHERE LISTED OFFICE IS LOCATED, UNLESS OTHERWISE NOTED

Richard Krumholz, Esq.
September 26, 2008
Page 8

We look forward to TNA's additional responses and documents.

Sincerely,

Cary Ichter
ADORNO & YOSS, LLC

CI/am

cc:   Adriana Midence, Esq.
      Mr. Carlos Ashenoff

CALIFORNIA    FLORIDA    GEORGIA    ILLINOIS    MASSACHUSETTS    MISSOURI    NEW JERSEY    NEW YORK    TEXAS    WASHINGTON, D.C.

ATTORNEYS ADMITTED SOLELY IN THE JURISDICTION WHERE LISTED OFFICE IS LOCATED, UNLESS OTHERWISE NOTED

EXHIBIT

E

In a message dated 7/9/2007 3:11:12 PM Central Daylight Time, dbroadhead@tnawrestling.com writes:

Dixie & Jeff;

I concur with Terry. Let's not allow this to boil. Let's decide the Ron Killing's issue in 24 hours, by 3:00PM Tuesday, July 10, 2007. Let's complete the Konnan move by Friday, July 13, 2007. No more money goes out to pay either one of them.

Dean

Dean Broadhead
TNA Entertainment, LLC
209 10th Ave S.
Nashville, TN 37203
(615)244-5557 Business
(615)244-5755 Fax

This electronic message transmission, which includes this e-mail message and any attachments, is confidential, for the sole use of the intended recipient(s) and may contain privileged attorney-client information or work product. If you are not the intended recipient, be aware that any review, disclosure, copying, distribution or use of the contents of this electronic transmission is prohibited. If you have received this electronic transmission in error, please immediately contact the sender by reply e-mail, destroy all hard copies of the original message and attachments and delete same from your system. Because e-mail can be altered electronically, the integrity of this communication cannot be guaranteed.
Thank you.

---

**From:** terry taylor [mailto:terrytaylor812@yahoo.com]
**Sent:** Monday, July 09, 2007 2:50 PM
**To:** Dean Broadhead
**Cc:** Dixie Carter; Jeff AOL
**Subject:** Fw: Ron

Terry Taylor
TNA Entertainment
Director of Talent Relations
209 10th Ave S.
Suite 302
Nashville, TN 37203
Off 615-244-5557
Fax 615-254-5488
ttaylor@tnawrestling.com

----- Forwarded Message ----
From: Terry Taylor <terrytaylor812@msn.com>
To: terrytaylor812@yahoo.com
Sent: Monday, July 9, 2007 1:53:38 PM
Subject: FW: Ron

------------------------------------------
> From: terrytaylor812@msn.com

CONFIDENTIAL

TNA001441

> To: dbroadhead@tnawrestling.com
> CC: jj4jarrett@aol.com; dcarter@trifecta-ent.com
> Subject: FW: Ron
> Date: Mon, 9 Jul 2007 12:42:27 -0400
>
>
> Here's Ronnie Killings' last email.
> Unless I hear otherwise,  we are suspending him and will make arrangements to collect on the promissory note.
> Ronnie is booking himself (breach) and keeping the money when we paid him $20K in draws. That's a breach also.
> I don't know if a working relationship can be salvaged.
> Thanks,
> Terry
>
>
>
>
>
> _____
> > Date: Sat, 7 Jul 2007 10:25:13 -0700
> > From: ronniekillings@yahoo.com
> > Subject: RE: Ron
> > To: terrytaylor812@msn.com
> >
> > Terry,
> > the $20,000 TNA paid me it's not money that TNA give me for present but money  that i suppose to have every month ("EXHIBIT A" on the contract)...and about the $8,ooo that the company fronted to my surgery i don't have to thank nobody because 1) i'll give all that money back to the company and 2) I'M SORRY IF I GET HURT WHEN I WERE WORKING IN TNA RING...but i want let you know that if i was in WWE the company pay my surgery without pretend any money back...i don't get hurt at home but in the " TNA  ring"!
> > If i'm talking about race is because someone there always treat me like a niggar and someone (and you know who) call me neggar in front of everybody...and the same person told me and you and everybody that he is racist....so...why i have to think that TNA treat me like a nigghar right?
> > My financial situation is a result of  the mentality of the people who i was working for ,and not a result of a choices i made Terry.
> > P.S. Please don't call me on my cell phone because it's roaming in mexico and i have no money to pay my phone bild....TNA didn't send me my ceck.
> > And i think i'll stay in mexico more time...because they want me to stay here to help me like nobody else do in the last 5 years,thanks to them i have money in my pocket now....with no politics.
> > Ronnie
> > Terry Taylor  wrote:
> > Ronnie,
> > I'm not interested in getting into a pissing match with you regarding this.
> > You focus on not getting a $2,400 check, but have failed to acknowledge the $20,000 TNA paid you while you were injured or the $8,000 the company fronted you so you could get surgery.
> > You should be ashamed of yourself trying to make this about race.
> > Your financial situation is a result of choices you made, not some circumstance over which you had no control.
> > Stop blaming the company for your problems and accept some personal accountability.
> > We are going to come to an understanding on this.
> > I look forward to discussing this with you Friday.
> > Terry
> > _____
> > Date: Wed, 4 Jul 2007 06:46:02 -0700
> > From: ronniekillings@yahoo.com
> > Subject: Ron
> > To: terrytaylor812@msn.com
> > Good morning Tna....

CONFIDENTIAL

> > NOTE: just to remind you that nobody wrote on the contract that TNA don't have to pay me or punish me if i have some attitude because i don't like something in the match or what i have to do, you know me and you know that i'm with Tna for 5 years and i had attitude and whatever but i'm still there and believeme it's not because i can't work somewhere else Terry,everybody can find another place to work.

> > Somethime people have opinions or their own character but that don't mean that people have to be punished or that them kids don't have to eat!

> > i have seen alot of people that had attitude but they still have them ceck next week...and a new t-shirt with their face on to!!! the only wrong i have it's that i'm black and not that i had opinions like white boys....and that's not right at all!

