## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **TNA Entertainment, LLC,** | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| **Charles "Carlos" Ashenoff,** | § | |
| | § | |
| Defendant, | § | **CIVIL ACTION NO.: 3:08-cv-522-B** |
| | § | |
| v. | § | |
| | § | |
| **Jeffrey L. Jarrett, Dixie Carter, Paul W.** | § | |
| **Taylor III (p/k/a Terry Taylor), and** | § | |
| **Wayne Keown (p/k/a Dutch Mantel),** | § | |
| | § | |
| Third-Party Defendants | § | |

## BRIEF IN SUPPORT OF PLAINTIFF'S OPPOSED MOTION TO COMPEL DISCOVERY RESPONSES FROM DEFENDANT CHARLES "CARLOS" ASHENOFF

**TABLE OF CONTENTS**

Page

I.  SUMMARY ........................................................................................................................ 1

II. BACKGROUND ............................................................................................................... 1
    A.  Overview of Case ................................................................................................... 1
    B.  Plaintiff TNA's Discovery Requests ...................................................................... 3

III. ARGUMENTS AND AUTHORITIES ............................................................................ 6
    A.  Ashenoff has Failed to Produce Correspondence with Third Parties .................... 7
    B.  Ashenoff has Failed to Produce Any Audio or Video Recordings of His
        Performances .......................................................................................................... 9
    C.  Ashenoff has Failed to Produce Any Documents or Communications
        Related to Other Employment Opportunities ...................................................... 10
    D.  Ashenoff has Failed to Produce Any Records or Documentation
        Concerning Visits or Stays in Substance Abuse Facilities, Despite
        Admission From Counsel That Such Records Exist ............................................ 11
    E.  Ashenoff has Failed to Answer TNA's Second Set of Interrogatories ................ 13
    F.  Costs Should be Awarded to TNA for Ashenoff's Failure to Comply with
        his Discovery Obligations .................................................................................... 15

IV. CONCLUSION ............................................................................................................... 15

**CERTIFICATE OF CONFERENCE** ....................................................................................... 16

**CERTIFICATE OF SERVICE** ................................................................................................. 17

## TABLE OF AUTHORITIES

**CASES**

*In re Sealed Case (Med Records)*, 381 F.3d 1205 ............................................................................6

*Degen v. U.S.*, 517 U.S. 820, 116 S.Ct. 1777 ..................................................................................7

*U.S. v. El Paso Co.*, 682 F.2d 530 ...................................................................................................8

**STATUTES**

42 U.S.C. § 1981................................................................................................................................3

Fed. R. Civ. P. 26(a)(1)(A)(i) ............................................................................................................4

Fed. R. Civ. P. 26(b)(1)......................................................................................................................7

Fed. R. Civ. P. 26(b)(5)......................................................................................................................4

Fed. R. Civ. P. 33(b)(2)......................................................................................................................6

Fed. R. Civ. P. 33(b)(3)....................................................................................................................14

Fed. R. Civ. P. 33(d)(1)....................................................................................................................14

Fed. R. Civ. P. 37(a)(3)......................................................................................................................7

Fed. R. Civ. P. 37(a)(5)(A) ..............................................................................................................15

### BRIEF IN SUPPORT OF PLAINTIFF'S OPPOSED MOTION TO COMPEL DISCOVERY RESPONSES FROM DEFENDANT CHARLES "CARLOS" ASHENOFF

Plaintiff TNA Entertainment, LLC ("TNA" or "Plaintiff") hereby files its Brief in Support of Plaintiff's Opposed Motion to Compel Discovery Responses From Charles "Carlos" Ashenoff, and in support thereof, respectfully shows the Court as follows.

### I. SUMMARY

1. Plaintiff seeks to compel Defendant Ashenoff to comply with Plaintiff's discovery requests, served on August 14, 2008 and November 18, 2008.

