| | | |
|---|---|---|
| **IN THE UNITED STATES DISTRICT COURT**<br>**FOR THE NORTHERN DISTRICT OF TEXAS**<br>**DALLAS DIVISION** | | |
| **TNA Entertainment, LLC,**<br><br>      **Plaintiffs,**<br><br>**v.**<br><br>**Charles "Carlos" Ashenoff,**<br><br>      **Defendant,**<br><br>**v.**<br><br>**Jeffrey L. Jarrett, Dixie Carter, Paul W.**<br>**Taylor III (p/k/a Terry Taylor), and**<br>**Wayne Keown (p/k/a Dutch Mantel),**<br><br>      **Third-Party Defendants** | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **CIVIL ACTION NO.: 3:08-cv-522-B** |

**PLAINTIFF'S RESPONSE TO DEFENDANT CHARLES "CARLOS" ASHENOFF'S**
**MOTION TO COMPEL DISCOVERY RESPONSES**

# TABLE OF CONTENTS

I.    SUMMARY ................................................................................................ 1

II.   DISCOVERY TIMELINE ...................................................................... 1

III.  ARGUMENTS AND AUTHORITIES.................................................... 3

    A.    The Email Addresses of TNA's Performers Are Outside the Scope of Permissible Discovery .......................................................................... 3

    B.    TNA Has No Obligation to Provide Compensation Information For its Performers Absent a Prima Facie Showing of Discriminatory Conduct .............. 5

    C.    TNA Has Provided Ashenoff With a Copy of All Drug Policies in Existence During His Relationship with TNA and Has Informed Counsel that TNA Has No Relevant Records As to This Policy's Enforcement ................ 9

    D.    Ashenoff's Motion To Compel Does Not Merit Judicial Relief, Much Less the Award of Costs............................................................................. 11

IV.   CONCLUSION ...................................................................................... 12

## TABLE OF AUTHORITIES

**CASES**

*Arista Records LLC v. Does 1-19*, 551 F. Supp. 2d 1 (D.D.C. 2008).................................4

*Interstate v. Does 1-12*, 2008 WL 4939105 (N.D. Ind. 2008)...........................................4

*Psychopathic Records v. Anderson*, 2008 WL 4852915 (E.D. Mich. 2008) ......................4

*Calcote v. Texas Educational Foundation*, 578 F.2d 95 (5th Cir. 1978)...........................6

*Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089 (1981)..................................................................................................................6

*Ray v. Tandem Computers, Inc*. 63 F.3d 429 (5th Cir. 1995)..............................................6

*Poseidon Oil Pipeline Co. v. Transocean Sedco Forex, Inc.*, Civil Action No. 00-760, 2002 U.S.Dist. LEXIS 15750 (E.D. La. 2002) ...................................................6

*Pittman v. Hattiesburg Municipal Separate School District*, 644 F.2d 1071 (5th Cir. 1981) ............................................................................................................6, 7

*King v. Enter. Leasing Co.,* 2007 U.S.Dist. LEXIS 50103 (N.D. Tex. 2007) ....................7

*Pierce v. Underwood*, 487 U.S. 552, 108 S.Ct. 2541 (1988)............................................12

**STATUTES**

42 U.S.C. 1301 *et seq*..........................................................................................................9

42 U.S.C. § 1981 ..................................................................................................................2

Fed. R. Civ. P. 26.................................................................................................................1

Fed. R. Civ. P. 26(a)(i) ........................................................................................................3

Fed. R. Civ. P. 37(a) ..........................................................................................................10

**PLAINTIFF'S RESPONSE TO DEFENDANT CHARLES "CARLOS" ASHENOFF'S
MOTION TO COMPEL DISCOVERY RESPONSES**

Plaintiff TNA Entertainment, LLC ("TNA" or "Plaintiff") opposes Defendant Charles "Carlos" Ashenoff's ("Ashenoff") Motion To Compel Discovery Responses and respectfully shows as follows:

## I.
## SUMMARY

1.      Defendant's Motion to Compel should be denied.  TNA has been forthright in responding to Defendant's discovery requests, resisting only those requests that are clearly beyond the scope of permissible discovery.

