# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| TNA Entertainment, LLC, § § Plaintiffs, § § v. § § Charles "Carlos" Ashenoff, § § Defendant, § § v. § § Jeffrey L. Jarrett, Dixie Carter, Paul W. § Taylor III (p/k/a Terry Taylor), and § Wayne Keown (p/k/a Dutch Mantel), § § Third-Party Defendants § | CIVIL ACTION NO.: 3:08-cv-522-B |

## AFFIDAVIT OF DIXIE CARTER

Before the undersigned officer, duly authorized by law to administer oaths, personally appeared Dixie Carter, who, after being sworn, states that the facts set forth herein are true and correct.

1. My name is Dixie Carter. I am of legal age, of sound mind, and competent to testify.

2. I have personal knowledge of the matters testified to herein.

3. I am the President of TNA Entertainment, LLC ("TNA") and in such capacity oversee the day-to-day operations of the company. I also represent the interests of TNA in the above-captioned matter, to which I have also been named, individually, as a third party



defendant. I give this affidavit in support of TNA Entertainment, LLC's Response to Defendant Charles "Carlos" Ashenoff's Motion to Compel Discovery Responses.

4. TNA maintains a roster of all talent that it currently has under contract. This roster includes contact information provided to TNA by each person listed on the roster, including such persons' telephone numbers, addresses, and email addresses. This roster is maintained in TNA's office by Brian Wittenstein and is disseminated by him only to those individuals who have a need for it. Practically speaking, TNA's management, its accounting and legal departments, and its Director of Talent Relations, Terry Taylor, are the only parties with regular access to this roster. Mr. Wittenstein periodically updates this roster to reflect changes in personnel, and in that sense, the roster is a working document. The talent roster is used by TNA management and Terry Taylor to keep in contact with contracted talent and as a mechanism to stay apprised of who is currently available to perform. As these performers are public figures -- with most having attained celebrity status -- it is my policy, and that of TNA, to keep these rosters confidential to protect such persons' privacy and to encourage our performers to inform TNA management of any changes to their contact information.

5. It is the policy of TNA to keep as confidential any information related to the compensation of its contracted talent. The contracts describing the compensation levels of each performer are kept by the two attorneys who work for TNA in a filing cabinet located in the legal department. Other than the legal department, only TNA management and Terry Taylor have access to these contracts. This policy protects the privacy of our performers, and helps maintain healthy relationships between TNA's management and its talent, as well as among the talent themselves. Release of this information would damage TNA's business model and put TNA at a disadvantage in negotiating new contracts with talent. As such, TNA considers the amount of

compensation it pays performers to be proprietary in the sense that the release of this information would harm our method of conducting business.

6. Professional wrestling, though theatrical in nature, is a contact sport. Occasionally, though by no means regularly, performers are injured while participating in a show. TNA deals with each of these injuries on an individual basis through largely informal discussions with individual performers or their agents regarding any injuries or other health concerns. Whereas some of this communication takes place through email, the majority of these communications take place via face-to-face discussions or by telephone.

7. It is the policy of TNA to refrain from the discussion of performers' health issues with other performers or with persons outside TNA's management. To do otherwise would violate the trust between our company and its performers.

8. The largely informal nature of such communications would make any attempted compilation of these communications for discovery purposes very difficult, if not impossible, for TNA to effectuate. Further, it is unlikely that a significant quantity of related communications would be found due to the varying methods and informal nature of such communications. For this reason, anything that TNA would be able to produce would be incomplete and fail to represent any consistent policy.

Further affiant sayeth not.

_____
Dixie Carter
President
TNA Entertainment, LLC


SUBSCRIBED AND SWORN to before me by Dixie Carter this 16th day of January, 2009.

_____
Notary Public, State of Tennessee
My Commission Expires April 16, 2011

APP-04