**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **TNA Entertainment, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **Charles "Carlos" Ashenoff,** | ) | |
| | ) | |
| **Defendant,** | ) | **CIVIL ACTION NO.:  3:08-CV-522-B** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **Jeffrey L. Jarrett, Dixie Carter, Paul** | ) | |
| **W. Taylor III (p/k/a Terry Taylor),** | ) | |
| **and Wayne Keown (p/k/a Dutch** | ) | |
| **Mantel),** | ) | |
| | ) | |
| **Third-Party Defendants.** | | |

**DEFENDANT ASHENOFF'S BRIEF IN OPPOSITION TO PLAINTIFF'S**
**MOTION TO COMPEL**

Cary Ichter, Esq.
Georgia Bar No. 382515
ADORNO & YOSS, LLC
Two Midtown Plaza, Suite 1500
1349 W. Peachtree Street, N.W.
Atlanta, Georgia 30309
T: 404-347-8300
F: 404-347-8395

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ……………………………………………………3

    I.    Relevant Factual Background ……………………..……………...............4

    II.    Ashenoff Has or Will Provide Any and All Responsive, Non-Privileged Information and Documents to TNA ……………………………...……....5

    III.    TNA Failed to Confer in Good Faith ……………….………………………7

    IV.    Summary of Argument ……………………….…………………….………8

    V.    Argument…………………………………………………………………9

        A. TNA's Arguments Regarding Requests Nos. 13, 63 and 82 and Interrogatories Nos. 8-10 are Moot………………………….……………………….…..9

        B. Ashenoff Should Not Be Compelled to Produce Privileged Communications and Documents in Response to TNA's Request Nos. 2 and 7……………………………………………………………...…10

            1.    Requests Nos. 2 and 7 seek documents that were created in anticipation of litigation…………………………………………...…10

            2.    Requests Nos. 2 and 7 are overly broad and unduly burdensome……………………………….…………….…………12

            3.    Request No. 2 seeks irrelevant communications…………..14

        C. TNA is Not Entitled to an Attorneys' Fees Award………………………….15

    VI.    Conclusion………………………………………………………….....17

CERTIFICATE OF SERVICE………………………………………………..18

# TABLE OF AUTHORITIES

Cases

*Beasley v. First American Real Estate Information Services, Inc.*,
    2005 WL 1017818 *1 (N.D. Tex. 2005)…………………………………………5

*S.E.C. v. Brady*,
    238 F.R.D. 429 (N.D. Tex. 2006)………………………………………………..10

*Matya v. United Refining Co.*,
    2006 WL 2516507 *1 (W.D. N.Y. 2006)………………..………………………15

Other Authority

FRCP 73(a)(2)(B)(i) ………………………..………..…………………………………15

Defendant Charles Ashenoff ("Ashenoff") hereby files his Brief in Opposition to Plaintiff's Motion to Compel, showing this Honorable Court as follows:

## I.   <u>Relevant Factual Background</u>

Consistent with its pattern of conduct in this litigation, TNA responds to any invocation of rights by Ashenoff with an attack.  When Ashenoff had the temerity to send a demand letter to TNA asserting claims of discrimination and bodily injury, TNA's response was to sue Ashenoff.  Now that Ashenoff has filed a motion to compel discovery, TNA's instinctive reaction is to fire back with a similar salvo.  This is all part of TNA's strategy to make the victim appear to be the villain.

In its Motion to Compel, TNA persistently mischaracterizes Ashenoff as being uncooperative and non-responsive in discovery, while all the time referring to conduct that precisely mirrors TNA's conduct.  For example, TNA complains that Ashenoff failed describe the presumed knowledge of witnesses identified in his Initial Disclosures, while TNA responded in the same way as Ashenoff.  *See* Exhibit D to Appendix of Exhibits to Brief in Support of Plaintiff's Opposed Motion to Compel Discovery Responses from Defendant Charles "Carlos" Ashenoff ("Plaintiff's Appendix"); *see also* Initial Disclosures of TNA Entertainment, LLC and Dixie Carter, Pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure, attached hereto as Exhibit 2.

TNA also criticized Ashenoff for responding to certain interrogatories by referring TNA to medical records, while TNA failed to mention that it referred Ashenoff to hundreds of unspecified documents in response to several of Ashenoff's interrogatories.  *See* Plaintiff's Brief, p. 14; *see also* Exhibit 1.  This Court should not reward TNA, nor penalize Ashenoff, for TNA's hypocritical approach to discovery.