> > have a nice day Terry,and go to buy toys to your kids...because i can't!

> > TNA ENTERTAINMENT, LLC
> > 209 10th Avenue So.
> > Suite 302
> > Nashville, TN 37203
> > June 15, 2006
> > Ronnie Killings
> > Dear Ronnie:

> >      WHEREAS, TNA Entertainment, LLC ("TNA"), a Delaware limited liability company, is engaged in the business of producing, publicizing, arranging, staging, conducting and promoting professional wrestling exhibitions and programs throughout the world, a certain number of which shall be recorded, broadcast, and/or distributed to the public via pay-per-view ("PPV"), television broadcast, or otherwise (collectively, the "Programs") and related products and services;

> >      WHEREAS, TNA's business operations afford you, as a professional wrestler, opportunities to wrestle and obtain public exposure which will increase the value of your wrestling services and your standing in the professional wrestling community and entertainment industry;

> >      WHEREAS, you and TNA desire to enter into this agreement hereto (the "Agreement") to evidence your agreement with respect to your participation in the Programs and the agreement of the parties with respect to the other matters set forth below.

> >      NOW THEREFORE, in consideration of the mutual promises and agreements as set forth herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, TNA and you covenant, stipulate and agree as follows:

> >      1.     Services.  During the Term (as hereinafter defined) you agree to maintain your availability for and shall render your wrestling and performing services in connection with, the rehearsal, performance and broadcast of Programs, TNA Events, and/or Third Party Events (collectively, "Events") designated to you by TNA, and to otherwise fully comply with all provisions of this Agreement for the benefit of TNA (collectively, the "Services").  TNA shall designate at least 36 Programs during the Term for you to perform in.  "TNA Events" shall include any wrestling event, performance, public appearance, or other activity involving you that is arranged by TNA and designated hereunder by TNA as an Event.  "Third-Party Events" shall include any wrestling event or appearance which results in payment (in any form) due to your presence or participation and which may be either in a domestic or international setting, including without limitation wrestling events, appearances at stores, restaurants, parties, etc.  During the Term of this Agreement, you agree to perform/appear only in Events which are designated specifically by TNA or booked for you by TNA's Booking Agent and you agree not to accept any monies or other compensation from another promoter or party for Third-Party Events or any other professional activity.  All such monies will be payable to TNA and, if applicable, designated as Talent Credits as provided below.  Your appearances and performances in Events pursuant to this Agreement shall also be referred to herein as "Performances".  You also agree to participate in a reasonable number of non-wrestling promotional appearances without compensation during the Term of this Agreement.

> > If you are booked for a TNA house show, TNA will pay reasonable travel expenses for such show.

> >      You agree that if at any time you are the current NWA Heavyweight or Tag Team Champion, you will first get written approval from TNA management prior to wrestling for the NWA belt in a Third Party-Event.

> >      You will render your services to the best of your ability, subject to TNA's direction and reasonable control, and you shall abide by all reasonable rules and regulations set out by TNA and by all applicable laws. You further agree that you will abide by all of the provisions in the TNA Talent Handbook in its current form and as it may be amended from time to time. You shall be responsible for providing your own costumes, wardrobe, props and make-up in the conduct of any Performance, unless TNA directs otherwise. All costumes, wardrobes, props, and make-up used in connection with any Event are subject to the approval of TNA.

> >      You agree that you are rendering your Services as an independent contractor, and not as an employee of TNA, and you agree not to assert any claims for benefits or privileges provided by TNA to its employees due to

their status as employees.

>> 2. Term. Subject to TNA's right to terminate this Agreement as set forth below, the Term of this Agreement shall commence as of June 18, 1006 and shall continue in force for one year to and including June 16, 2007 ("Term"). At TNA's option, the Term of this Agreement (including the same terms and conditions, except as described below in Section 3(B)) may be extended two times for an additional year each time upon notice by TNA for each extension. The first extension would extend the Term of this Agreement to June 14, 2008 and the second extension would extend the Term June 13, 2009.

>> TNA shall have the right, in its sole discretion, to terminate this Agreement at any time during the Term or during any extended Term with respect to any services to be rendered by you hereunder, upon ninety (90) days written notice to you (the ninetieth day from the date of TNA's written notice shall be deemed the date of termination: "Termination Date") and TNA shall not have any further obligation to compensate you for any remaining Programs (even if you have performed in less than 36 Programs prior to the termination), subject only to TNA's obligation to compensate you for Services rendered prior to the Termination Date and for Surplus Revenues, Video Royalties, and Merchandise Royalties, if any, due hereunder.

>> Moreover, you acknowledge and agree that you shall not work or perform in any capacity for: (i) World Wrestling Entertainment, Inc. or their affiliates, successors, or assigns, or (ii) any entity which produces a nationally televised wrestling show, during the Term of this Agreement and after the expiration or termination of this Agreement for the lesser of: (i) a period of 120 days from the date of such expiration or termination, or (ii) the remaining Term of this Agreement.

>> 3. Compensation.

>> A. Fee. In consideration of your rendering all Services in form and content satisfactory to TNA and in full and complete payment and compensation for your Services and all rights granted to TNA hereunder, TNA agrees that your rate of pay shall be up to the amount of One Thousand Two Hundred Dollars ($1,200) per week (the "Base Amount") which shall be paid to you bi-weekly during the Term as more fully described in this Section 3 and in accordance with the other terms and provisions of this Agreement, subject to the deduction of any amounts required by law or otherwise due to TNA hereunder. Your bi-weekly compensation will be a draw against actual money earned by TNA for your services, as evidenced by Talent Credits as described in Section 3.B. For example, your total projected annual draw based upon the Base Amount shall be $62,400. The following calculation shall be made after the close of each quarter. A fraction shall be established the denominator of which shall be the weekly draw amount for that quarter times the number of weeks in the quarter ($1,200 X 13 weeks = $15,600 for the first quarter of this Agreement) and the numerator of which shall be the Talent Credits (described below) attributable to that quarter. If the product is greater than one, then no adjustment will be made to the weekly draw amount for the next quarter. If the product is less than one, then the following quarter's weekly draw will be reduced by one minus the product of the equation. If at the end of each quarter, Talent Credits exceed the actual amount paid via the weekly draws, then any deficiency shall be paid to you so that your total quarterly compensation will be up to the Base Amount of $15,600 (plus possible additional amounts attributable to your share of Surplus Revenue described in Section 3(B) below). A sample calculation (which is generic and does not use your specific compensation amount) is attached hereto as Exhibit "A".