2. This is a declaratory judgment action filed by TNA in response to threats of legal action by one of its contracted performers, Charles "Carlos" Ashenoff ("Ashenoff"). Upon TNA filing the instant action for declaratory relief, Defendant Ashenoff responded with numerous counterclaims. These counterclaims allege causes of action based on Defendant Ashenoff's relationship with TNA, and include claims of bodily injury, drug abuse, racial discrimination, and intentional infliction of emotional distress while Ashenoff was a TNA wrestler.

3. Though this case has been ongoing for in excess of nine months, with the initial discovery deadline over three and one half months ago, Defendant Ashenoff has yet to provide sufficient basic discovery to enable TNA to conduct even the first deposition.

### II. BACKGROUND

**A.   OVERVIEW OF CASE**

4. Plaintiff TNA is engaged in the business of producing, arranging, staging, conducting and promoting professional wrestling events and programs throughout the world. In conducting wrestling events, TNA contracts with wrestlers, writers, bookers and administrative

personnel. *See* Plaintiff's Original Complaint and Request for Declaratory Judgment ("Complaint") ¶ 6.

5. Defendant Ashenoff has been a professional wrestler for over two decades. He has wrestled for multiple wrestling organizations, including the World Wrestling Federation, World Championship Wrestling, Extreme Championship Wrestling, and most recently TNA. *Id*. at ¶ 7.

6. For many years before he joined TNA, and during his tenure with TNA, Ashenoff wrestled under the "ring name" of "Konnan" and portrayed the role of a Hispanic wrestler. This character was a mix of several different wrestling characters developed by Ashenoff and others in over twenty years in the business. When Ashenoff first began providing services to TNA, TNA incorporated Ashenoff's "Konnan" character into its dramatic story lines and scenes to provide creative entertainment to its audience. *Id*. at ¶ 8.

7. Ashenoff portrayed the Konnan character for several years. During part of his time playing this role, Ashenoff teamed up with two other TNA performers, Shawn Hernandez and Nelson "Homicide" Erazo, to form the wrestling group "Latin American Exchange", or "LAX." Despite the artistic license that TNA afforded Ashenoff in playing this role, Ashenoff began to develop a negative view of his treatment by TNA in the Summer of 2007. Instead of addressing these concerns squarely with TNA management, Ashenoff chose to "lie in wait" – suddenly beginning a campaign against TNA to extort unearned money. Particularly, Ashenoff threatened that if TNA did not succumb to his monetary demands, he would go to news outlets to make public claims of drug abuse and racial discrimination -- thereby making things "messy" for TNA and its management.

8. His threats against TNA heightened, and in March of 2008 Ashenoff sent TNA a demand letter and "draft lawsuit" that alleged what Ashenoff described as "bodily injury claims," "racial discrimination claims," and trademark claims. The demand letter threatened TNA with public embarrassment and made numerous other explicit and implicit threats. He ended his letter by demanding a one time payment of $7,000,000 in exchange for his silence.[1]

9. In response to this demand letter, TNA filed a declaratory judgment action seeking declarations of the Court that (1) Texas law applies to all of the controversies arising out of the Independent Contractor Agreements, (2) Defendant was an independent contractor and not an employee of TNA, (3) to the extent TNA's employees or contractors purportedly provided Defendant with illegal or non-prescription medications, they did so outside the scope of their employment, (4) all claims for personal and bodily injury have been released, (5) declaratory relief based on 42 U.S.C. § 1981, and (6) TNA has a legal right to use the LAX logo and has not violated any applicable trademark statutes or laws. In response, Ashenoff filed numerous counterclaims, alleging substantively the same baseless claims as were encompassed in his demand letter.

B. **PLAINTIFF TNA'S DISCOVERY REQUESTS**

10. On August 22, 2008, all parties signed a Joint Status Report & Discovery Schedule, delineating each party's respective discovery obligations. Pursuant to this schedule, all parties were to simultaneously exchange initial disclosures and responses and objections to each party's first sets of requests for production and interrogatories. At the time this schedule was agreed upon, counsel for TNA anticipated that this initial exchange of information and documents would satisfy the majority of each party's initial discovery obligations.