2.      Contrary to Ashenoff's motion, 1) TNA has no obligation to provide, *carte blanche*, all of its performer's email addresses to Ashenoff as this is beyond the scope of Fed. R. Civ. P. 26(a)(i) and would be prejudicial to TNA; 2) TNA's obligation to produce compensation information for all of its performers is not ripe, as Defendant Ashenoff has yet to make any showing that TNA has acted in a racially discriminatory manner or identify any performers that are comparable to him for purposes of a disparate pay claim; and 3) TNA has already produced the drug policy in effect while Ashenoff was under contract with TNA as well as all relevant information related to TNA's use of Ashenoff while he claimed to be injured. *See generally* "Exhibit A" Affidavit of Dixie Carter, APP01-APP04.  Finally, Ashenoff at a minimum has failed to establish that TNA's objections were made in bad faith and thus is not entitled to a costs or fees award.

## II.
## DISCOVERY TIMELINE

3.      On March 26, 2008, TNA filed a declaratory judgment action seeking declarations of the Court that (1) Texas law applies to all of the controversies arising out of the

Independent Contractor Agreements, (2) Defendant was an independent contractor and not an employee of TNA, (3) to the extent TNA's employees or contractors purportedly provided Defendant with illegal or non-prescription medications, they did so outside the scope of their employment, (4) all claims for personal and bodily injury have been released, (5) it is entitled to declaratory relief based on 42 U.S.C. § 1981, and (6) TNA has a legal right to use the LAX logo and has not violated any applicable trademark statutes or laws.[1]  In response, Ashenoff filed numerous counterclaims encompassing allegations of bodily injury and of racially discriminatory conduct by TNA and its employees.

4.      On August 22, 2008, all parties signed a Joint Status Report & Discovery Schedule, delineating each party's respective discovery obligations.  Pursuant to this schedule, all parties were to simultaneously exchange Initial Disclosures and Responses and Objections to each party's First Sets of Requests for Production and Interrogatories.

5.      On September 19, 2008, TNA served its Initial Disclosures and its Responses and Objections to Ashenoff's initial Requests for Production and Interrogatories.[2]  At this time, TNA produced 330 pages of documents while withholding other documents in anticipation of an agreed confidentiality order.  A Consent Protective Order was signed by the Court on October 8, 2008, and pursuant to such order, both parties supplemented their discovery responses on October 23, 2008.  TNA produced yet more documents on December 19, 2008 and has now produced 1,790 pages of documents.  Ashenoff, by contrast, has produced only 594 pages.

---

[1] Ashenoff has recently dismissed his trademark infringement claims.

[2] Despite Defendant Ashenoff's contention that TNA's discovery responses were due on June 16, 2008 (the same day on which they were served), the Joint Status Report & Discovery Schedule indicates otherwise.

---

6.      On December 5, 2008, Ashenoff sent a draft motion to compel discovery responses to TNA.  TNA responded to this draft motion on December 12, 2008, addressing each concern in good faith and providing legitimate bases for each objection. *See* "Exhibit B" December 12, 2008 Letter, APP05-APP08.  After receiving this letter, counsel for Ashenoff agreed with TNA's position on one of the issues, but persisted in his other complaints.  TNA responded with an additional letter explaining its positions as they related to each of Ashenoff's remaining discovery concerns. *See* "Exhibit C" December 19, 2008 Letter, APP09-APP10.  TNA's objective in sending these communications was to start a constructive discourse with opposing counsel that would result in an agreement among all parties regarding each party's respective discovery obligations.  Despite several telephonic conferences and numerous written communications, counsel has been unable to reach agreement as to these discovery issues.

### III.
### ARGUMENTS AND AUTHORITIES

A.   **THE EMAIL ADDRESSES OF TNA'S PERFORMERS ARE OUTSIDE THE SCOPE OF PERMISSIBLE DISCOVERY**

7.      The Court should deny Ashenoff's request to compel production of additional documents in response to Request for Production No. 12.  TNA has, to date, produced each and every talent roster and list of employees that has been located.  However, in producing these documents, TNA has been cognizant of its duty to protect the privacy and maintain the trust of its talent and employees. *See* "Exhibit A" Affidavit of Dixie Carter, APP02.  As such, TNA has redacted certain information from these rosters, including email addresses.