In addition to the failures described above, TNA has steadfastly refused to produce discoverable information, such as compensation information for its performers.[1] Additionally, in response to half of Ashenoff's Requests for Production of Documents, TNA declared that it would produce responsive documents after a protective order was entered. *See* Plaintiff TNA Entertainment, LLC's Objections and Responses to Defendant's First Interrogatories and First Request for Production of Documents, attached hereto as Exhibit 1. Although the Court entered a protective order on October 8, 2008, TNA has not fully supplemented its discovery responses.

Finally, TNA has failed to produce any documents that refer to any measures taken by TNA to address discrimination on the basis of race, color, or national origin, including any measures to address alleged or potential discrimination in response to Ashenoff's Request No. 9, notwithstanding that TNA stated that it would do so after a protective order was entered. *Id.*

## II. Ashenoff Has or Will Provide Any and All Responsive, Non-Privileged Information and Documents to TNA

TNA may be dissatisfied with the volume of documents Ashenoff has produced in discovery, but there are valid reasons for Ashenoff's limited documents production. Ashenoff is a professional wrestler—or, at least, he was. He is not an archivist or record keeper; he has no records custodians, no contract administrators, no central files area. Ashenoff keeps records the way most people keep them: hardly at all. As a result, he does not possess documents that are responsive to the majority of TNA's discovery requests.

---

[1] In a lawsuit where the plaintiff alleges race based discrimination, personnel files of the defendant's employees, including without limitation compensation information, are discoverable. *See Beasley v. First American Real Estate Information Services, Inc.*, 2005 WL 1017818 *1, * 2, *5 (N.D. Tex. 2005).

Nonetheless, Ashenoff has been dutifully searching for any and all information, documents and tangible things that would be responsive to TNA's discovery.  His search has been arduous because he does not have the resources to scour through information sources to the same extent that TNA can.  During four (4) days of his search, Ashenoff examined numerous videotapes to locate recordings of his performances as "Konnan" to supplement his response to TNA's Request No. 13.  He found nineteen (19) VHS tapes and two (2) DVDs.   As a result of his on-going search, Ashenoff is now, and has been, prepared to either provide any remaining responsive information or documents that he possesses, such as the Konnan videos, or attest that he does not possess any such information or documents, with one (1) exception: documents and communications that may be found on the hard drive of the computer that belongs to his brother.[2]

Ashenoff is currently trying to retrieve data from the hard drive of his brother's computer, which he shares with several of his family members, to locate any additional, non-privileged documents and communications that are responsive to TNA's discovery. *See* Ashenoff Aff., ¶ 5, Exhibit 3.  If he finds any of such items, he will produce them. Unfortunately, given the number of people who use the computer, it is nearly impossible to isolate a particular directory or folder in which only Ashenoff has saved files.

The data retrieval process has also been complicated by the fact that Ashenoff does not generally create word documents, excel spreadsheets, power points and the like to communicate; he only uses web-based communication accounts - Yahoo, Excite, and MySpace.  *See* Ashenoff Aff.¶ 7, Exhibit 3.   While TNA has not formally requested

---

[2]  The computer that Ashenoff uses from time to time and receive email is not owned by him; it is owned by his brother, and it is used by many members of this brother's family.  The computer contains the private information of family members.  As such, Ashenoff lacks the ability to make the computer available to third-parties, including his own counsel.  Ashenoff does not own a computer.  *See*  Affidavit of Charles "Carlos" Ashenoff ("Ashenoff Aff."), attached hereto as Exhibit 3, ¶¶ 5,6,

to examine the hard drive that Mr. Ashenoff uses, Ashenoff's counsel has invited TNA's counsel to participate in the data retrieval process by submitting a list of search terms. *See* E-mail from Aja Diamond, Esq. to Richard Krumholz, Esq. and Robert Blackwell, Esq. dated January 9, 2009, attached hereto as Exhibit 4.  To date, TNA's counsel has not responded to that invitation.

### III.   TNA Failed To Confer In Good-Faith

TNA's counsel's lack of response to the invitation to participate in the data retrieval process is not surprising given TNA's failure to confer in good faith regarding discovery issues.  TNA's counsel abruptly cut off discussions regarding the issues raised in its motion without explanation or justification in December 2008.  Prior to unilaterally discontinuing good faith communications, TNA did not even mention issues related to TNA's Interrogatories 8–10 or Mr. Ashenoff's alleged text messages, which are the subject of its motion.