>> B. Talent Credits. You shall receive credits ("Talent Credits"): (i) for your Performances in the TNA PPVs and TNA iMPACT! shows as follows: $1000 per iMPACT! Performance and $1000 per PPV Performance, (ii) for your participation in Third-Party Events in the amount of the payment which either: (a) TNA receives for your participation in same, or (b) TNA determines in its sole discretion represents the value for your appearance in such event (for those events for which TNA receives a lump sum payment for multiple talent appearances and/or additional services), and (iii) in the event that TNA produces Programs in addition to iMPACT! and PPVs, this Agreement shall be amended to include stated values for the Talent Credits for such Programs. If, during the initial quarter or subsequent quarters hereunder, the total sum of your Talent Credits during that quarter hereunder surpasses your projected compensation (draw) for that quarter ($1,200 X 13 weeks = $15,600), then, after any adjustment required pursuant to the True-up Mechanism described in Paragraph C of Exhibit "A", any additional revenue received thereafter by TNA during that quarter for your participation in Third-Party Events and additional credits for your remaining Performances in iMPACT! and PPV Programs during the remainder of the quarter ("Surplus Revenue") shall be divided as follows: 75% to you and 25% to TNA. Surplus Revenues payable to you will be retained by TNA in an escrow account and will be disbursed to you no later than 30 days after the final day of each quarter. If TNA exercises its option to extend the term of this Agreement pursuant to Section 2 above, then you shall receive a ten percent (10%) increase in your Talent Credits for iMPACT! and PPV programs in which you appear for each year that the Term is extended.

>> C. Video Royalty. In the event that your Performances are embodied in Recordings (as defined in Section 4. below (intended for home distribution and/or sale ("Video(s)")), TNA shall pay you a royalty ("Video Royalty") equal to your pro rata share of five percent (5%) of the Net Video Sales Price of one hundred percent (100%) of

Net Sales of Videos by TNA, or any of its related, affiliated or subsidiary companies. As used herein, "Net Video Sales Price" shall be the actual proceeds received by TNA from the sale of each such Video less a twenty-five percent (25%) container deduction, less any applicable taxes paid by TNA relating thereto, less any and all costs of collection (including reasonable attorney's fees, costs and expenses), and less any and all costs and expenses incurred by TNA in the shipping, production, manufacture, distribution, promotion and sale of the Videos and less any returns, allowances and promotional items distributed. As used herein, "Net Sales" shall be the number of Videos finally sold by TNA, less returns, allowances and promotional copies distributed. To the extent that your Performances appear on the Video together with the performances of individuals in addition to you ("Third Parties"), the Video Royalty shall be pro-rated based on a fraction, the numerator of which shall be one (1), and the denominator of which shall be

CONFIDENTIAL

EXHIBIT

F

| From: | Scott D'Amore <canamwrestling@hotmail.com> |
|---|---|
| Sent: | Wednesday, October 11, 2006 5:36 PM (GMT) |
| To: | Dixie Carter <dcarter@trifecta-ent.com> |
| Subject: | RE: Detroit media |

I gave Andy an update on the Spanish radio. Call the station 10 times before
I got somebody to answer the phone. When I finally got an answer nobody
spoke good English. Monday I put one of Dutch's friends, Rico on the phone
with them and they were supposed to fax info on prices, having Konnan on as
a guest, etc. I never recieved it. I asked last night in an email and today
on the phone Andy if we had anybody who spoke good Spanish in the office
there so I could get some help with this. This has been going on for a week
now and I'm ready to pull my hair out!
IOf we get the spanish paper I am supposed to talk with later today and this
radio station I think we are more then covered for the Spanish base.

I do really hate the Tigers! I hated them my whole life and now I think they
are doing this just to spite us!

>From: "Dixie Carter"
>To: "Scott D'Amore"
>Subject: RE: Detroit media
>Date: Wed, 11 Oct 2006 12:24:21 -0500
>
>I was hoping you were not referring to our Ross having a breakdown b/c
>the Tigers are hurting PR more than anything.
>
>Where are we on the Spanish radio spot? Have you done an update ad
>spend budget? I'd like to see.
>
>-----Original Message-----
>From: Scott D'Amore [mailto:canamwrestling@hotmail.com]
>Sent: Wednesday, October 11, 2006 11:23 AM
>To: Dixie Carter
>Subject: RE: Detroit media
>
>Meltdown is the night time DJ on WRIF. He is on 7-11pm weeknights and is
>a
>huge wrestling fan. He's a buddy of Rhno and everybody including Rhino
>has
>been struggling to get aholf of him.
>WRIF is by far the #1 station in the market for us and WWE I believe has
>
>squeezed us out with them WWE is running ads in heavy rotation on the
>station.
>Meltdown will plu BFG well, he'll have Christy, Nash and ANgle as guests
>
>(and maybe RHino as well) and will be a big help. He's helped me with
>many
>local events and working with him has always produced a bump in ticket
>sales.
>Should be touching base with the largest Spanish newspaper today. THey
>will
>do a stor on BFG featuring Konnan next week and cover the show as a big
>event.
>They have requested press passes for BFG. Who do I send them to for
>that?