---

[1] Ashenoff has recently dropped his trademark infringement claims.

11. On September 19, 2008, Ashenoff served TNA with his initial disclosures and with responses and objections to TNA's initial requests for production and interrogatories. Upon receipt of these documents, it became readily apparent that Ashenoff had no intention of good faith compliance with his discovery obligations. Ashenoff's list of persons "likely to have discoverable information" simply recited the names of the parties to the lawsuit, even though this cursory recitation was patently insufficient under Fed. R. Civ. P. 26(a)(1)(A)(i). *See* "Exhibit A", Defendant's Initial Disclosures, APP05. Among other deficiencies, these disclosures failed to identify even a single doctor, nurse, or other medical professional who treated the injuries that Ashenoff had alleged in his pleadings, failed to include the names of any witnesses who could substantiate discriminatory conduct by TNA -- despite counsel for Ashenoff having previously represented that such witnesses existed -- and failed to identify any subjects about which each witness is likely to have knowledge, again in plain violation of the rule.

12. Similarly, in response to TNA's First Requests for Production, Ashenoff produced only sixty-one pages of documents, these being responsive to but a small fraction of TNA's eighty-eight requests for production. Instead, meritless objections were made to the majority of TNA's discovery requests. *See* "Exhibit B," Defendant Ashenoff's Responses and Objections to Plaintiff's First Request for Production, APP07- APP38. Despite the nature of his claims against TNA, Ashenoff produced no records of medical treatment for his alleged injuries, no documents supporting the allegation that Ashenoff was the victim of racial discrimination, and no documents supporting the allegation that TNA provided Ashenoff with any drugs. *Id.* Though claiming privilege in addressing many of our requests, Ashenoff failed to provide a privilege log in blatant contravention of Fed. R. Civ. P. 26(b)(5). Likewise, TNA's Interrogatories were not

answered in a forthright manner. *See* "Exhibit C," Defendant Ashenoff's Responses and Objections to Plaintiff's First Interrogatories, APP39- APP47.

13. On October 2, 2008, counsel for TNA sent a letter to Ashenoff outlining the deficiencies in his discovery responses and initial disclosures. See "Exhibit D," October 2, 2008 Letter, APP48- APP52. In response to this letter and a telephonic conversation among counsel for all parties, agreement was reached regarding some of Ashenoff's discovery deficiencies, and counsel for Ashenoff agreed to supplement his discovery responses.

14. On October 23, 2008, Ashenoff supplemented his initial disclosures and responses to TNA's discovery requests and interrogatories, producing additional documents. Though this production addressed some of TNA's concerns, Ashenoff's compliance with his discovery obligations was still woefully deficient. For example, the medical providers listed by Ashenoff in response to Interrogatory No. 6 (pertaining to medical providers during the past 15 years) were conspicuously incomplete. A cursory examination of the listed medical providers reveals that the medical care given by the listed providers pertains only to Ashenoff's treatment for his kidney problems. Not one medical provider of Ashenoff's is listed for the 13 years prior, including records related to his hip injury. *See* "Exhibit E," Defendant Ashenoff's First Supplemental Initial Disclosures, APP53- APP60; "Exhibit F," Defendant Ashenoff's Supplemental Responses to Plaintiff's First Set of Interrogatories, APP61- APP71.

15. Ashenoff further refused to provide even the most basic information concerning the doctors and pharmacies where he obtained drugs. *See* "Exhibit B," Defendant Ashenoff's Responses and Objections to Plaintiff's First Request for Production, APP20- APP21. As a result, on November 18, 2008, TNA served additional interrogatories on Ashenoff specifically requesting Ashenoff to identify this information. On multiple occasions, and with multiple

counsel for Ashenoff, TNA sent correspondence in which counsel for TNA went to great lengths to apprise Ashenoff's counsel of the numerous deficiencies in Defendant's discovery. Prior to filing the instant motion, a final letter was sent by counsel for TNA to Ashenoff explicitly recounting the most egregious ways in which Ashenoff had failed to comply with his discovery obligations. *See* "Exhibit G" December 19, 2008 Letter, APP72- APP73. To date, counsel for Ashenoff has given no indication that he plans to comply with any of these discovery deficiencies, putting in serious jeopardy TNA's deposition of Defendant Ashenoff, which has been noticed for January 21, 2009.