8.      Rule 26(a)(i) of the Federal Rules of Civil Procedure states that for "each individual likely to have discoverable information," the parties to an action must provide an "address and telephone number."  The Rules do not require email addresses to be disclosed --

even for those persons likely to have relevant information.  It is even more tenuous to demand this information for such a broad classification of people – the overwhelming majority of whom have not been identified by any party as "likely to have discoverable information."  Indeed, Ashenoff himself, in his Supplemental Initial Disclosures, has identified only 8 of the over 130 performers on the rosters that TNA has produced as individuals likely to have discoverable information.  *See* "Exhibit D," Defendant's First Supplemental Disclosures, APP16-APP17. Further, none of the cases cited in Ashenoff's motion support his position that he is entitled to the email addresses of TNA's entire pool of contracted talent.[3]

9.      Likewise, Ashenoff has demonstrated no legitimate need for the email addresses of TNA's performers.  TNA is aware that Ashenoff has already sent electronic communications to several of TNA's performers. *See* "Exhibit E," Text Message from Ashenoff to Nelson Erazo, APP19.   Additionally, TNA has already provided Ashenoff with the addresses and phone numbers of all of its talent and employees, the majority of whom Ashenoff worked with at TNA for a substantial period of time.  Given that Ashenoff already has the means to locate and contact these individuals, any possible benefit of forcing TNA to provide email addresses is outweighed by the risk that Ashenoff will simply use this information to send harassing *en masse* electronic communications to TNA's performers or management in hopes of gaining some advantage in the instant litigation.  Indeed, Ashenoff has a history of using electronic mail as well as traditional

---

[3] (*See* Defendant's Brief, n.3) Two of the cases cited by Ashenoff involve actions against unknown defendants for illegally downloading music.  In both of these cases, the court compelled production of electronic information from third-party internet service providers only to allow the plaintiff to "identify the defendant's true name[s]" and to match them up with the internet identities that were discovered to be illegally downloading music (*i.e.* their email addresses, and Media Access Control ("MAC") addresses). *Interstate v. Does 1-12*, 2008 WL 4939105 (N.D. Ind. 2008); *see also Arista Records LLC v. Does 1-19*, 551 F. Supp. 2d 1, 4) (D.D.C. 2008). The third case cited by Ashenoff involves the service of subpoenas on third-party internet service providers to obtain records of communications contained in three email addresses that were alleged to have been used for fraudulent purposes.  *See Psychopathic Records v. Anderson*, 2008 WL 4852915 (E.D. Mich. 2008).

mail to demand monetary payments from TNA and to harass and threaten TNA with public embarrassment or other negative consequences if such demands were not met. S*ee* "Exhibit F" Ashenoff Email, APP20; "Exhibit G" Ichter Demand Letter, APP21-APP31.   In light of Ashenoff's history, TNA should not be required to divulge the email addresses of its talent roster.

10.    Though counsel for Ashenoff has been unable to cite any relevant authority supporting his entitlement to the email addresses of all TNA's performers, TNA has offered to compromise on this issue.  Specifically, TNA has offered to provide Ashenoff with the email addresses of consenting persons on an individualized basis. *See* "Exhibit B" December 12, 2008 Letter, ¶ 1, APP05-APP06.  TNA has asked only that Ashenoff first try to contact such persons by the means already provided (*i.e.* telephonically or through the postal service). *Id*.  This offer has, to date, been rejected by counsel for Ashenoff.

11.    Given the privacy interests of TNA's employees and talent, TNA's interests in maintaining the trust and loyalty of its talent, the absence of a legal basis for the production of an organization's email addresses, and the absence of any compelling need by Ashenoff for this information, TNA respectfully requests that the Court deny Ashenoff's motion to compel production of additional documents in response to Request for Production No. 12, including the email addresses of its performers. *See* "Exhibit A" Affidavit of Dixie Carter, APP02.

**B.     TNA HAS NO OBLIGATION TO PROVIDE COMPENSATION INFORMATION FOR ITS PERFORMERS ABSENT A PRIMA FACIE SHOWING OF DISCRIMINATORY CONDUCT**

12.    The Court should also deny Ashenoff's motion to compel additional responses to Interrogatory No. 3 and Request for Production No. 1, which seek information regarding the racial background, compensation, and contractual status of TNA's performers.  To establish a

prima facie case of racial discrimination with respect to compensation, a claimant must show that he was paid less than a member of a different race was paid for work requiring substantially the same responsibility. *Pittman v. Hattiesburg Municipal Separate School Dist.*, 644 F.2d 1071, 1074 (5th Cir. 1981); *Calcote v. Texas Educational Foundation*, 578 F.2d 95 (5th Cir. 1978). Upon a claimant's successful establishment of a prima facie case, a court will presume that these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L. Ed. 207. (1981).