TNA's counsel is well aware that discovery matters for Ashenoff were handled by an associate who left the law firm of Adorno & Yoss in November 2008.  *See* Ordered entered on November 17, 2008, attached hereto as Exhibit 5.  Since then, Mr. Ashenoff's lead counsel, Mr. Cary Ichter, Esq., and another associate, Ms. Aja Diamond, Esq., have had to piece together the status of discovery issues.  TNA's counsel's last attempt to confer with Ashenoff's counsel transpired by phone and email during the last week of December 2008.   Rather than wait for Ms. Diamond to return from her holiday vacation in California, TNA's counsel unreasonably announced, "[w]e will not go through yet another round of negotiations with your 2nd associate on the file [*sic*] to speed." In the last communication between counsel prior to TNA filing its motion, Ashenoff's counsel made

clear that Ashenoff was, and is, prepared to turn over virtually any information in his possession, custody or control.  Mr. Ichter made as much plain to TNA's counsel when he wrote:

> I am perfectly willing to discuss with you any concerns you have regarding our discovery response.  As we have repeatedly told you, whether they existed at one time or not, many of the documents you seek and much of the information you seek is no longer in our client's possession, custody or control.  We are prepared to discuss each matter that you regard as being an issue with you, and we see no reason to bother the court with a motion, given that, to our knowledge, we have provided you with everything we have that is responsive to your requests.  There may be other information that is in the hands of third parties, but we have produced everything we have access to at this point.  If additional information is located, we will supply it to TNA.

TNA's counsel almost immediately responded: "I believe we have reached an impasse."  Given that Ashenoff's counsel announced that Ashenoff would produce any additional information Ashenoff located, it is difficult to understand what the nature of the "impasse" was.  While perfectly inconsistent with Ashenoff's agreement to produce whatever he found, TNA's declaration of the existence of an impasse is perfectly consistent with TNA's persistent efforts to depict the victim as the villain.  Such is the world of professional wrestling: nothing is real.

### IV.    Summary of Argument

TNA's Motion to Compel should be DENIED in its entirety for six (6) significant reasons: 1) Ashenoff agreed to tender any and all responsive, non-privileged information, documents and other tangible things to TNA; 2) Ashenoff does not possess any non-privileged documents that are responsive to TNA's Request No. 2 and 7, which are overly broad, unduly burdensome and seek documents and communications that are irrelevant or that have been created in anticipation of litigation; 3) Ashenoff will produce

nineteen (19) VHS tapes and two (2) DVDs of his performances as "Konnan" in response to TNA's Request No. 13, if TNA agrees to pay for copying and shipping costs;[3]   4) Ashenoff does not possess any documents that are responsive to TNA's Request No. 63 and 82; 5) Ashenoff has supplemented his discovery responses to Interrogatories No. 8 – 10, to which TNA has not alleged any deficiencies;[4] and 6) TNA failed to confer in good faith.

## V.     Argument

### A.     TNA's Arguments Regarding Requests Nos. 13, 63 and 82 and Interrogatories Nos. 8 – 10 are Moot.

While Ashenoff stands by his objections to TNA's discovery, there is no actual controversy regarding the bulk of TNA's Motion to Compel.  Mr. Ashenoff has already attested that he will supply any and all additional responsive, non-privileged information, documents and/or other tangible things that he has in his possession, custody or control, starting with the Konnan videos that are responsive to Request No. 13 and including, but not limited to, responsive, non-privileged information and documents on his brother's hard drive.  Ashenoff does not possess any documents that are responsive to TNA Requests Nos. 63 and 82 or any additional information that is responsive to TNA's Interrogatories No. 8-10.  Therefore, the only TNA Requests that present a controversy are Requests No. 2 and 7.[5]

---

[3] Ashenoff's counsel's e-mail to TNA's counsel regarding copying and shipping the "Konnan" videos is attached hereto as Exhibit 6.

[4] Ashenoff's Supplemental Responses to TNA's Second Set of Interrogatories is attached hereto as Exhibit 7.