CONFIDENTIAL

> >
> >From: "Dixie Carter"
> >To: "Scott D'Amore"
> >Subject: RE: Detroit media
> >Date: Wed, 11 Oct 2006 12:08:16 -0500
> >
> >Who is meltdown Ross?
> >
> >-----Original Message-----
> >From: Scott D'Amore [mailto:canamwrestling@hotmail.com]
> >Sent: Wednesday, October 11, 2006 11:09 AM
> >To: Rossco814@aol.com; Dixie Carter
> >Cc: Andy Barton
> >Subject: RE: Detroit media
> >
> >When is the Real Detroit Story?
> >The story in metro times should be helpful Char at the Compuware box
> >office
> >said people have brought in the ad we had run last week with them when
> >buying tickets. The ad runs again today and also next Wednesday in the
> >double issue so lets keep plugging!
> >
> >Thank God you got ahold of Meltdown Ross I was starting to think he
> >went
> >
> >AWOL on us with all the Tigers stuff going on!
> >
> >
> > >From: Rossco814@aol.com
> > >To: dcarter@trifecta-ent.com
> > >CC: abarton@tnawrestling.com, canamwrestling@hotmail.com
> > >Subject: Detroit media
> > >Date: Wed, 11 Oct 2006 12:14:00 EDT
> > >
> > >In addition to the other things planned this weekend for Christy in
> > >Detroit,
> > >I just got her on WRIF, which is the city's top rock station. She
> >will
> > >be
> > >on
> > >at 7pm ET which is a great time because it's part of their Tigers
> > >Special.
> > >The on-air talent has all of the BFG info and is a fan. So much, in
> >fact,
> > >he
> > >has a picture of Nash on his MySpace. (And, yes, he will have Nash
> > >in-studio
> > >next Wednesday as well.) They will be doing on-air giveaways and
> >promoting
> > >PPV.
> > > Do not yet have specifics about Nash appearance at the station.
> > >
> > >Have been speaking with the Metro Times yesterday and today. They
> >will
> > >be
> > >lengthier preview next week, and it will be longer than first
> >anticipated,
> > >I was

CONFIDENTIAL

TNA000454

> > > told.
> > >
> > >Real Detroit preview story is focsued on Rhino, the hometown kid.
> >
> >
> 
> 

CONFIDENTIAL

TNA000455

| | |
|---|---|
| **From:** | VinceRusso2@aol.com |
| **Sent:** | Thursday, October 12, 2006 3:23 PM (GMT) |
| **To:** | Dixie Carter <dcarter@trifecta-ent.com> |
| **Subject:** | Comments from friend on show |

Dixie, There are two things I want to pass along to you regarding a conversation I had this morning. A good friend of mine that I worked at the WWF with for years, called me today. His name is Matt Miller and he now runs the Gund Arena in Cleveland. Matt told me that a couple of weeks ago he caught part of our show after watching UFC. He said that he felt we were sending out mixed messages--and the pieces didn't seem to fit. He said on one hand he saw Konnan's group (LAX), that came across as cool, hip and cutting edge, and moments later he saw Jim Cornette on the same show that came across as a southern, 1980's rasslin' cartoon. Dixie--these were his exact words. I agree whole-heartedly with this and I tried to tip-toe around it with Jeff and he got defensive and mad at me. Right now--in Somoa Joe and Kurt we have two wrestlers about as real as can be--the closest to UFC that you're going to get. Then, on the other hand we have your Cornette's, and your Jeff's (to some extent) that are about as old school wrestling as you get. It seems that in 42 minutes--we have two different brands--two different types of entertainment. My thing with Cornette isn't personal--I SWEAR to you--but I'm just having a huge problem with him representing TNA management, wearing a canary yellow sports jacket, when we go to prime time. Again, Dixie--being HIP is the key. Joe is cool, Angle is today. LAX, you have guys like Truth and Hoyt--then we shot ourselves in the foot when we go back twenty years. Again--I just wanted to make note of this. To be honest--if I was writing TV, a CHARACTER like Jim Cornette would not be representing TNA Management. I would rather go with an attractive, sexy, female executive (like a Tina Fey) that would add a whole new dimension to the product. Just my two cents. Business. Matt also told me that the owners of the Cleveland Cavaliers own a company called fatheads (fatheads.com). What they make is HUGE decals of athletes that you can stick on your wall. They tried to strike a deal with the WWE and were turned down, This might really be worth our wild to go after. I think it would be a good thing to get our licensing dept. on. If they want any more info they can call me. I hope you're having a good day. Peace, Vince

CONFIDENTIAL

**From:**      bill_banks@bellsouth.net
**Sent:**      Tuesday, December 5, 2006 8:51 PM (GMT)
**To:**        Jeff AOL <jj4jarrett@aol.com>; vincerusso2@aol.com; suziodutch@comcast.net;
               Dixie Carter <dcarter@trifecta-ent.com>; Andy Barton <abarton@trifecta-
               ent.com>; Matt Conway <mconway@tnawrestling.com>
**Subject:**   Updated Year End Voting Results

Your choice for The 2006 TNA MVP [15472 votes total]
Sting (3256) 21%
AJ Styles (2410) 16%
Jeff Jarrett (283) 2%
Christian Cage (2069) 13%
Samoa Joe (5922) 38%
Abyss (502) 3%
Rhino (417) 3%
Christopher Daniels (613) 4%


----------------

Your choice for The 2006 Match Of The Year [14958 votes total]

Ultimate X (LAX vs. Styles/ Daniels - No Surrender) (4381) 29%
Full Metal Mayhem (Cage vs. Abyss - Sacrifice) (1051) 7%
America's Most Wanted vs. Styles & Daniels (Slammiversary) (601) 4%
Jeff Jarrett vs. Christian Cage (Against All Odds) (639) 4%
King Of The Mountain (Slammiversary) (991) 7%
Sting vs. Jeff Jarrett (Bound For Glory) (2002) 13%
Monster's Ball 3 (Bound For Glory) (1131) 8%
Chris Sabin vs. Senshi (Bound For Glory) (833) 6%
Six Sides Of Steel (LAX vs. Styles/ Daniels - Bound For Glory) (3329) 22%


----------------

Your choice for The Feud Of The Year [15136 votes total]

Styles vs. Daniels vs. Samoa Joe (3194) 21%
Rhino vs. Christian Cage (1761) 12%
Jeff Jarrett vs. Sting (2733) 18%
The LAX vs. Styles & Daniels (3286) 22%
Kurt Angle vs. Samoa Joe (3672) 24%
Christian Cage vs. Abyss (490) 3%