16.   After the aforementioned emails, letters, and conversations regarding the parties' respective discovery obligations, Ashenoff served his responses to TNA's second set of interrogatories.[2] *See* "Exhibit H," Defendant Ashenoff's Responses and Objections to Plaintiff's Second Set of Interrogatories, APP74- APP78. Here, Ashenoff failed to directly answer a single question concerning what medication he has taken, or how he obtained these medications.[3] *Id*. Under the belief that further discourse would prove fruitless, counsel for TNA prepared the instant motion.

### III.
### ARGUMENTS AND AUTHORITIES

17.   Fed. R. Civ. P. 26(b)(1) allows a party to discover any nonprivileged matter that is relevant to any party's claim or defense. *In re Sealed Case (Med Records)*, 381 F.3d 1205, 1214 (D.C. 2004). In determining whether particular information is discoverable, the requested information need only appear reasonably calculated to lead to the discovery of admissible

---

[2] It should be noted that Ashenoff failed to timely respond to TNA's second set of interrogatories, instead serving them over a week after the due date in direct contravention of Fed. R. Civ. P. 33(b)(2).

[3] As discussed *infra,* Plaintiff's second set of interrogatories address, generally, Defendant Ashenoff's consumption of drugs and other substances over the past 20 years and ask how he obtained them. *See* "Exhibit H," Defendant Ashenoff's Responses and Objections to Plaintiff's Second Set of Interrogatories.

evidence. Fed. R. Civ. P. 26(b)(1); *Degen v. U.S.*, 517 U.S. 820, 825-26, 116 S.Ct. 1777, 1782 (1996). Upon failure of a party to comply with its discovery obligations, "a party seeking discovery may move for an order compelling an answer, designation, production, or inspection." Fed. R. Civ. P. 37(a)(3). In accordance with this provision, TNA respectfully moves the Court to compel Ashenoff to answer its interrogatories and produce requested documents.

18.     Though TNA has made numerous requests for which Ashenoff's responses have been deficient, TNA will herein narrow this motion to the five most consequential of its unanswered requests.

A.     **ASHENOFF HAS FAILED TO PRODUCE CORRESPONDENCE WITH THIRD PARTIES**

19.     TNA, in its First Request for Production of Documents, seeks documents reflecting communications between Ashenoff and third parties concerning the substance of his claims against TNA. To date, he has yet to produce a single responsive document, and his answers to our requests for production remain as follows:

> **REQUEST NO. 2**:   All communications between you and any third-party discussing i) the creation and/or development of the character "Konnan," ii) the creation or development of LAX, iii) any alleged wrongful conduct of TNA, iv) any alleged racial or other improper discrimination by any individual or organization, v) any alleged injuries or medical conditions you claim you suffered while you were an independent contractor of TNA, vi) any alleged supply or provision of drugs or medications to you or any other person to take any drug or medications to you or any other person by TNA or its employees, agents or representatives, vii) any instruction or encouragement, by TNA or anyone associated with TNA, for you or any other person to take any drug or medication, viii) any surgeries you have undergone, or ix) *TNA*.
>
> **RESPONSE:** Mr. Ashenoff objects to RPD No. 2 on the grounds that it is overly broad, unduly burdensome and seeks the production of documents that are neither relevant, nor reasonably calculated to lead to the discovery of admissible evidence. Mr. Ashenoff further objects to RPD No. 2 on the grounds that it seeks to elicit documents that are privileged and confidential, including documents protected by attorney-client privilege and/or constituting attorney work-product. Subject to, and without waiver of said objections, Mr. Ashenoff will produce all documents in his possession, custody or control.