13.    However, "[b]ald assertions of . . . discrimination are inadequate to permit a finding that proscribed discrimination motivated a [defendant's] actions against [a plaintiff]. *Ray v. Tandem Computers, Inc*., 63 F.3d 429, 435 (5th Cir. 1995).  Here, Ashenoff has not identified any evidence other than his own bald speculation that he was discriminated against based on his race.   Rather, counsel for Ashenoff seems to rely on evidence accumulated during his involvement in another litigation that involved neither Ashenoff nor TNA as his sole basis for filing suit.[4]  Absent any initial factual showing that would substantiate a good faith belief that racial discrimination occurred, requiring the *carte blanche* production of documents related to performer compensation would be unduly burdensome upon TNA, would compromise the privacy rights of individual performers in their level of compensation,[5] and would significantly

---

[4] Some employees of TNA were previously employed by "WCW", and, as such, were deposed in a previous litigation by counsel for Ashenoff.  Though no causal connection exists between the instant litigation and the "WCW litigation", counsel for Ashenoff summarizes his bald assertions against TNA by stating only that "TNA is a racist organization because it has hired racists." *See* Exhibit "G", Ichter Demand Letter, APP28.

[5] See *Poseidon Oil Pipeline Co. v. Transocean Sedco Forex, Inc.*, Civil Action No. 00-760, 2002 U.S. Dist. LEXIS 15750, *14 (E.D. La. 2002). ("Discovery of the personnel files of [non-party individuals] present special concerns about the privacy rights of the individuals involved").

hamper TNA's proprietary interest in negotiating individually with each performer.[6]   *See* "Exhibit A" Affidavit of Dixie Carter, APP02-APP03.   Taking these important concerns into consideration, TNA's duty to produce compensation information should be preceded by some showing by Ashenoff that he was treated differently because of his race.[7]   Indeed, the Court should be particularly vigilant in protecting the private personnel records of TNA's talent given Ashenoff's prior threats to embarrass TNA in the news media unless his payment demands were met.

14.   Should the Court determine that Ashenoff is entitled to any compensation information, Ashenoff has failed to limit the scope of his request.   For Ashenoff to establish a prima facie case of disparate pay, he must prove that he "was being paid less than a member of a different race . . . for work requiring substantially the same responsibility." *Pittman*, 644 F.2d at 1074.   As such, compensation information only becomes relevant if, and when, persons of a different race are identified and alleged to be equally employed. *See King v. Enter. Leasing Co.* 2007 U.S. Dist. LEXIS 50103 (N.D. Tex. 2007).   Here, Ashenoff has failed to specifically identify any comparators.   Further, to the extent argued, TNA rejects the contention that all of its

---

[6] In Ashenoff's motion to compel, he references an offer to "allow the compensation discovery to be produced under an 'Attorneys' Eyes Only' agreement'." *See* Defendant Ashenoff's Brief ¶ 2.   In light of Ashenoff's email, and the letter demand letter sent by Ichter, TNA has reason to doubt the sincerity and effectiveness of any such agreement. *See* "Exhibit F", APP20 and "Exhibit G", APP21-APP31.   Indeed, Ashenoff and his counsel have both threatened to try this case in the press and to make this proceeding "messy" for TNA.   TNA operates within the public relations-driven entertainment industry and must take such threats seriously.

performers are comparators with Ashenoff.  Though all of TNA's performers operate within the same "ring", they are not all of the same commercial value to the TNA organization.[8]  As elsewhere in the entertainment industry, professional wrestlers are valued and compensated according to, among other factors, their skill, popularity, and professional accomplishments within the entertainment industry.  For this reason the range of compensation for TNA's performers is as broad as the performers' theatrical roles within the organization.

15.    Consequently, even presuming that TNA has some initial obligation to produce documents related to its compensation of other performers (which, as stated above, it does not), Ashenoff's requests are overly broad.  Ashenoff has failed to identify any particular performers whom he feels are of comparable value to the TNA organization.  It is uncontested that Ashenoff worked as a performer for TNA for a significant period of time.  The knowledge gained through such relationship, as well as TNA's production of numerous scripts, employee/talent rosters, and an organizational chart provide Ashenoff with more than sufficient information from which he can identify performers with whom he feels he is comparable.  In spite of this, Ashenoff fails to specify even a single comparator, nor is his request limited to the relevant time period.