[5] TNA Request No. 2: All communications between you and any third-party discussing: i) the creation and/or development of the character "Konnan," ii) the creation or development of LAX, iii) any alleged wrongful conduct of TNA, iv) any alleged racial or other improper discrimination by any individual or organization, v) any alleged injuries or medical conditions you claim you suffered while you were an

**B.** **Ashenoff Should Not Be Compelled to Produce Privileged Communications and Documents in Response to TNA's Requests Nos. 2 and 7.**

As explained in more detail below, TNA's Requests Nos. 2 and 7 are improper as they seek documents that were created in anticipation of litigation and are overly broad, unduly burdensome and call for information that is neither relevant nor reasonably calculated to lead to admissible evidence.

**1.** **Requests Nos. 2 and 7 seek documents that were created in anticipation of litigation.**

In Requests Nos. 2 and 7, TNA seeks information and documents that were prepared by either Ashenoff's counsel or Ashenoff in anticipation of litigation. Ashenoff is not required to produce such information and documents. *See* Fed. R. Civ. P. 26(b)(3); *see also Beasley v. First Am. Real Estate Info. Services, Inc.*, 2005 WL 1017818 *1, * 2 (N.D. Tex. 2005) (recognizing that "prudent parties anticipate litigation, and begin preparation prior to the time suit is formally commenced").

Ashenoff can show the basic elements of the work product privilege: "(1) the materials sought are documents or tangible things; (2) the materials sought were prepared in anticipation of litigation or for trial; [and] (3) the materials were prepared by or for a party's representative." *See S.E.C. v. Brady*, 238 F.R.D. 429, 441 (N.D. Tex. 2006) ("[t]he law of our circuit is that the [work product] privilege can apply where litigation is not imminent, as long as the primary motivating purpose behind the creation of the

---

independent contractor of TNA, vi) any alleged supply or provision of any drugs or medications to you or any other person by TNA or any of its employees, agents or representatives, vii) any instruction or encouragement, by TNA or anyone associated with TNA, for you or any other person to take any drug or medication, viii) any surgeries you have undergone, or ix) TNA.

TNA Request No. 7: Any witness statements, meeting notes, or other documents relating to your conversations, communications, or attempts to contact any persons regarding the giving of evidence or testimony in an actual or potential lawsuit against TNA.

document was to aid in possible future litigation.") This Court evaluates "the nature of the document and the factual situation in the particular case" to determine whether "a document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Beasley*, 2005 WL 1017818 *2.

Here, in Request Nos. 2 and 7, TNA seeks written communications between Ashenoff and potential witnesses regarding various matters related and un-related to this lawsuit as well as witness statements, meeting notes, or other documents relating to Ashenoff's conversations, communications, or attempts to contact any persons regarding the giving of evidence or testimony. Months before TNA filed this lawsuit, Ashenoff intended to file claims against TNA that mirror his counterclaims in this action. *See e.g.,* EEOC Discrimination Intake Questionnaire dated 12/18/07, attached hereto as Exhibit 8.

In preparation of filing a lawsuit against TNA, Ashenoff, at the direction of his counsel and on his own initiative, contacted potential witnesses regarding matters that relate directly to his counterclaims in this action. These communications along with witness statements, meeting notes and other documents relating to Ashenoff's conversations or attempted conversations with potential witnesses are privileged. *See S.E.C.*, 238 F.R.D. at 441-42 (explaining that "the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation"). To the extent that these communications were reduced to writing, they are identified on a privilege log, which is attached hereto as Exhibit 9.

If, however, Ashenoff has any written communications regarding subsections (i) and (v)–(ix) of Request No. 2 that were not created in anticipation of litigation, Ashenoff

has, or will, produce them after the data retrieval process is completed.  Ashenoff will also produce any non-privileged communications that are responsive to subsections ii-iv of Request No. 2 subject to limitations that address the overly broad, unduly burdensome and irrelevant nature of these particular requests as more fully delineated in the following section.

Accordingly, this Court should not compel Ashenoff to respond to TNA's Requests No. 2 and 7 to the extent that they seek communications and documents that have been prepared in anticipation of litigation.

**2.      Requests No. 2 and 7 are overly broad and unduly burdensome**.

For the first time in this lawsuit, TNA appears to want Ashenoff to produce text messages that he allegedly sent to potential witnesses.  TNA, however, has not articulated any basis for such a request or produced any evidence that shows that Ashenoff possesses any relevant text messages.   TNA did not request text messages in its Request of Production of Documents as a specific request or in a definition section.   *See* Plaintiff's First Requests for Production, attached hereto as Exhibit 10.   The purported "text message" from Ashenoff to Mr. Nelson "Homicide" Erazo ("Mr. Erazo"), Exhibit J in Plaintiff's Appendix, does not appear to be a text message at all.   It is very clear from TNA's Exhibit J that Mr. Erazo e-mailed Third Party Defendant Jeff Jarrett from his AOL e-mail account on September 11, 2008, regarding a message that Ashenoff allegedly sent to Mr. Erazo on his "site."  Nothing in Exhibit J suggests that Ashenoff sent a text message to Mr. Erazo.