---------------

Your choice for The X Division Star Of The Year [15176 votes total]

Samoa Joe (3961) 26%
Senshi (2284) 15%
AJ Styles (3402) 22%

CONFIDENTIAL

TNA000483

Christopher Daniels (1866) 12%
Chris Sabin (1326) 9%
Alex Shelley (694) 5%
Petey Williams (776) 5%
Sonjay Dutt (289) 2%
Jay Lethal (336) 2%
Shark Boy (242) 2%

------------------

Your choice for The Memorable Moment Of 2006 [15240 votes total]

Christian Cage Wins The NWA World Title (1459) 10%
Jeff Jarrett Wins King Of The Mountain (237) 2%
Alex Shelley Films Sting And His Family (206) 1%
Abyss Attacks Christian Cage At His Home (401) 3%
The Kurt Angle Announcement At No Surrender (6329) 42%
Sting Wins The NWA World Heavyweight Title (2787) 18%
Kurt Angle Confronts Samoa Joe On "iMPACT!" (3821) 25%

--------------------

Your choice for 2006 Tag Team Of The Year [15297 votes total]

The Latin American Exchange (5401) 35%
America's Most Wanted (709) 5%
AJ Styles & Christopher Daniels (5384) 35%
Team 3D (1307) 9%
Voodoo Kin Mafia (1734) 11%
The Naturals (444) 3%
Diamonds In The Rough (47) 0%
The Truth & Lance Hoyt (170) 1%
Bentley & Kazarian (101) 1%

------------------

Your choice for Who To Watch In 2007 [15355 votes total]

Austin Starr (1012) 7%
Kurt Angle (8979) 58%
Hernandez (294) 2%
Homicide (1169) 8%
Robert Roode (338) 2%
Jay Lethal (629) 4%
A1 (55) 0%
Eric Young (850) 6%
Alex Shelley (1407) 9%
Tomko (622) 4%

--------------

CONFIDENTIAL

TNA000484

Your choice for the 2006 TNA Finishing Move Of The Year [15427 votes total]

Black Hole Slam - Abyss (638) 4%
Canadian Destroyer - Petey Williams (5817) 38%
The Musclebuster - Samoa Joe (1448) 9%
The Gringo Killer - Homicide (3698) 24%
The Gore - Rhino (630) 4%
The Border Toss - Hernandez (1035) 7%
The Stroke - Jeff Jarrett (106) 1%
The Styles Clash - AJ Styles (800) 5%
Scorpion Deathlock - Sting (1255) 8%


--------------------

Your choice for the 2006 TNA Knockout Of The Year: [15587 votes total]

Ms. Brooks (1629) 10%
Gail Kim (3028) 19%
Christy Hemme (8171) 52%
Jackie (958) 6%
SoCal Val (1801) 12%

CONFIDENTIAL

| | |
|---|---|
| **From:** | Dixie Carter |
| **Sent:** | Wednesday, December 13, 2006 4:45 PM (GMT) |
| **To:** | Dean Broadhead <dbroadhead@tna.com> |
| **Subject:** | RE: Any word back from Rey? |

I am assuming you have also cleared this by either Bill or Bob. If we even smell trouble, we can hold his checks and apply that to any unpaid balance. He is critical to us, especially now with LAX being so hot, our only Hispanic to do media and his voiceover skills, etc. From: Dean Broadhead
Sent: Wednesday, December 13, 2006 10:45 AM
To: Dixie Carter
Subject: RE: Any word back from Rey? How about TNA fronting Charles $18,000 for surgery? In response to your other email... [REDACTED] This note gives us the ability to collect by attaching liens to his future earnings. It does not guarantee that we will collect if he skips done to Mexico. The promissory note, if we run into collection problems allows us to report wages paid to him for the unpaid portion to the IRS and his state of residence, California. He will then pay tax, penalties and interest. From: Dixie Carter
Sent: Wednesday, December 13, 2006 10:13 AM
To: JJ4JARRETT@aol.com; Terry Taylor; Andy Barton; Kevin Sullivan
Cc: Dean Broadhead
Subject: FW: Any word back from Rey? FYI I am sensing a little early attitude on the voiceovers here in Nashville from Konnan. Kevin, How long is he here with the VO schedule? From: Charles Ashenoff [mailto:kdoggashenoff@yahoo.com]
Sent: Wednesday, December 13, 2006 3:31 AM
To: Dixie Carter
Subject: RE: Any word back from Rey? Hello dixie, after doing the voice overs last week, tuesday and wed, i was only home thursday and had to leave thurs and fri to triple A in mexico and have been with tna sun, mon and now voice overs again, i will finally be home thursday. I do not know how much longer i can do voice overs way to many days on the road doing nothing and not enogh renumeration, but anyways i have not been home so i have not been able to talk to rey. I will talk to him thursday or friday and see if he got any word on possible pr person. I have been emailing gabriel and he is still working on getting us a hsipanic venue in texas for our pay per view. I also talked with triple A and they have gotten it cleared with televisa that we can have our shows transmitted on TV Azteca and still work with triple A, gabriel is working on that. So hopefully soon a big, big step for us national TV exposure in Mexico. Carlos

| | |
|---|---|
| **From:** | Bill Banks |
| **Sent:** | Saturday, December 15, 2007 9:36 PM (GMT) |
| **To:** | evansvillewrestling@hotmail.com; Dixie Carter <dcarter@tna.com>; Andy Barton <abarton@tna.com>; Steven Godfrey <sgodfrey@tna.com>; Dean Broadhead <dbroadhead@tna.com>; Matt Conway <mconway@tna.com>; Dan Stevenson <dstevenson@tna.com>; jj4jarrett@aol.com; suziodutch@comcast.net; vincerusso2@aol.com; jborash@aol.com; Kevin Sullivan <ksullivan@tna.com> |
| **Subject:** | Website Year End Voting Results |

Below are the final results from the 2007 Year End Voting on the website

The winners will be announced on an upcoming Impact - please do not distribute this list or the winners without checking with Jeff, Dutch and Vince first.