    **REQUEST NO. 7:** Any witness statements, meeting notes, or other documents relating to your conversations, communications, or attempts to contact any persons regarding the giving of evidence or testimony in an actual or potential lawsuit against TNA.

    **RESPONSE:** Mr. Ashenoff objects to RPD No. 7 on the grounds that it is overly broad, and unduly burdensome. Mr. Ashenoff further objects to RPD No. 7 on the grounds that it seeks documents that are privileged or confidential, including documents protected by attorney-client privilege and/or constituting attorney work-product.

*See* "Exhibit B," Defendant Ashenoff's Responses and Objections to Plaintiff's First Request for Production, APP09- APP11. Communications between Ashenoff and third parties regarding the subject matter of the instant litigation are discoverable, as such communications would undoubtedly address, to some extent, the merits of his claims.[4] As noted *supra*, this case has been on going for in excess of nine months, with these requests for production served on counsel for Ashenoff on August 14, 2008, over four and one half months ago. As such, TNA has allowed more than ample time for full compliance.

    20. TNA has become aware that Ashenoff has initiated contact (via email and text message) with multiple TNA wrestlers, including a "text message" communication with Nelson "Homicide" Erazo, a former co-worker and teammate of Ashenoff's at TNA. *See* "Exhibit J," Text Message from Ashenoff to Nelson Erazo, APP81. In this text message, Ashenoff asks Erazo to inform "jeff [Jarrett] or dixie [Carter] that i [sic] would be willing 2 [sic] come back and rejoin LAX but how it used to be. . . if you talk to jeff tell him yeah we used to be good friends but to me dat [sic] stopped when he didnt [sic] help me with my hip operation but yet paid [Scott] steiners and wouldn't give me more cheese thats the main reason i left." *Id.* TNA is also

---

[4] TNA recognizes that certain statements of third parties may have been gathered by Ashenoff in anticipation of the instant litigation, and, as such, may be protected from disclosure. However, documents reflecting Ashenoff's interviews with the media and copies of electronic communications that Ashenoff has had with former colleagues cannot be said to have been "prepared in anticipation of litigation." *U.S. v. El Paso Co.*, 682 F.2d. 530, 542 (5th Cir. 1982). As such, TNA is clearly entitled to these documents.

aware that Ashenoff has, on numerous occasions, spoken to media outlets regarding the substantive allegations of this lawsuit, but has yet to produce documents reflecting any of these communications. *See, e.g.* "Exhibit I," <u>Konnan Talks About Why He Left TNA</u>, APP79-APP80.[5]

21. Understandably, these are not the types of documents that Ashenoff would like to produce, as they undermine many of his allegations against TNA. However, these document are clearly within the scope of permissible discovery and are exactly the type of documents that were contemplated by TNA in making its production requests. Though Mr. Erazo, on his own initiative, informed TNA management of this communication, TNA has no idea how many other similar communications were made with third parties or the substance of such communications. Taking into account how easily electronic communications such as this are destroyed, and without any mechanism for TNA to ensure that it is apprised of other third party communications, spoliation of evidence is a significant concern. The bad faith that has been shown by Ashenoff in refusing to produce these documents gives TNA a broad basis for asking the Court to overrule all objections and to compel production of all such communications with third parties and all contact with potential witnesses to the subject matters of this litigation.

B. **ASHENOFF HAS FAILED TO PRODUCE ANY AUDIO OR VIDEO RECORDINGS OF HIS PERFORMANCES**

22. Ashenoff has made numerous allegations relating to racism at TNA. These claims allege that "TNA required Mr. Ashenoff to perform under the name Konnan. . . The character Konnan [being] and amalgamation of Hispanic stereotypes." *See* Defendant Ashenoff's Answer and Counterclaims ("Answer") ¶ 21. These claims further allege that TNA required

---

[5] Though TNA has included only one article in which Ashenoff discusses the lawsuit, a cursory search of the internet will reveal that Ashenoff has spoken out on numerous occasions regarding the subject matters of the lawsuit.