---

[7]  Applying this principle, the court in *King v. Enter. Leasing Co.* granted a motion for summary judgment dismissing a plaintiff's allegations that, among other things, she was denied equal pay based on her race and sex. 2007 U.S. Dist. LEXIS 50103 (N.D. Tex. 2007).  As here, the plaintiff in *King* failed to produce any "direct proof of race or sex discrimination," but rather tried to establish a prima facie case of discrimination based on disparate pay between her and non-minority comparators. *Id*. at 16.  Unable to meet her burden, plaintiff argued that the defendant employer had failed to provide her sufficient pay records to properly evaluate her claims. *Id.* Despite this argument, the court entered a summary judgment in favor of the defendant -- ruling that even if no pay records had been provided, the plaintiff had failed in her duty to first identify comparators or to demonstrate "that the alleged failure to produce pay records ha[d] prevented her from identifying relevant comparators. . . " *Id.* at 23.

[8]  For example, included on TNA's roster is a former Olympic Gold Medal winner and several other wrestlers who have obtained celebrity status outside of wrestling.  Clearly Ashenoff is not in the same category as these performers.

---

16.     TNA respectfully requests that the Court deny the Defendant's motion to compel discovery of compensation information related to its other performers.   Should the Court determine that Ashenoff is entitled to any such information, TNA requests that the discoverable information be narrowly tailored to include only disclosure of compensation information related to comparable performers during the relevant timeframe.

**C.     TNA HAS PROVIDED ASHENOFF WITH A COPY OF ALL DRUG POLICIES IN EXISTENCE DURING HIS RELATIONSHIP WITH TNA AND HAS INFORMED COUNSEL THAT TNA HAS NO RELEVANT RECORDS AS TO THIS POLICY'S ENFORCEMENT**

17.     The Court should also deny Ashenoff's motion to compel additional responses to Interrogatory No. 11, which seeks information regarding TNA's policies with respect to the use of prescription medications on an unprescribed basis, and Request for Production No. 37, which seeks information regarding TNA's "use of Performers when and while they are injured."   TNA has already produced its Drug Policy that was in existence during Ashenoff's relationship with TNA. *See* "Exhibit H" TNA Drug Policy, APP32.   TNA believes that the enforcement of this policy, inasmuch as such enforcement did not relate to Ashenoff, is not relevant to the instant litigation.   However, in the spirit of compromise, counsel for TNA informed Ashenoff's counsel that no sanctions had been issued under this policy against any of TNA's talent, including Ashenoff, as of the time Ashenoff departed TNA. *See* "Exhibit I" December 31st Email to Cary Ichter, APP33.   Defendant's Motion fails to identify what additional information, if any, would be responsive to Interrogatory No. 11 that has not already been provided.

18.     Regarding RFP No. 37, TNA informed Ashenoff several months ago that it has no written policies or practices relating to the use of performers while they are injured. *See* "Exhibit J", TNA's Objections and Responses to Defendant's Interrogatories and Requests for Production, APP56.   Rather, as in many work environments, health concerns are discussed with

TNA management on an informal case-by-case basis.  *See* "Exhibit A" Affidavit of Dixie Carter,

APP03.   TNA has, to date, produced all communications in its possession between TNA

management and Ashenoff, and all nonprivileged communications among TNA's management

relating to Ashenoff's alleged injuries.   *See, e.g.,* "Exhibit K" Emails related to Ashenoff's

health, APP61-APP66.   Other than Ashenoff, the medical conditions of TNA's performers are

not at issue in the instant litigation.   As such, any medical information related to other

performers, should such information be in TNA's possession, is wholly irrelevant and clearly

outside the scope of discovery.

19.     Requiring TNA to divulge sensitive information about the medical conditions of

other performers would also pose significant confidentiality concerns that outweigh whatever

marginal benefit (if any) may be gained by producing this information.   TNA puts a high value

on the privacy of its performers and takes seriously its obligation to protect disclosure of this

information unnecessarily.[9]  *See, e.g.*, "Exhibit L" December 23, 2006 Email among TNA

Management, APP67.   The release of medically-related communications, many of which were

undoubtedly related under the assumption that such communications would remain discrete,

would diminish the confidence of TNA performers in the company and its management.  *See*

"Exhibit A" Affidavit of Dixie Carter, APP03.   Without a certain level of trust, performers might

feel compelled to hide medical conditions and injuries from TNA's management, resulting in