Assuming purely *arguendo* that TNA's Exhibit J reflected a text message that Ashenoff sent to Mr. Erazo, TNA has not produced any evidence that Ashenoff still

posseses the text message or any other text messages for that matter because such evidence does not exist.  Such evidence does not exist because, Ashenoff does not store text messages on his cell phone or on any other device.  *See* Ashenoff Aff., ¶ 9, Exhibit 3.

Furthermore, this Court should impose a temporal restriction on subsection ix of Request No. 2 in which TNA seeks "all communications between [Mr. Ashenoff] and any third party discussing . . . TNA." *See Beasley*, 2005 WL 1017818 *1.  This request is extremely broad and lacks any contextual parameters that would limit the request to relevant matters.  Considering that Ashenoff has worked with TNA since 2003, he undoubtedly has had innumerable communications about TNA that had nothing whatsoever to do with any matter at issue in this case.  Thus, it would be extreme expensive, time-consuming, and pointless for Ashenoff to sort through such communications that merely mention TNA.  Accordingly, Ashenoff submits that the Court should deny TNA's motion with respect to this Request.

Not surprisingly, TNA has made objections of exactly the type it complains of in its motion papers.  Specifically, TNA objected to Ashenoff's request for "every written communication between TNA and Mr. Ashenoff" by stating that the "request [is] overly broad, unduly burdensome and harassing." *See* Response to Request No. 4 in Exhibit 1.  Ashenoff's request for communications between parties is at least as relevant as TNA's request for Ashenoff's communications with potential witnesses.

Accordingly, this Court should not compel Ashenoff to respond to TNA's Requests No. 2 and 7 to the extent that they are overly broad and unduly burdensome.  In particular, this Court should place a temporal and contextual restriction on Request No. 2

so that Ashenoff does not have to produce any communications to TNA that are not relevant to the claims and/or defenses in this lawsuit.  Ashenoff also should not be required to produce his text messages, because he does not possess any, nor should he be required to produce documents that memorialize his attempts to contact witnesses.

### 3.     Request No. 2 seeks irrelevant communications.

Subsections (ii)-(iv) of Request No. 2 seek irrelevant material.   Subsection (ii) seeks production of communications between Ashenoff and third parties regarding "the creation or development of LAX."   *See* TNA Request No. 2.  Ashenoff should not be required to provide any documents or communications that relate to the creation of his former wrestling team "LAX" given that he has dismissed his Trademark and Copyright Infringement claims.

TNA also seeks production of communications between Ashenoff and third parties regarding "any alleged wrongdoing of TNA." *Id.*  Ashenoff is suing TNA only for certain wrongdoing as set forth in his Counterclaims.  Therefore, Request No. 2 is irrelevant to the extent that it seeks communications related to wrongdoing committed by TNA outside the scope of Mr. Ashenoff's Counterclaims.  TNA further seeks communications between Ashenoff and third parties regarding "any alleged racial or other improper discrimination by any individual or organization." *Id.*  Of course, this Request springs from the novel notion that discrimination defendants memorialize their discriminatory practices in writing.  Despite the improbability that such documents might exist, Ashenoff has committed to produce any he might locate.

Accordingly, Ashenoff should not be compelled to produce any communications regarding (1) the creation or development of LAX or (2) wrongdoing committed by TNA beyond the allegations in the Counterclaims.

**C.      TNA is Not Entitled to an Attorneys' Fees Award.**

Rule 37 of the Federal Rules of Civil Procedure ("Rule 37") provides that a movant is not entitled to an award of its expenses even if the Court grants its Motion to Compel if any of the following circumstances exist:

> (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
>
> (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or
>
> (iii) other circumstances make an award of expenses unjust.