Sulli - there are some changes from the original list I gave you

-------------------------------------

2007 FINISHER OF THE YEAR:
Muscle Buster/Clutch - Samoa Joe: 3638 (WINNER)
Flux Capacitor - Kaz: 3566
Gringo Killer - Homicide: 3327
Styles Clash - AJ Styles: 2423
Scorpion Deathdrop/Deathlock - Sting: 2896
Black Hole Slam - Abyss: 2452
Olympic Slam - Kurt Angle: 1748
Border Toss - Hernandez: 1442
Lethal Combo/Elbow Drop - Jay Lethal: 1166
The Payoff - Robert Roode: 193

2007 KNOCKOUT OF THE YEAR:
Gail Kim: 11144 (WINNER)
Christy Hemme: 3420
Ms. Brooks: 2815
Karen Angle: 2722
Awesome Kong: 1557
Roxxi Laveaux: 678
Jackie Moore: 212

2007 TAG TEAM OF THE YEAR:
Motor City Machineguns: 8458 (WINNER)
Latin American Xchange: 3642
AJ Styles & Tomko: 2852
Steiner Brothers: 2795
Team 3D: 2343
Team Pacman: 966
Voodoo Kin Mafia: 864
XXX: 538

CONFIDENTIAL

2007 INSPIRATIONAL SUPERSTAR OF THE YEAR:
Sting: 7046 (WINNER)
Jeff Jarrett: 3738
Eric Young: 3624
Kaz: 3540
Scott Steiner: 1487
Gail Kim: 1241
Abyss: 1135
Rhino: 804

X DIVISION SUPERSTAR OF THE YEAR:
Black Machismo Jay Lethal: 10926 (WINNER)
Kaz: 3531
Chris Sabin: 1898
Alex Shelley: 1695
Fallen Angel: 1599
Petey Williams: 1373
Shark Boy: 485
Sonjay Dutt: 460
Johnny Devine: 232
Elix Skipper: 125

2007 MEMORABLE MOMENT OF THE YEAR:
Booker T and Sharmell come to TNA: 4931 (WINNER)
Sting regains the World Title: 4329
Kurt Angle wins every TNA Title: 4028
Jay Lethal upsets Kurt Angle: 3351
Gail Kim wins 1st Womens Title: 1779
Jeff Jarrett is revealed as Eric Young's friend: 1479
Road Warrior Animal teams with Rick Steiner: 870
Pacman Jones signs with TNA: 868
Kurt Angle wins King of the Mountain: 585

WHO TO WATCH IN 2008:
Booker T: 8204 (WINNER)
Kaz: 6156
Judas Mesias: 2109
Matt Morgan: 2070
Awesome Kong: 937
ODB: 577
Angelina Love: 502
Rellik: 483
Velvet Sky: 476
Black Reign: 320
Roxxi Laveaux: 209
Sharmell: 122

2007 FEUD OF THE YEAR:
Samoa Joe vs. Kurt Angle: 7926 (WINNER)
Sting vs. Kurt Angle: 3913
Christian Cage vs. Samoa Joe: 1995

CONFIDENTIAL

Team 3D vs. The X Division: 1919
Chris Harris vs. James Storm: 1827
Sting vs. Abyss/Mitchell: 1735
Team 3D vs. Steiner Brothers: 970
LAX vs. Team 3D: 936
Robert Roode vs. Eric Young: 589
Rhino vs. James Storm: 302

2007 MATCH OF THE YEAR:
Sting vs. Kurt Angle (BFG): 4470 (WINNER)
Ultimate X - LAX vs. XXX (BFG): 2558
Ladder Match: Kaz vs. Christian (Genesis): 2434
Texas Death Match: Harris vs. Storm (Sacrifice): 2138
Ironman: Joe vs. Angle (FR): 2121
All Or Nothing: Angle vs. Joe (HJ): 1969
King of the Mountain (SLAMM): 1420
Elevation X: Styles vs. Rhino (DX): 1408
Christian Cage vs. Samoa Joe (DX): 826
Women's Title: Gail vs. Kong (TP): 779
Angle vs. Cage vs. Rhino (Impact): 720
Tables Match: Team 3D vs. Steiners (BFG): 706
Kurt Angle vs. Jay Lethal (NS) 431

TNA MVP OF 2007:
Samoa Joe: 5204 (WINNER)
Kurt Angle: 4030
Christian Cage: 3723
Sting: 3503
AJ Styles: 2205
Jay Lethal: 1400
Abyss: 1047
Gail Kim: 826

CONFIDENTIAL

TNA000488

| From: | Dixie Carter |
|---|---|
| Sent: | Monday, January 8, 2007 4:18 PM (GMT) |
| To: | Amy Zack <azack@tna.com> |
| Subject: | RE: Emailing: conf_page |

First, I don't think we have the right person to send who would work on this.. Second, with Konnan's situation, I am concerned about a huge Hispanic push until we know his status. Without him, we do not have the Hispanic star to drive them to. Let's get a marketing person in this year and then we will charge them with this. Thanks for finding this.

-----Original Message-----
From: Amy Zack
Sent: Monday, January 08, 2007 10:07 AM
To: Dixie Carter; Andy Barton
Cc: Kathy Shelley
Subject: Emailing: conf_page

I was reading Promo magazine's newsletter, and came across this conference in a few weeks. The registration is a little steep, but I didn't know if we'd want to send someone internal to get a better handle on Hispanic Marketing.

The message is ready to be sent with the following file or link attachments:

Shortcut to: http://www.srinstitute.com/conf_page.cfm?
pt=includes/webpages/webwysiwyg.cfm&web_page_id=5147&web_id=842&instance_id=29&pid=449

Note: To protect against computer viruses, e-mail programs may prevent sending or receiving certain types of file attachments. Check your e-mail security settings to determine how attachments are handled.

CONFIDENTIAL

| From: | bill_banks@bellsouth.net |
| --- | --- |
| Sent: | Friday, January 12, 2007 8:03 AM (GMT) |
| To: | Dixie Carter <dcarter@trifecta-ent.com> |
| Subject: | Meltzer TNA News |

The Kurt Angle segment on The George Michael Sports Machine show will air on January 14. Michael is a fan of Angle and hand picked him to appear. The segment was taped in late December.