Ashenoff to use racially charged language in referring to and addressing Caucasian wrestlers, "personify[ing] racial and ethnic slurs against Hispanics, in general, and Mexicans, in particular." *Id*. at ¶ 22.

23. TNA has requested from Ashenoff, via Request for Production No. 13, "All video or audio recordings relating to your performance of the 'Konnan' character at any point in time before, during, or after your tenure at TNA" to discover the basis for these allegations. *See* "Exhibit B," Defendant Ashenoff's Responses and Objections to Plaintiff's First Request for Production, APP12. Though Ashenoff's response indicates that he will produce such documents, he has thus far failed to do so. *Id.*

24. As above, TNA has been apprised of video recordings that show the "Konnan" character being performed by Ashenoff well prior to his relationship with TNA. Still other video recordings demonstrate that Ashenoff continues to portray the "Konnan" character in wrestling performances to date. Though his portrayals of the "Konnan" character outside of his professional relationship with TNA are detrimental to his allegation that TNA forced him into this role, such recordings are well within the scope of discovery. Further, TNA has gone through great lengths to provide Ashenoff with scripts of performances in which he was a participant while performing in TNA productions. Ashenoff has shown bad faith in his marked refusal to produce video and audio recordings of his performances, and TNA requests that the Court overrule all objections and compel the production of all such video and audio recordings.

C. **ASHENOFF HAS FAILED TO PRODUCE ANY DOCUMENTS OR COMMUNICATIONS RELATED TO OTHER EMPLOYMENT OPPORTUNITIES**

25. TNA has yet to be provided any documents related to other employment opportunities that Ashenoff pursued or had been offered while under contract with TNA. Rather,

Ashenoff has refused, *carte blanche*, to provide any of this information while objecting to its relevancy.

> **REQUEST NO. 63**:  All documents relating to any other employment opportunities that you pursued or were offered by any other professional wrestling promotion or organization during the time when you were under contract with TNA.
>
> **RESPONSE**:  Mr. Ashenoff objects to RPD No. 63 on the grounds that it is overly broad, unduly burdensome, and seeks documents that are neither relevant, nor reasonably calculated to lead to the discovery of admissible evidence.

"Exhibit B," Defendant Ashenoff's Responses and Objections to Plaintiff's First Request for Production, APP29.

26. Despite Ashenoff's objections to this discovery request, there are clearly a host of reasons why this request is well within the permissible bounds of discovery.  Ashenoff's failure to leave TNA – in spite of having employment opportunities elsewhere for commensurate pay – would serve to undermine his allegation that TNA subjected him to a hostile work environment.  Such documentation is also relevant to the market value for Ashenoff's wrestling performances during the relevant timeframe, *e.g.* whether such offers were a lesser, equal, or greater value than his contract with TNA.  Lastly, this discovery request is relevant to his alleged damages, as other opportunities and offers to perform as a professional wrestler are intertwined with his claims of physical injury, with implications relating to Ashenoff's ability to continue his wrestling career.  TNA respectfully asks the court to overrule all objections and compel Ashenoff to produce this information.

**D.     ASHENOFF HAS FAILED TO PRODUCE ANY RECORDS OR DOCUMENTATION CONCERNING VISITS OR STAYS IN SUBSTANCE ABUSE FACILITIES, DESPITE ADMISSION FROM COUNSEL THAT SUCH RECORDS EXIST**

27.     In response to TNA's request for documents related to Ashenoff's treatment or evaluation by a substance abuse facility, Ashenoff has likewise been recalcitrant.

> **REQUEST NO. 82:** All documents and records relating in any way to any visit to or stay in any substance abuse facility by you.
>
> **RESPONSE:** Mr. Ashenoff objects to RPD No. 82 on the grounds that it is overly broad, unduly burdensome, and seeks the production of documents that are neither relevant, nor reasonably calculated to lead to the discovery of admissible evidence.