---

[9] Though not directly applicable to employers, Congress has validated this concern in passing legislation protecting the disclosure of personal medical information absent consent or certain compelling reasons. *See e.g.*, 42 U.S.C. 1301 *et seq* (Health Insurance Portability and Accountability Act).

endangerment to their health and that of other performers in the ring.[10]  Further, production of all communications with other wrestlers related to their individual injuries, should such documents be in TNA's possession, would be overly burdensome to TNA given the probative value, if any, of such communications. *Id.*

20.     To the extent that Ashenoff argues that such information would assist him in "identify[ing] the performers who were in a position most similar to [Ashenoff's] position: injured performers who were being fed drugs by TNA so they could perform," his motion is also meritless.  *See* Defendant's Brief, ¶ 3.  TNA has produced its entire roster of contracted talent to Ashenoff along with contact information for each wrestler.  These documents provide Ashenoff with the means to contact any of these individuals and inquire as to any relevant information that they may possess.  Given the privacy and confidentiality issues involved and the irrelevance of other wrestlers' medical conditions to TNA's liability (if any) for Ashenoff's own alleged injuries, Ashenoff has failed to establish why TNA should be compelled to produce additional information regarding the medical conditions of other TNA wrestlers.

**D.     ASHENOFF'S MOTION TO COMPEL DOES NOT MERIT JUDICIAL RELIEF, MUCH LESS THE AWARD OF COSTS**

21.     Addressing the issue of a court's power to award a party the costs of filing a motion to compel, Fed. R. Civ. P. 37(a)(5)(A) states:

> If the motion is granted – or if the disclosure or requested discovery is provided after the motion was filed – the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable

---

[10] Professional wrestling is a contact sport, and, as such, injuries can effect not only the injured performer, but also others that come into contact with them.  Further, blood borne pathogens and communicable diseases are a concern given the physical nature of professional wrestling.  Performers hiding medical information for fear of disclosure would undermine TNA's efforts to protect its wrestlers and the public at large.

expenses incurred in making the motion including attorney's fees.  But the court must not order this payment if:

(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;

(ii) the opposing party's nondisclosure, response, or objection was substantially justified; or

(iii) other circumstances make an award of such expenses unjustified.

Here, TNA's objections are well-justified, and counsel for TNA has conferred in good faith with counsel for Ashenoff on numerous occasions in an effort to narrow and resolve their grounds of disagreement.  At a minimum, the Court should deny Ashenoff's motion for costs and fees.[11]

## IV.
## CONCLUSION

22.    For the foregoing reasons, TNA respectfully requests that the Court deny Defendant's Motion to Compel in its entirety.

Respectfully submitted,

**FULBRIGHT & JAWORSKI L.L.P.**

*/s/ Richard S. Krumholz, Esq.*
Richard S. Krumholz
Texas Bar No. 00784425
William P. Finegan
Texas Bar No. 07008700

2200 Ross Avenue, Suite 2800
Dallas, Texas 75201-2784
T: 214-855-8000

---

[11] *See Pierce v. Underwood*, holding the "test for avoiding the imposition of attorney's fees for resisting discovery in district court is whether the resistance was 'substantially justified'." 487 U.S. 552, 565, 108 S.Ct. 2541, 1550 (1988)  In defining this standard the Court determined the imposition of attorney's fees inappropriate when "there is a genuine dispute" or when "reasonable people could differ" as to the appropriateness of the contested material. *Id.*

F: 214-855-8200

**ATTORNEYS FOR PLAINTIFF
TNA ENTERTAINMENT, LLC**

## CERTIFICATE OF SERVICE

This pleading was served in accordance with the Federal Rules of Civil Procedure by regular U.S. mail and via ECF on the following counsel of record on January 20, 2009:

Cary Ichter
ADORNO & YOSS, LLC
Two Midtown Plaza, Suite 1500
1349 W. Peachtree Street, N.W.
Atlanta, Georgia  30309

Kevin Wiggins
Tracey Wallace
ADORNO YOSS WHITE & WIGGINS LLP
Bank of America Plaza, Suite 6200
901 Main Street
Dallas, Texas 75202

Robert Blackwell
BROWN & HOFMEISTER, L.L.P.
740 E. Campbell Road, Suite 800
Richardson, Texas  75081

/s/ Richard S. Krumholz
Richard Krumholz