Here, TNA is not entitled to an award of its expenses under Rule 37.  *See* FRCP 37(a)(2)(B)(i); *see also Matya v. United Refining Co.*, 2006 WL 2516507 *1, *3 (W.D. N.Y. 2006)(denying a motion to compel where a party only "conferred" by repeatedly asking for documents that it wanted rather than by addressing the other party's concerns and objections).  First, TNA failed to confer with Ashenoff's counsel in good faith before filing its Motion to Compel.  TNA never specifically conferred with Ashenoff's counsel regarding Interrogatories Nos. 8-10 or regarding Ashenoff's alleged text messages to witnesses.  TNA also abruptly pulled the plug on Ashenoff's attempts to confer on discovery issues without justification.  *See supra*, p. 7.  Given that Ashenoff has committed to produce every non-privileged document he has and can locate, it is difficult to understand what proper purpose might have motivated TNA's decision to file the motion.

TNA's counsel should have been patient with Ashenoff's transition of counsel, especially because Mr. Ashenoff's lead counsel attested that Ashenoff would produce any and all responsive, non-privileged information and documents. *Id.* TNA's counsel certainly should have waited to confer with Ms. Diamond after she returned from her holiday vacation because she had been communicating with Ashenoff regarding various discovery issues. *Id.* Instead, TNA's counsel prematurely filed Plaintiff's Opposed Motion to Compel Discovery Responses as to which most issues are moot. If TNA's counsel conferred with Ashenoff's counsel as required by this Court's rules, TNA would have discovered that court intervention was wholly unnecessary for the bulk of TNA's alleged discovery issues. *See supra*, p. 8-9.

Moreover, Mr. Ashenoff shows above that his objections to Requests Nos. 2 and 7 are substantially justified based on the anticipation of litigation privilege and the fact that the Requests are overly broad and unduly burdensome. *See supra*, p. 10-12. Request No. 2 is also objectionable as it seeks, in part, irrelevant information. *See supra*, 14. Significantly, since Ashenoff's Request No. 4 is distinctly similar to TNA's Request No. 2, TNA's objection to Ashenoff's Request No. 4 demonstrates that Ashenoff's objections to Request No. 2 are substantially justified.

Lastly, it would be unjust for TNA to be awarded its expenses under Rule 37 because TNA has unclean hands and Ashenoff is attempting to cooperate in discovery. TNA seeks an order from this Court directing Ashenoff to provide information and/or documents that it is not willing to produce, such as the presumed knowledge of potential witnesses. *See supra*, p. 8-9. Ashenoff's counsel is attempting to perform an expensive data retrieval process on a hard drive that does not even belong to their client in effort to

cooperate fully in discovery. Ashenoff's counsel even invited TNA's counsel to participate in this process, but TNA's counsel has yet to accept the invitation.

With five (5) months of discovery remaining, TNA has not been prejudiced by the progress of discovery in this matter.   If anything, TNA should be held accountable for all of its actions that have caused delays in this litigation.   *See* Brief in Support of Defendant's Motion to Compel; *see also supra* p. 7-12.

### V.   Conclusion

For the reasons set forth above, Plaintiff's Opposed Motion to Compel should be denied.

Respectfully submitted, this 22nd day of January, 2009.

__/s/ Cary Ichter_____
Cary Ichter, Esq.
Georgia Bar No. 382515

ADORNO & YOSS, LLC
Two Midtown Plaza, Suite 1500
1349 W. Peachtree Street, N.W.
Atlanta, Georgia 30309
T: 404-347-8300
F: 404-347-8395


Kevin Wiggins, Esq.
Texas Bar No. 21441600
Tracey Wallace, Esq.
Texas Bar No. 00797617

ADORNO YOSS WHITE & WIGGINS LLP
Bank of America Plaza, Suite 6200
901 Main Street
Dallas, Texas 75202
T: 214-665-4150
F: 214-665-4160

ATTORNEYS FOR DEFENDANT
CHARLES ASHENOFF

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing **DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL** was electronically filed with the clerk of court using the ECM/ECF system which will automatically send e-mail notification of such filing to all attorneys of record, including:

> Richard S. Krumholz, Esq.
> FULBRIGHT & JAWORSKI, LLP
> 2200 Ross Avenue, Suite 2800
> Dallas, Texas 75201-2784
>
> Robert Blackwell, Esq.
> BROWN & HOFMEISTER, LLP
> 740 E. Campbell Road, Suite 800
> Richardson, Texas 75081

This 22nd day of January, 2009.

> ___/s/ Cary Icther_____
> Cary Ichter, Esq.
> Georgia Bar No. 382515