TNA is no longer pursuing a Kurt Angle vs. Bob Sapp program. Sapp is currently going through some complicated contract issues with K1 in Japan.

TNA management, particularly the Carters, have been calling Konnan almost every day to check up on his condition and how he is feeling. Konnan will likely be a lot smaller when he does return due to his new strict diet from his doctors and the fact that he cant do any weight training. He is not allowed to eat any dairy products and has to cut down on protein intake, which is a huge change for someone who has been on a bodybuilding diet for years. Konnan has been very passionate about getting over LAX, and TNA has been impressed with his work in the role as their manager and mouthpiece.

CONFIDENTIAL

-----Original Message-----
From: Terry Taylor [mailto:terrytaylor812@yahoo.com]
Sent: Tuesday, April 10, 2007 8:45 PM
To: bryder@prodigy.net
Subject: Fwd: Re: Fw:Dialysis and travel for Lockdown

Bob,
how much to change to Sat?

‾‾
Terry Taylor
Director of Talent Relations
TNA Entertainment
209 10th Ave S
Suite 302
Nashville, TN 37203
O - 615-244-5557
F - 615-254-5488

...... Forwarded Message .......
From: Charles Ashenoff <kdoggashenoff@yahoo.com>
To: terry taylor <terrytaylor812@yahoo.com>
Date: Tue, 10 Apr 2007 18:36:13 -0700 (PDT)
Subj: Re: Fw:Dialysis and travel for Lockdown

i try not to go over 4 days without dialysi, which i have done, as long as
i stick to low protein, low salt diet and go to the medical center on
wednesday i should be alrght.  So if u can fly me in saturday instead of
friday we will be cool, thank u, carlos  p.s. if everything goes like i
have planned i am going to get my kidney transplant at the end of may.
terry taylor <terrytaylor812@yahoo.com> wrote:          Charles,
Hope this finds you happy and doing well.
We have a small dilema - maybe...
How often do you need to do your dialysis? If you get it Friday, then get
home on Wednesday - is that too much time?
Please give me your schedule on how that works.
Thanks,

Terry Taylor
TNA Entertainment
Director of Talent Relations
209 10th Ave S.
Suite 302
Nashville, TN 37203
Off 615-244-5557
Fax 615-254-5488
ttaylor@tnawrestling.com

----- Original Message ----
From: Charles Ashenoff <kdoggashenoff@yahoo.com>
To: terry taylor <terrytaylor812@yahoo.com>
Sent: Monday, April 9, 2007 8:51:53 PM
Subject: Re: Fw: Fw: Konnan

this is a health issue, if u can fly me in saturday and i can get in in
time for the signing which i think is at 3pm, kool, but i am not going to

go with some dialyis guy i dont know in orlando.  This is a very delicate
thing, My doctor knows what amount of fluids i need taken out and what
minerals and injections i need.  I dont know if u remember but about 2
months ago i fainted from having to much fluid removed and ended up being
taken by ambulance to the hospital.  thank you terry, i hope we can work
this out, carlos

terry taylor <terrytaylor812@yahoo.com> wrote:          Charles,
    You guys (LAX) are our hottest act. It's important that you guys make the
fan interaction. Some people will pay to attend to see YOU. With that being
said, can you rearrange your dialysis around your travel? I'm sure we could
find a place in Orlando on Monday.
    Please think about it and we'll figure how to make this work.
    Thanks and Happy Easter - He is Risen!!!

Terry Taylor
TNA Entertainment
Director of Talent Relations
209 10th Ave S.
Suite 302
Nashville, TN 37203
Off 615-244-5557
Fax 615-254-5488
ttaylor@tnawrestling.com

    ----- Forwarded Message ----
From: Bob Ryder <bryder@prodigy.net>
To: terry taylor <terrytaylor812@yahoo.com>
Sent: Sunday, April 8, 2007 9:33:29 PM
Subject: RE: Fw: Koonan

    DIV {MARGIN:0px;}    Not if we plan to have him at Fanfest.  I had booked
him on a redeye flight leaving late Friday night at 1040pm and arriving St
Louis on Saturday morning at 931am.  Is there a way he could get his
dialysis earlier in the evening on Friday before he leaves?  Maybe he could
make arrangements to get an additional treatment in Orlando on Monday.

    His ticket was already $713.40 because I kept him on Delta so he had the
possibility of upgrading.  Changing it at this point would send the price
over $1000.

    Thanks,

    Bob
    -----Original Message-----
From: terry taylor [mailto:terrytaylor812@yahoo.com]
Sent: Sunday, April 08, 2007 7:36 PM
To: Bob Ryder
Subject: Fw: Fw: Koonan


    Bob,
  Is this possible?

Terry Taylor
TNA Entertainment
Director of Talent Relations

TNA000310

Jeff...

   Normally I would say we could do with him but Konnan is kinda over in PR.  He speaks Spanish and can be an asset with the media and help establish a foothold for us there.   The promoter there can \\get Konnan on all the news and sports shows along with Apolo a couple of days before the show and we'll get a ton of publicity because of the local angle.  If it's a money issue I can understand but speaking strictly from a creative standpoint,  Konnan can help us in PR because first, he's been there before and he speaks the language.   The decision of course lies with you but LAX with Konnan in PR caters directly to that audience.   LAX most likely will be huge babyfaces there especially with them carrying the PR flag and it could be a very interesting match.    My feeling...keep the promoter happy to see if we can yank another date out of him and let s give it our best shot.   But again..your call.


   Dutch



------------ Original message ------------
From: JJ4JARRETT@aol.com
Do we need him?  My gut tell me no, but what do you think?