"Exhibit B," Defendant Ashenoff's Responses and Objections to Plaintiff's First Request for Production, APP35.

28.     There is no legitimate basis for Ashenoff to refuse to provide TNA with records related to his substance abuse treatment. Such records are directly related to the Ashenoff's allegations against TNA. Specifically, Ashenoff's counterclaims allege that "as a consequence of the use of un-prescribed pain killers supplied to him by TNA agents and performers, one of Mr. Ashenoff's kidney's failed and had to be replaced." *See* Answer ¶ 22.

29.     Clearly the time period during which Ashenoff used drugs and the types of drugs that he used are highly relevant to the instant litigation. If Ashenoff were treated for drug abuse before his contractual relationship with TNA began, this drug use must be taken into account when evaluating the cause of his alleged injuries. As further discussed *infra*, Ashenoff must provide TNA with sufficient information related to his past drug use and/or abuse in order for TNA to determine the source, if any, of his alleged injuries.

30.     During a teleconference between counsel for TNA and Adriana Midence, who until recently was a counsel of record for Ashenoff, Ms. Midence agreed to withdraw Ashenoff's

objections to this discovery requests and to produce this information. It was admitted by Ms. Midence that Ashenoff had, on at least one occasion, been treated for substance abuse. Several months have passed since counsel for Ashenoff promised records of this treatment, and TNA has yet to be provided the first document relevant to our request. TNA respectfully asks the Court to compel Ashenoff to provide such records and to overrule all objections.

### E.   ASHENOFF HAS FAILED TO ANSWER TNA'S SECOND SET OF INTERROGATORIES

31.   Lastly, TNA objects to the manner in which Ashenoff has answered TNA's second set of interrogatories. Instead of answering these in a forthright manner, Ashenoff states as follows:

> **INTERROGATORY NO. 8:**   Identify each and every health care provider, including, but not limited to, any medical doctor, doctor of osteopathic medicine, chiropractor, dentist, physician's assistant; and/or nurse practitioner, who has prescribed or otherwise provided you medication within the last twenty (20) years. For each health care provider listed, please list such provider's contact information, the name(s) of the medication(s) prescribed, and the date(s) and quantities of each prescribed medication.
>
> **RESPONSE:**   Mr. Ashenoff responds that he has already provided medical information and copies of medical documents to TNA and does not have any additional medical information and [sic] documents in his possession.
>
> **INTERROGATORY NO. 9:**   Identify each and every pharmacy, clinic, and/or medical service provider's office that has provided you medication within the last twenty (20) years. For each pharmacy, clinic, and/or medical service provider's office listed, please list the names of the drugs provided, and the contact information for each provider.
>
> **RESPONSE:**   Mr. Ashenoff responds that he has already provided medical information and copies of medical documents to TNA and does not have any additional medical information and [sic] documents in his possession.
>
> **INTERROGATORY NO. 10:**   Identify each and every drug, medication, herbal supplement, and/or vitamin, that you have taken within the past twenty (20) years; without regard to 1) whether such drug, medication, herbal supplement, and/or vitamin was in your possession legally, 2) the reason such drug, medication, herbal supplement, and/or vitamin was taken, or 3) whether such drug, medication, herbal supplement, and/or vitamin was of a type commercially produced or was of a type produced on the black market. For each answer to this interrogatory, please list the name and contact information of the person(s) and/or

>facility from which the drug, medication, herbal supplement, and/or vitamin was obtained, and quantity/length of time that it was taken.
>
>**RESPONSE:**   Mr. Ashenoff responds that he has already provided medical information and copies of medical documents to TNA and does not have any additional medical information and [sic] documents in his possession.

*See* "Exhibit H," Defendant Ashenoff's Responses and Objections to Plaintiff's Second Set of Interrogatories, APP75 - APP76.

32.   This response is wholly inadequate under the Rules, which require Ashenoff to provide the requested information. Fed. R. Civ. P. 33 (b)(3) provides that "Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." An exception is made for those interrogatories that may be answered by the examination of a party's "business records." Assuming that the requested information can be found in medical records that Ashenoff has already produced, the Rules require Ashenoff to answer each interrogatory by "(1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could." Fed. R. Civ. P. 33(d)(1).