Jeff Jarrett
TNA Entertainment, LLC
209 10th Ave. South
Suite 302
Nashville, TN 37203
615 244 5557 office
615 244 5755 fax


**********************************************************************
This e-mail, and any attachments thereto, is intended only for use by the
addressee(s) named herein and may contain legally privileged and/or
confidential information. If you are not the intended recipient of this
e-mail, you are hereby notified that any dissemination, distribution or
copying of this e-mail, and any attachments thereto, is strictly
prohibited. If you have received this e-mail in error, please notify me by
replying to this message and permanently delete the original and any copy
of this e-mail and any printout thereof.
**********************************************************************



---
See what's free at AOL.com.



From:   JJ4JARRETT@aol.com
To:   suziodutch@comcast.net
Subject:   Fwd: Konnan Puerto Rico 6/3
Date:   Thu, 19 Apr 2007 06:15:01 +0000
Content-Type: Multipart/mixed;
boundary="NextPart_Webmail_9m3u9jl4l_16900_1176988903_2"


Return-path: <SHOWBIS@aol.com>
From: SHOWBIS@aol.com
Full-name: SHOWBIS
Message-ID: <cb2.f24302e.33581b5f@aol.com>
Date: Wed, 18 Apr 2007 21:09:51 EDT
Subject: Konnan Puerto Rico 6/3
To: JJ4JARRETT@aol.com
MIME-Version: 1.0
Content-Type: multipart/alternative; boundary="---------------------1176944991"
X-Mailer: 9.0 Security Edition for Windows sub 5365


LAX is booked.,  Should he be booked as he is not right now?


CONFIDENTIAL                                                      TNA001428

He's asking

Bill


TNA Bookings
President, Show Business, Inc
PO Box 941787
Atlanta, GA 31141
770-621-9533

---

See what's free at AOL.com.

CONFIDENTIAL

TNA001429

| From: | Dixie Carter |
|---|---|
| **Sent:** | Friday, June 15, 2007 4:44 PM (GMT) |
| **To:** | Terry Taylor <ttaylor@tna.com> |
| **Subject:** | FW: konnan article |

Are you are aware of this? This is bullshit. From: Andy Barton
Sent: Friday, June 15, 2007 11:31 AM
To: Dixie Carter
Subject: konnan article By Alex Marvez, South Florida Sun-Sentinel
June 15, 2007 No pro wrestler may be more eager to see Sicko than Carlos "Konnan" Ashenoff. The new documentary finds
acclaimed director Michael Moore taking a critical look at the U.S. health-care system, a view Ashenoff shares after his
recent medical problems. While preparing to undergo hip-replacement surgery last year, Ashenoff was told he also would
need a kidney transplant. Unable to procure health insurance independently or through Total Nonstop Action Wrestling,
Ashenoff traveled to Mexico for his hip procedure and will do the same once a kidney donor is finalized. Ashenoff said his
hip replacement cost $30,000 in Monterrey, rather than the $80,000 to $90,000 price tag he was quoted in the U.S., and that
he will save even more on his kidney transplant. "This just shows how much corporate greed there is," Ashenoff, 43, said.
"You see it at all levels. They prey on the fact people are sick, and nail you for as much as they can." Such outspokenness
has helped make Ashenoff one of pro wrestling's most controversial yet popular characters. When TNA wrestling told
Ashenoff it wouldn't cover the cost of his kidney replacement, longtime wrestling fans Anthony DeBlasi and Georgiann
Makropoulos spearheaded a fundraising drive that has generated more than $14,000 for his medical expenses. The Mexican-
based Asistencia Asesor'a y Administracion promotion, where Ashenoff works in the front office on weekends, will pick up
most of the remaining costs. Another wrestling fan has helped Ashenoff find a potential donor who is being tested within the
next two weeks for surgery in early July. "All I can say is, 'Wow!' "said Ashenoff, who isn't sure what triggered his kidney
problems. "All the sacrifices I've made - the holidays I've missed because I had to work, the times I got screwed over and
lied to by promoters - this made it worth it. The fans came through for me when my own company (TNA) didn't." TNA,
which lent Ashenoff the money for his hip surgery, has continued to book Konnan on television tapings and pay-per-view
shows despite his health woes. A wheelchair-bound Ashenoff has sizzled on the microphone during interviews to promote
his LAX tag-team of Nelson "Homicide" Erazo and Shawn Hernandez on TNA Impact (7 p.m. Thursdays, Spike TV). But
despite LAX's popularity, TNA has toned down its push of the act amid concerns Ashenoff ultimately may be leaving for
full-time work for AAA. Fresh off a red-hot feud with Team 3-D (aka The Dudley Boys), LAX is relegated to a midcard
match against Terry "Rhino" Gerin and Brandon "Senshi" Silvestry on Sunday night's Slammiversary pay-per-view show
emanating from Nashville. "I always thought talent should override (backstage) politics, and obviously it doesn't," Ashenoff
said. "We're at a crossroads. TNA can use us and draw the Latino audience they so desperately need, plus feature someone
that got popular. You'd think businesswise it would behoove them to promote us. But right now, they think I may leave so
they're really not promoting us like they should." After achieving mainstream stardom in Mexico during the early 1990s,
Ashenoff returned to the U.S. and had successful stints in Extreme Championship Wrestling and World Championship
Wrestling. Behind the scenes, Ashenoff was influential in bringing high-flying lucha libre performers like current World
Wrestling Entertainment star Rey Mysterio into the U.S. grappling scene. Ashenoff is now trying to organize a pure lucha
libre promotion for the U.S. to capitalize on the genre's popularity among the sizable number of fans that have emigrated
from Mexico. "I've always said whoever opens a Latino promotion in the U.S. will be a very rich man," said the Cuban-born
Ashenoff, who was raised in Miami and lives in the San Diego area. Even with his current health woes, Ashenoff said he
hopes to resume wrestling by year's end. Ashenoff said he would focus on performing in Mexico because "you don't need to
do as much as in the U.S. The Latino population (is) more sympathetic to its heroes as they get older. At this point in my
career in Mexico, they just want to be able to say they saw me." Fans wanting to contribute to Ashenoff's medical fund can
e-mail getwellkonnan@aol.com for more information. Sincerely, Andy Barton Senior Vice President TNA Entertainment,
LLC (615) 254-3333 www.tnawrestling.com [http://www.tnawrestling.com]

CONFIDENTIAL