33.   Here, Ashenoff has not provided answers to any of these interrogatories in previously produced medical records. Presupposing that such information is somehow ascertainable from the medical information that has been provided (which it is not), Ashenoff has not specified, in sufficient detail, from which records this information can be ascertained. TNA respectfully requests the Court to overrule all objections and to compel Ashenoff to answer each of these interrogatories to the best of his knowledge. Even if records related to his drug use are not in his possession, it is disingenuous for Ashenoff to claim no knowledge of any medications or drugs taken by him during the relevant time frame. Such information is well within the bounds of permissible discovery given the nature of Ashenoff's allegations. Further, TNA

respectfully request that the court overrule all objections to TNA's Interrogatory No. 6 (discussed *supra*), and compel Ashenoff to tender a complete listing of all his medical providers over the past fifteen years. *See* "Exhibit F," Defendant Ashenoff's Supplemental Responses to Plaintiff's First Set of Interrogatories, APP64- APP67.

**F.   COSTS SHOULD BE AWARDED TO TNA FOR ASHENOFF'S FAILURE TO COMPLY WITH HIS DISCOVERY OBLIGATIONS**

34.   TNA, having clearly set forth its basis for the Court to compel production of documents, respectfully asks the Court to award it the reasonable cost of moving the Court for the same. Fed. R. Civ. P. 37(a)(5)(A) states:

> If the motion [to compel] is granted – or if the disclosure or requested discovery is provided after the motion was filed – the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion including attorney's fees.

Here, Ashenoff's refusal to act in good faith in producing documents, making initial disclosures, and responding to interrogatories entitles TNA to an award of reasonable costs and attorneys fees.

## IV.
## CONCLUSION

35.   For the foregoing reasons, TNA respectfully requests that the Court overrule all objections and compel Defendant Ashenoff to produce all documents responsive to Plaintiff's discovery requests listed herein by no later than January 31, 2009, or as soon thereafter as the court deems practicable. Plaintiff also requests that the Court order Defendant Ashenoff to reimburse TNA for its reasonable expenses, including attorney's fees, incurred by TNA herein moving the Court.

Respectfully submitted,

**FULBRIGHT & JAWORSKI L.L.P.**

*/s/ Richard S. Krumholz, Esq.*
Richard S. Krumholz
Texas Bar No. 00784425
William P. Finegan
Texas Bar No. 07008700

2200 Ross Avenue, Suite 2800
Dallas, Texas 75201-2784
T: 214-855-8000
F: 214-855-8200

**ATTORNEYS FOR PLAINTIFF
TNA ENTERTAINMENT, LLC**

## CERTIFICATE OF CONFERENCE

I certify that counsel for TNA, Richard Krumholz, conferred with counsel for Ashenoff multiple times regarding the issues addressed herein, and the parties were unable to reach agreement on the scope of permissible discovery. Richard Krumholz has been informed by counsel for Ashenoff that Defendant opposes TNA's Motion.

*/s/ Richard S. Krumholz*
Richard Krumholz

## **CERTIFICATE OF SERVICE**

This pleading was served in accordance with the Federal Rules of Civil Procedure by regular U.S. mail and via ECF on the following counsel of record on January 6, 2009:

Cary Ichter
ADORNO & YOSS, LLC
Two Midtown Plaza, Suite 1500
1349 W. Peachtree Street, N.W.
Atlanta, Georgia  30309

Kevin Wiggins
Tracey Wallace
ADORNO YOSS WHITE & WIGGINS LLP
Bank of America Plaza, Suite 6200
901 Main Street
Dallas, Texas 75202

Robert Blackwell
BROWN & HOFMEISTER, L.L.P.
740 E. Campbell Road, Suite 800
Richardson, Texas  75081

*/s/ Richard S. Krumholz*
Richard Krumholz